SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
JUSTIN R. BERNBROCK (admitted *pro hac vice*)
CATHERINE JUN (admitted *pro hac vice*)
ROBERT B. McCELLARN (admitted *pro hac vice*)
321 North Clark Street, 32nd Floor
Chicago, Illinois 60654
Telephone: 312.499.6300
Email:      jbernbrock@sheppardmullin.com
            cjun@sheppardmullin.com
            rmclellarn@sheppardmullin.com

JENNIFER L. NASSIRI, SBN 209796
ALEXANDRIA G. LATTNER, SBN 314855
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6055
Telephone: 310.228.3700
Email:      jnassiri@sheppardmullin.com
            alattner@sheppardmullin.com

Proposed Counsel to Debtors and
Debtors in Possession

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>BEVERLY COMMUNITY HOSPITAL ASSOCIATION, dba BEVERLY HOSPITAL (A NONPROFIT PUBLIC BENEFIT CORPORATION), *et al*,[1]<br><br>Debtors, | Lead Case No: 2:23-bk-12359-SK<br><br>Jointly administered with:<br><br>Case No: 2:23-bk-12360-SK<br><br>Case No: 2:23-bk-12361-SK<br><br>Hon. Sandra R. Klein<br>Chapter 11 Case |
| ☒ Affects all Debtors<br><br>☐ Affects Beverly Community Hospital Association<br><br>☐ Affects Montebello Community Health Services, Inc.<br><br>☐ Affects Beverly Hospital Foundation | **DEBTORS' NOTICE OF APPLICATION AND APPLICATION SEEKING AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF TRIPLE P RTS, LLC AS RESTRUCTURING ADVISOR FOR THE DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO 11 U.S.C. §§ 327(a) AND 330, EFFECTIVE AS OF APRIL 19, 2023; DECLARATION OF ALYSSA LOZYNSKI IN SUPPORT THEREOF**<br><br>[No hearing required unless requested per LBR 2014-1(b)] |

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Beverly Community Hospital Association d/b/a Beverly Hospital (6005), Montebello Community Health Services, Inc. (3550), and Beverly Hospital Foundation (9685).  The mailing address for the Debtors is 309 W. Beverly Blvd., Montebello, California 90640.

APP. TO EMPLOY PORTAGE POINT AS
RESTRUCTURING ADVISOR

1      **TO THE HONORABLE SANDRA R. KLEIN, PETER C. ANDERSON, UNITED**

2  **STATES TRUSTEE FOR REGION 16, COUNSEL FOR THE OFFICIAL COMMITTEE**

3  **OF UNSECURED CREDITORS, AND ALL PARTIES ENTITLED TO NOTICE:**

4      **NOTICE IS HEREBY GIVEN** that above-captioned debtors and debtors in possession in

5  these chapter 11 case (collectively, the "Debtors"), by and through their counsel, apply (the

6  "Application") for an order in the form attached to the appended Application as **Exhibit A**

7  authorizing the Debtors to retain and employ Triple P RTS, LLC, a wholly owned subsidiary of

8  Portage Point Partners, LLC ("Portage Point")[2] as their restructuring advisor effective as of April

9  19, 2023 pursuant to Bankruptcy Code sections 327 and 330, and Rule 2014 of the Federal Rules of

10  Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1(b) and 9013-1 of the Local

11  Bankruptcy Rules of the United States Bankruptcy Court Central District of California ("LBR").

12      **PLEASE TAKE FURTHER NOTICE THAT** the Debtors seek to employ Portage Point,

13  on an hourly basis, to provide various restructuring services to the Debtors as further detailed in the

14  Application in connection with these chapter 11 cases and a section 363 sale that the Debtors will

15  pursue in these chapter 11 cases.  The Debtors have agreed to the form of engagement letter, which

16  was ultimately signed and entered into between the Debtors and Portage Point as of March 17, 2023

17  (the "Engagement Letter").  A true and correct copy of the Engagement Letter is attached as Exhibit

18  1 to the *Declaration of Alyssa Lozynski* (the "Lozynski Declaration") filed concurrently herewith.

19  Portage Point proposes to charge its normal and customary standard hourly rates, subject to periodic

20  increases.  The billing rates for those professionals anticipated to render services to the Debtor range

21  from $980 per hour for the Managing Partner, $800-$925 for Senior Advisors, $800-$880 per hour

22  for the Managing Directors, $655-$735 per hour for Directors, $530-$640 per hour for Vice

23  Presidents, and $395-$440 per hour for Associates; the anticipated average billing rate for Triple P

24  RTS, LLC's services is $600.

25

26  ─────────────────────

27  [2] Concurrently herewith, the Debtors have also filed an application to employ Triple P Securities, LLC, a wholly
owned subsidiary of Portage Point Partners, LLC, as investment banker to the Debtors in the above-captioned

28  chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE THAT** Portage Point received pre-petition retainers paid by the Debtors in the amount of $200,000 on March 22, 2023, and $100,000 on April 5. 2023.  As of the Petition Date, Portage Point holds an unapplied retainer balance of $166,733.45.

**PLEASE TAKE FURTHER NOTICE** that the Debtors request approval of the indemnity provision set forth in the Engagement Letter as more particularly described in the Lozynski Declaration attached to the Application.

**PLEASE TAKE FURTHER NOTICE** that the Application is based on the facts set forth therein, the Lozynski Declaration and any attached exhibits appended to the Application, the record in this case, any additional pleadings, evidence, statements, arguments, and representations of counsel that may be presented to the Court at or before the time of a hearing on the Application, if any should be held.

**PLEASE TAKE FURTHER NOTICE THAT** if you do not oppose the relief requested by the application, you do not need to take any further action.  However, if you object to the relief requested by the application, under LBR 2014-1(b)(3)(e) and 9013-1(f), no later than fourteen (14) days from the date of service of this Notice, you must file any response to the Application and request for a hearing with the clerk of the United States Bankruptcy Court located at 255 East Temple Street, Los Angeles, CA 90012.  You must also serve a copy of your objection or response to the Application and Request for a hearing upon the Debtors and its proposed counsel at the contact addresses indicates on the first page of this Notice, upon Triple P RTS, LLC, at 300 North LaSalle, Suite 1420, Chicago, IL 60654, and Peter C. Anderson, the United States Trustee for Region 16. Upon receipt of any written objection and request for a hearing, the Debtors' proposed counsel will obtain a hearing date on the Application and give appropriate notice thereof.

**PLEASE TAKE FURTHER NOTICE THAT** under LBR 9013-1(h), the Court may deem the failure to file and serve a timely objection to the Application to be consent to the Debtors' requested relief.

1     **PLEASE TAKE FURTHER NOTICE** that a copy of the Application and the Lozynski

2  Declaration may be obtained upon request by contacting Alexandria Lattner by email at

3  alattner@sheppardmullin.com or by phone at (714) 424-2838, or by mail at:

4        Sheppard, Mullin, Richter & Hampton, LLP
         Attn: Alexandria Lattner
5        1901 Avenue of the Stars, Suite 1600
         Los Angeles, CA 90067-6055
6

7  Dated:  May 19, 2023

8                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

9

10                     By      _____/s/ Jennifer L. Nassiri_____
                                     Jennifer L. Nassiri
11

12                              JUSTIN R. BERNBROCK
                                JENNIFER L. NASSIRI
13                              CATHERINE JUN
                                ROBERT B. McLELLARN
14                              ALEXANDRIA G. LATTNER

15                              Proposed Attorneys for Debtors and
                                Debtors-in-Possession
16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4886-5937-2388.1                    -4-                    App. to Employ Portage Point as
                                                                Restructuring Advisor

## I.

## RELIEF REQUESTED

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[1] hereby file this application (this "Application") to seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) authorizing the Debtors to retain and employ Triple P RTS, LLC ("Portage Point") as their restructuring advisor effective as of April 19, 2023, and (b) granting related relief.  In support of this Application, the Debtors submit the declaration of Alyssa Lozynski, which is attached hereto.  In further support of this Application, the Debtors respectfully state as follows:

## II.

## JURISDICTION AND VENUE

The United States Bankruptcy Court for the Central District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order No. 13-05* (C.D. Cal. Jul. 1, 2013), and Rule 5011-1(a) of the Local Bankruptcy Rules for the United States Bankruptcy Court Central District of California (the "Local Bankruptcy Rules").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The bases for the relief requested herein are sections 327, and 330, and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1(b), and 9013-1 of the LBRs of the United States Bankruptcy Court Central District of California ("LBR").

## III.

## STATEMENT OF FACTS

Beverly Hospital ("Beverly" or the "Hospital") is a nonprofit, 202-bed hospital in Montebello that serves low-income patients in the nearby Los Angeles area.  As a safety net hospital, Beverly serves a geographic area where more than half of the population lives under the

---

[1]  A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Alice Cheng in Support of Chapter 11 Petitions and Emergency First Day Motions* [Docket No. 9] (the "First Day Declaration").  Capitalized terms used but not otherwise defined in this Application have the meanings ascribed in the First Day Declaration.

-1-

1   Federal Poverty Level.  Beverly has been historically underfunded and, in the post-Covid economy,

2   became increasingly cash-strapped.  With 91% of its patients relying on Medicare and Medi-Cal,

3   the Hospital's financial struggles only worsened as the cost of labor, medical supplies and medicine

4   ballooned while government reimbursement rates have stayed the same.

5        On April 19, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for

6   relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and

7   managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

8   Bankruptcy Code.  Concurrently with the filing of their chapter 11 petitions, the Debtors filed a

9   motion requesting procedural consolidation and joint administration of these chapter 11 cases (the

10   "Bankruptcy Cases") pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a

11   trustee or examiner has been made in these chapter 11 cases.  A nine-member Official Committee

12   of Unsecured Creditors was appointed on May 10, 2023.  *See* Dkt. Nos. 235-36.

13                   **IV.**

14      **THE NEED TO RETAIN PORTAGE POINT AS RESTRUCTURING ADVISOR**

15        Prior to the Petition Date, the Debtors hired Portage Point to, among other things: (a) assist

16   the Hospital in evaluating and developing a short-term cash flow model and related liquidity

17   management tools for general corporate purposes or as may be required by the Debtors or their

18   various constituents including, without limitation, employees, lenders, vendors, regulatory

19   authorities and board members ("Constituents"); (b) assisting the Hospital in working and

20   negotiating with Constituents including, but not limited to, meeting with Constituents; (c)

21   developing presentations and providing management with financial analytical assistance necessary

22   to facilitate such negotiations; (d) supporting the Hospital with diligence requests; (e) assisting the

23   Hospital in evaluating and/or developing a business plan and / or such other related forecasts and

24   analyses; (f) assisting the Hospital in the evaluation and implementation of contingency planning

25   related to the Debtors' commencing cases under chapter 11 of title 11 of the United States Code; (g)

26   assisting the Debtor in obtaining and presenting information required by parties in interest in a

27

28

1  chapter 11 case, including any statutory committees appointed in the chapter 11 case, or by the court

2  presiding over the chapter 11 case (the "Bankruptcy Court").

3        Since being retained, Portage Point has provided these above-mentioned crucial

4  restructuring advisement services, among others, alongside Debtors' bankruptcy counsel to assist

5  the Debtors with preparing to file for these chapter 11 cases, managing vendors that provide critical

6  goods and services to the Hospital, preparing cash flow models and forecasts required by the

7  Debtors' proposed debtor-in-possession financing, and now is in large part assisting the Debtors

8  with preparation of the schedules and statements of financial affairs, monthly operating reports and

9  other bankruptcy reporting requirements.

10        As further detailed in the First Day Declaration, the Debtors seek to consummate a section

11  363 sale of all of substantially all of its assets.  The Debtors also seek critical debtor-in-possession

12  financing to finance operations through these chapter 11 cases.  Due to the complexity of the

13  Debtors' business and assets, and the extremely short timeframe to consummate a sale or

14  restructuring, both of these processes will require the services of Portage Point.  The Debtors believe

15  that Portage Point is a qualified professional whose services are key to a successful outcome in these

16  chapter 11 cases.

17  **V.**

18  **PORTAGE POINT'S QUALIFICATIONS**

19        The Debtors seek to retain Portage Point because of Portage Point's recognized expertise

20  and extensive experience and knowledge in the field of restructuring advisory and investment

21  banking involving reorganizations under chapter 11 of the Bankruptcy Code.

22        Portage Point is a business advisory, interim management, investment banking and financial

23  services firm whose professionals have a wealth of experience in providing a range of financial

24  advisory and investment banking services and enjoy an excellent reputation for services they have

25  rendered on behalf of debtors and creditors throughout the United States.  As detailed in the

26  Lozynski Declaration attached hereto, professionals currently employed by Portage Point have

27

28

1  assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and

2  other entities in numerous cases throughout the country.

3      The Debtors believe that Portage Point is both well-qualified and uniquely able to represent

4  the Debtors in these chapter 11 cases in an efficient and timely manner.

5  **VI.**

6  **<u>SERVICES TO BE PROVIDED</u>**

7      Subject to further order of the Court, and consistent with the Engagement Letter, the

8  Debtors request the retention and employment of Portage Point to render the following services

9  (the "<u>Restructuring Advisory Services</u>"), among others, as directed by the Debtors:

10      (i)     assisting in the evaluation and/or development of a short-term cash flow model and

11  / or related liquidity management tools for the Hospital for such purpose(s) as the Hospital may

12  require;

13      (ii)    assisting in the evaluation and/or development of a business plan and / or such

14  other related forecasts and analyses for the Hospital for such purpose(s) as the Hospital may

15  require;

16      (iii)   assisting in obtaining and presenting information required by parties in interest in a

17  Chapter 11 Case, including any statutory committees appointed in the Chapter 11 Case, or by the

18  Court.

19      Other general services Portage Point agreed to provide (the "<u>General Services</u>") are as

20  follows:

21      (iv)    advising the Hospital on tactics and strategies for negotiating with the Constituents

22  (as defined in the Engagement Letter);

23      (v)     rendering financial advice to the Hospital and participating in meetings or

24  negotiations with the Constituents and/or rating agencies or other appropriate parties in connection

25  with any Restructuring, Sale Transaction and/or Financing;

26      (vi)    assisting the Hospital in preparing documentation within Portage Point's area of

27  expertise that is required in connection with any Restructuring, Sale Transaction and/or Financing;

28

(vii)    attending meetings of the board of directors (or similar governing body) of the Hospital with respect to matters on which Portage Point has been engaged to advise hereunder;

(viii)    providing testimony, as necessary, with respect to matters on which Portage Point has been engaged to advise hereunder in any proceeding in a chapter 11 case; and

(ix)    providing the Hospital with other financial restructuring advice as may be specifically agreed upon in writing by the Hospital and Portage Point.

## VII.

## COMPENSATION

### A.    Compensation Requested

Portage Point has accepted this engagement conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for its out-of-pocket expenses incurred in accordance with its customary billing practices, subject to periodic adjustments as set forth in the Engagement Letter.  As more fully set forth in the Engagement Letter, the Debtors intend to compensate Portage Point for its Restructuring Advisory Services pursuant to Portage Point's current standard hourly rates, subject to periodic adjustments, which are as follows:

| Title | Hourly Rate[2] |
|---|---|
| Managing Partner | $980 |
| Senior Advisor | $800-925 |
| Managing Director | $800-$880 |
| Director | $655-$735 |
| Vice President | $530-$640 |
| Associate | $395-$440 |

Consistent with the Engagement Letter, it is Portage Point's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  It is also

---

[2]    Represents current hourly rates.  Rates may differ from the rates set forth in the Engagement Letter due to periodic adjustments, as provided for in Engagement Letter.

Portage Point's policy to charge its clients only the amount actually incurred by Portage Point in connection with such items.  Examples of such expenses include outside counsel costs, outside copy services, travel, lodging, meals, and services of outside vendors.  Portage Point shall comply with the United States Trustee's Guidelines regarding reimbursement of expenses.

Subject to the Court's approval, Portage Point intends to apply for payment of compensation for professional services rendered and reimbursement of expenses.  Such applications shall be pursuant to sections 327 and 330 of the Bankruptcy Code for the Restructuring Advisory Services (as defined below) and section 328 of the Bankruptcy Code for the Investment Banking Services (as defined in the Engagement Letter), which the Debtors seek through a separate application filed concurrently herewith.

No promises have been received by Portage Point nor any employee thereof as to payment or compensation in connection with these chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code.  Except for internal agreements among the employees an independent contractors of Portage Point regarding the sharing of revenue or compensation, neither Portage Point nor any of its employees or independent contractors has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Rule 2016.

**B.    Compensation Received by Portage Point From the Debtors Prior to the Petition Date**

In connection with these cases, the Debtors paid retainers to Portage Point in the amounts of $200,000 on March 22, 2023, and $100,000 on April 5, 2023.  In addition, in the 90 days prior to the Petition Date, Portage Point received payments in the ordinary course of business totaling $688,840.50 in the aggregate for Hourly Fees[3].  Additionally, the aggregate amount paid for prepetition expenses to the subsidiaries of Portage Point Partners, LLC, Triple P RTS, LLC and Triple P Securities, LLC, pursuant to their Engagement Letter was $64,664.42.  As of the Petition Date, Portage Point holds an unapplied retainer balance of $166,733.45.  At all times during the 90-day period prior to the Petition Date Portage Point maintained a positive balance of its retainer.  As

---

[3] A portion of the prepetition fees collected by Triple P RTS, LLC was for time billed by a single junior staff member supporting investment banking services.

1  stated in the Engagement Letter, the retainer is the property of Portage Point, is not held in a separate

2  account, and was earned upon receipt, and, consequently, Portage Point placed the amounts into its

3  general cash account.[4]

4  **VIII.**

5  **PORTAGE POINT IS DISINTERESTED**

6  To the best of the Debtors' knowledge and except to the extent disclosed herein and in the

7  Lozynski Declaration: (a) Portage Point is a "disinterested person" within the meaning of section

8  101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and

9  supplemented by section 1107(b) of the Bankruptcy Code and does not hold or represent an interest

10  materially adverse to the Debtors' estates; (b) Portage Point has no connection to the Debtors, their

11  creditors or other parties-in-interest in these chapter 11 cases, or the attorneys or accountants of the

12  foregoing, or the United States Trustee for the Los Angeles (the "U.S. Trustee") or any person

13  employed by the U.S. Trustee's office; and (c) does not hold any interest adverse to the Debtors'

14  estates.

15  As set forth in further detail in the Lozynski Declaration, Portage Point has certain

16  connections with creditors and other parties-in-interest in these chapter 11 cases. All of these

17  matters, however, are unrelated to these chapter 11 cases.  Portage Point does not believe that any

18  of these matters represent an interest materially adverse to the Debtors' estates or otherwise create

19  a conflict of interest regarding the Debtors or these chapter 11 cases.

20  To the extent that any new relevant facts or relationships bearing on the matters described

21  herein during the period of Portage Point's retention are discovered or arise, Portage Point will use

22  reasonable efforts to promptly file a supplemental declaration.

23  **IX.**

24  **BASIS FOR RELIEF**

25

26

27  [4] The Debtors have engaged Triple P Securities, LLC, a wholly-owned subsidiary of Portage Point, as their
investment banker in connection with their chapter 11 bankruptcy cases and have filed a separate employment
28  application.

SMRH:4886-5937-2388.1

-7-

Section 327(a) of the Bankruptcy Code requires court approval for the employment of "professional persons," retained to represent or perform services of the estate.  11 U.S.C. § 327(a).  In determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code, and therefore must be retained by express approval of the court, courts generally consider whether such entity is involved in the actual reorganization effort, rather than a debtor's ongoing business operations.  *See, e.g.*, *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) ("[T]he phrase 'professional persons,' as used in § 327(a), is a term of art reserved for those persons who play an intimate role in the reorganization of a debtors' estate.").  In making this determination, courts often consider the following factors in determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code:

a.    whether the entity controls, manages, administers, invests, purchases, or sells assets that are significant to the debtor's reorganization;

b.    whether the entity is involved in negotiating the terms of a plan of reorganization;

c.    whether the entity is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

d.    whether the entity is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate;

e.    the extent of the entity's involvement in the administration of the debtor's estate; and

f.    whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional" within the ordinary meaning of the term.

*See, e.g.*, *In re First Merchs. Acceptance Corp.*, No. 97-1500, 1997 WL 873551, at *3 (D. Del. Dec. 15, 1997) (listing factors); *In re Sieling Assocs. Ltd. P'ship*, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991) (authorizing the debtor to retain an environmental consultant in the ordinary course of business); *In re Riker Indus., Inc.*, 122 B.R. 964, 973 (Bankr. N.D. Ohio 1990) (not requiring section 327 of the Bankruptcy Code approval of the fees of a management and consulting firm that performed only "routine administrative functions" and whose "services were not central to [the]

1    bankruptcy case"); *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (only those

2    professionals involved in the actual reorganization effort, rather than debtor's ongoing business,

3    require approval under section 327 of the Bankruptcy Code).

4         The foregoing factors must be considered as a whole when determining if an entity is a

5    "professional" within the meaning of section 327 of the Bankruptcy Code.  No factor alone is

6    dispositive.  *See First Merchs.*, 1997 WL 873551, at *3 ("In applying these factors, the Court

7    stresses that no one factor is dispositive and that the factors should be weighed against each other

8    and considered in total.").

9         The Debtors submit that for all the reasons stated above and in the Lozynski Declaration, the

10   retention and employment of Portage Point as restructuring advisor is warranted.  Further, as stated

11   in the Lozynski Declaration, Portage Point is a "disinterested person" within the meaning of section

12   101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does

13   not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors,

14   their creditors, or other parties in interest, except as may be disclosed in the Lozynski Declaration.

15        The Debtors have sufficient funds to pay any amounts described in this Motion in the

16   ordinary course of business by virtue of expected cash flows from ongoing operations, debtor-in-

17   possession financing, and anticipated access to cash collateral.

18

19

20

21

22

23

24

25

26

27

28

1         WHEREFORE, the Debtors respectfully request that the Court grant this Application and

2    enter an order in the form attached hereto as **Exhibit A**, granting the relief requested herein and

3    granting such other relief as is just and proper.

4    Dated: May 19, 2023

5                                 DEBTORS AND DEBTORS-IN-POSSESSION

6

7                               By      _____

8                                         Alice Cheng

                 Chief Executive Officer of the Debtors and Debtors-in-

9                                         Possession

10

11   Dated: May 19, 2023

12                            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

13

14                              By          */s/ Jennifer L. Nassiri*

15                                        Jennifer L. Nassiri

16

17                                  JUSTIN R. BERNBROCK

                               JENNIFER L. NASSIRI

                               CATHERINE JUN

18                                  ROBERT B. McLELLARN

                               ALEXANDRIA G. LATTNER

19

20                                 Proposed Attorneys for Debtors and

                                 Debtors-in-Possession

21

22

23

24

25

26

27

28

                                                       App. TO EMPLOY PORTAGE POINT AS
                                                          RESTRUCTURING ADVISOR

1

## DECLARATION OF ALYSSA LOZYNSKI

2          I, Alyssa Lozynski, declare as follows:

3          1.      I am a Senior Director at Portage Point Partners LLC ("Portage Point Partners"),

4    which has its principal place of business at 300 North LaSalle, Suite 1420, Chicago, Illinois 60654.

5    Triple P RTS, LLC (hereinafter, "Portage Point") is a wholly owned by Portage Point Partners, LLC,

6    and in my capacity as Senior Director at Portage Point Partners, LLC, I am authorized to submit this

7    Declaration on behalf of Portage Point.  Portage Point is a business advisory, interim management,

8    investment banking and financial services firm.  Portage Point professionals have advised debtors,

9    creditors and equity constituents in numerous reorganizations and sale processes, providing advisory

10   services that have included financial analysis and budgeting,  forecasting,  cash  management,

11   operational  assessments and improvements, dispute and litigation advisory, interim management

12   services and investment banking services.

13         2.      I submit this Declaration on behalf of Portage Point in support of the *Debtors'*

14   *Application Seeking an Order Authorizing the Retention and Employment of Triple P RTS, LLC as*

15   *Restructuring Advisor for the Debtors and Debtors in Possession Pursuant to 11 U.S.C. §§ 327 and*

16   *330, Effective as of April 19, 2023* (the "Application") filed by the above-referenced debtors (the

17   "Debtors") in the above-captioned cases (the "Bankruptcy Cases") before the United States

18   Bankruptcy Court for the Central District of California (this "Court"). All capitalized terms used but

19   not defined herein shall have the meaning ascribed to such terms in the Application.

20         3.      A true and correct copy of the Engagement Letter is attached as **Exhibit 1** hereto.

21         4.      Except as otherwise noted, I have personal knowledge of the matters set forth herein.

22   If called as a witness, I could, and would, testify competently to the matters set forth herein.  Certain

23   of the disclosures herein, however, relate to matters within the personal knowledge of other

24   professionals at Portage Point and are based on information provided to me by such professionals.

25         5.      I have over thirteen years of financial advisory experience and advising

26   underperforming and distressed companies. My experience includes representing companies,

27   boards, creditors, and other stakeholders in a variety of situations including liquidity management,

28

contingency planning, financial modeling, developing and implementing operational and financial performance improvement initiatives and in-court and out-of-court restructurings. Prior to joining Portage Point, I was in the Transaction Advisory Group at Alvarez & Marsal and prior to joining Alvarez & Marsal, I was part of the M&A Transaction Services Group at Deloitte. I hold M.S. and B.S. degrees in Accounting, and minor in Finance from the Gies College of Business at the University of Illinois and I am a Certified Public Accountant.

6.      In addition to acting as the restructuring advisor to the Debtors in these chapter 11 cases, I have provided restructuring advisory or other services in connection with the in-court restructuring of numerous companies, including *Performance Powersports Group Investor LLC*, Case No. 23-10047; *Alamo Drafthouse Cinemas Holdings, LLC, et al.*, Case No. 21-10474 (MFW) (Bankr. D. Del.); *Bouchard Transportation Co., Inc., et al.*, Case No. 20-34758 (DRJ) (Bankr. S.D. Tex.); *China Fishery Group Limited (Cayman), et al.*, Case No. 16- 11895 (JLG) (Bankr. S.D.N.Y.); *Compute North Holdings, Inc., et al.*, Case No. 22-90273 (MI) (Bankr. S.D. Tex.); *Dura Automotive Systems, LLC*, Case No. 19-06741 (RSM) (Bankr. M.D. Tenn.); *Hornbeck Offshore Services, LLC*, Case No. 20-32685 (DRJ) (Bankr. S.D. Tex.); *Intelsat S.A.*, Case No. 20-32299 (KLP) (Bankr. E.D. Va.); *Melinta Therapeutics, Inc., et al.*, Case No. 19-12748 (LSS) (Bankr. D. Del.); *Teligent, Inc.*, Case No. 21-11332 (BLS) (Bankr. D. Del.).

**B.      Portage Point's Qualifications**

7.      I believe that Portage Point and the professionals it employs are uniquely qualified to advise the Debtors on the matters for which Portage Point is proposed to be employed in a cost-effective, efficient, and expert manner.

8.      Portage Point is a business advisory, interim management, investment banking, and financial services firm whose professionals have a wealth of experience in providing financial advisory and investment banking services and enjoy an excellent reputation for services they have rendered on behalf of debtors and creditors throughout the United States. The Portage Point team is comprised of operators and advisors with proven skills necessary to identify, preserve, and create value in the most challenging and complex situations. Portage Point's professionals have extensive

experience across a wide range of industries, including healthcare and pharmaceuticals, automotive and industrials, aviation and aerospace, business and industrial services, consumer products, distribution and logistics, e-commerce and digital, energy and utilities, restaurants and food services, manufacturing, retail, and tech-enabled services. The Debtors selected Portage Point to perform restructuring advisory services because the Debtors require assistance in collecting and analyzing operational and financial information in relation to these chapter 11 cases that pertain to complex issues specific to the healthcare industry, and because Portage Point has a broad range of expertise, including in (a) general financial advice, (b) mergers, acquisitions, and divestitures, (c) financing, (d) liability management, and (e) corporate restructuring.

9.    I, and the Portage Point personnel who will work with me on this matter (collectively, the "Portage Point Professionals"), have substantial expertise in, among other things, restructuring negotiations, treasury operations, liquidity management, financial accounting and reporting, operational and debt reorganization, key stakeholder management and business plan development, and cost-reduction initiatives. The Portage Point Professionals will work closely with the Debtors' and professionals throughout the reorganization and/or 363 Sale processes.

10.    By virtue of the expertise of its restructuring personnel, Portage Point is well qualified to provide services to and represent the Debtors' interests in these chapter 11 cases. Since March 17, 2023, Portage Point has provided restructuring advisory services to the Debtors. Portage Point has acquired knowledge of the Debtors and their businesses, and developed familiarity with the Debtors' financial affairs, debt structure, operations, and related matters. For these reasons, Portage Point is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these chapter 11 cases.

11.    In addition to the matters cited to above regarding my personal experience in complex chapter 11 cases, professionals currently employed by Portage Point, have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous cases, including the following: *1031 Tax Group, LLC*, No. 07-11448 (Bankr. S.D.N.Y. 2007*); In re Alamo Drafthouse Cinemas Holdings, LLC*, No. 21-10474 (MFW) (Bankr.

1   D. Del. March 29, 2021); *In re Alex and Ani, LLC*, No. 21-10918 CTG (Bankr. D. Del. July 15,

2   2021); *In re American Safety Razor Company, LLC*, No 10-12351 (MFW) (Bankr. D. Del. July 28,

3   2010); *In re APC Automotive Technologies Intermediate Holdings, LLC*, No. 20-11466 (CSS)

4   (Bankr. D. Del. June 23, 2020) (Independent Board member and Restructuring Committee Chair);

5   *In re Blackhawk Mining LLC, et al.*, Case No. 19-11595 (LSS) (Bankr. D. Del.); *In re Bouchard*

6   *Transportation, Co., Inc.*, No. 20-34682 (DRJ) (Bankr. S.D. Tex. October 22, 2020); *In re Car*

7   *Outlet Holding Co.*, No. 19-03740  (Bankr. N.D. Ill. February 13, 2019); *In re Compute North*

8   *Holdings, Inc.*; No. 22-90273 (Bankr. S.D. Tex. September 22, 2022); *In re Dura Automotive*

9   *Systems*, No. 19-12378 (KBO) (Bankr. D. Del. Oct. 17, 2019); *In re Energold Drilling Corp.*, No.

10   S1910194 (S.C. BC Vanc. September 13, 2019); *In re Everyware Global, Inc.*, No. 15-10743

11   (Bankr. D. Del. April 7, 2015); *In re GAL Liquidating Corp. (f/k/a GST AutoLeather, Inc.)*, No. 17-

12   12100 (Bankr. D. Del. October 3, 2017); *In re Glob. Brokerage Inc.*, No. 17-12100 (MEW) (Bankr.

13   S.D.N.Y.); *In re Hayes Lemmerz International*, No. 09-11655 (MFW) (Bankr. D. Del. May 11,

14   2009); *In re Hornbeck Offshore Services, LLC*, No. 20-32685 (DRJ) (Bankr. S.D. Tex. June 18,

15   2020); *In re IEH Auto Parts Holding LLC (Auto Plus)*, No. 23-90054 (Bankr. S.D. Tex. January 31,

16   2023); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D.V.A. May 13, 2020); *In re LB Steel,*

17   *LLC*, No. 15–35358 (Bankr. N.D. Ill. April 18, 2016); *In re Lenox Grp., Inc.*, No. 08-14680-ALG

18   (Bankr. S.D.N.Y. November 23, 2008); *In re Loot Crate, Inc.*, No. 19-11791 (BLS) (Bankr. D. Del.

19   Sept. 18, 2019); *In re LGA3 Corp.*,No. 20-11456 (Bankr. D. Del. June 1, 2020); *In re Melinta*

20   *Therapeutics*, No. 19-12748 (LSS) (Bankr. D. Del. Dec. 27, 2019); *In re Modular Space*

21   *Corporation*, No. 16-12825 (KJC) (Bankr. D. Del. December 21, 2016); *In re Musclepharm*

22   *Corporation*, No. 22-14422 (Bankr. D. Nev. December 15, 2022); *In re Newmann Homes, Inc.*, No.

23   07-20412 (Bankr. N.D. Ill. November 1, 2017); *In re NewPage Corporation*, No. 11-12804 (Bankr.

24   D. Del. September 7, 2011); *In re Northstar Aerospace, Inc.*, No. 12-11817 (Bankr. D. Del. June

25   13, 2012); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D.V.A. October 26, 2015); *In*

26   *re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo. April 13, 2016); *In re Rupari*

27   *Holding Corp.*, No. 17-10793 (Bankr. D. Del. April 10, 2017) (Independent Board Member and

28

SMRH:4886-5937-2388                                    -4-                                    Lozynski Declaration

Restructuring Committee Chair); *In re School Specialty, Inc.*, No. 13-10125 (KJC) (Bankr. D. Del. Apr. 22, 2013); *In re Performance Powersports Group Investor, LLC*; No. 23-10047 (LSS) (Bankr. D. Del. January 16, 2023); *In re Pipeline Health System, LLC*; No. 22-90291 (Bankr. S.D. Tex. October 2, 2022) (Independent Board Member and Restructuring Committee Chair); *In re Synergy Pharmaceuticals Inc., et al.*, No. 18-14010 (LGB) (Bankr. S.D.N.Y. December 12, 2018); *In re Teligent, Inc.*; No. 21-11332 (Bankr. D. Del. October 14, 2021); *In re The Financial Oversight and Management Board for Puerto Rico*, *as a representative of Puerto Rico Electric Power Authority*, No. 17-4780 (LTS) (Bankr. D.P.R. July 3, 2017); *In re The Standard Register Co.*, No. 15-10548 (Bankr. D. Del. March 13, 2015); *In re Total Finance Investment Inc.*, No. 19-03734 (CAD) (Bankr. N.D. Ill. Mar. 14, 2019); *In re Triangle Petroleum USA Corp.*, No. 16-11566 (Bankr. D. Del. June 29, 2016); *In re Tribune Media Company (f/k/a Tribune Company)*, No. 08-13141 (KJC) (Bankr. D. Del. December 8, 2008); *In re Ultimate Electronics, Inc.*, No. 05-10104 (PJW) (Bankr. D. Del. January 11, 2005); *In re Variant Holding Company, LLC*, No. 14-12021 (Bankr. D. Del. August 28, 2014); *In re Verso Corporation*, No. 16-10163 (Bankr. D. Del. January 26, 2016); *In re Voyager Digital Holdings LLC*; No. 22-10943 (Bankr. S. D. N. Y. July 5, 2022) (Independent Board Member and Restructuring Committee Chair); *In re Z Gallerie, LLC*, No. 19-10488 (Bankr. D. Del. March 11, 2019.

**C.    Services to Be Provided by Portage Point for Restructuring Advisement Services**

12.    Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors request the retention and employment of Portage Point to render the following services (the "Restructuring Advisory Services"), among others, as directed by the Debtors:

(a)    assisting in the evaluation and/or development of a short-term cash flow model and / or related liquidity management tools for the Hospital for such purpose(s) as the Hospital may require;

(b)    assisting in the evaluation and/or development of a business plan and / or such other related forecasts and analyses for the Hospital for such purpose(s) as the Hospital may require;

(c)    assisting in obtaining and presenting information required by parties in interest in a Chapter 11 Case, including any statutory committees appointed in the Chapter 11 Case, or by the Court.

Other general services Portage Point agreed to provide (the "General Services") are as follows:

(d)    advising the Hospital on tactics and strategies for negotiating with the Constituents (as defined in the Engagement Letter);

(e)    rendering financial advice to the Hospital and participating in meeting or negotiations with the Constituents and/or rating agencies or other appropriate parties in connection with any Restructuring, Sale Transaction and/or Financing;

(f)    assisting the Hospital in preparing documentation within Portage Point's areas of expertise that is required in connection with any Restructuring, Sale Transaction and/or Financing;

(g)    attending meetings of the board of directors (or similar governing body) of the Hospital with respect to matters on which Portage Point has been engaged to advise hereunder;

(h)    providing testimony, as necessary, with respect to matters on which Portage Point has been engaged to advise hereunder in any proceeding in a chapter 11 case; and

(i)    providing the Hospital with other financial restructuring advice as may be specifically agreed upon in writing by the Hospital and Portage Point.

**D.    Indemnification**

13.    The Engagement Letter contains standard indemnification and limitation of liability language with respect to Portage Point's services (the "Indemnity").  The Debtors and Portage Point believe that the Indemnity is customary and reasonable for engagements of this type and should be approved.  Nevertheless, and notwithstanding any provisions of the Engagement Letter to the contrary, Portage Point has agreed to modify the indemnification language as follows:

"With respect to the Portage Point Indemnity, the Debtors shall have no obligation to indemnify Portage Point or to provide contribution or reimbursement to Portage Point for

any claim or expense that is either (a) judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith, or self-dealing of Portage Point; or (b) settled prior to a judicial determination as to Portage Point's willful misconduct, gross negligence, bad faith, or self-dealing but determined by the Court, after notice and a hearing, to be a claim or expense for which Portage Point should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter."

**E.      Proposed Compensation**

14.      Portage Point has accepted this engagement conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for its out-of-pocket expenses incurred in accordance with its customary billing practices, subject to periodic adjustments as set forth in the Engagement Letter.  As more fully set forth in the Engagement Letter, the Debtors intend to compensate Portage Point for its Restructuring Advisory Services pursuant to Portage Point's current standard hourly rates, subject to periodic adjustments, which are as follows:

| Title | Hourly Rate[1] |
| --- | --- |
| Managing Partner | $980 |
| Senior Advisor | $800-925 |
| Managing Director | $800-$880 |
| Director | $655-$735 |
| Vice President | $530-$640 |
| Associate | $395-$440 |

15.      As part of the fee application process, Portage Point will keep time records for its Restructuring Advisory Services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the LBRs, and any other applicable procedures and orders of the Court.

16.      **Reasonable and Necessary Expenses**.  Consistent with the Engagement Letter, it is Portage Point's policy to charge its clients in all areas of practice for identifiable, non-overhead

---

[1] Represents current hourly rates.  Rates may differ from the rates set forth in the Engagement Letter due to periodic adjustments, as provided for in Engagement Letter.

expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  It is also Portage Point's policy to charge its clients only the amount actually incurred by Portage Point in connection with such items.  Examples of such expenses include outside counsel costs, outside copy services, travel, lodging, meals, and services of outside vendors. Portage Point will comply with the United States Trustee Guidelines regarding reimbursement of expenses.

17.    Portage Point intends to apply to the Court for allowance of postpetition compensation for professional services rendered and reimbursement of expenses.  Such applications shall be pursuant to §§ 327, 330 and 331 of the Bankruptcy Code for the Restructuring Advisory Services, and otherwise in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the LBRs, and any other applicable procedures and orders of the Court.  Portage Point will also endeavor to make its applications for compensation and reimbursement comply with the Guide to Applications for Retainers, and Professional and Insider Compensation promulgated by the U.S. Trustee.

18.    To the best of my knowledge, information, or belief, insofar as I have been able to obtain after reasonable inquiry, no promises have been received by Portage Point nor any employee thereof as to payment or compensation in connection with these chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code.  Except for internal agreements among the employees and independent contractors of Portage Point regarding the sharing of revenue or compensation, neither Portage Point nor any of its employees or independent contractors has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Rule 2016.

**F.    Compensation Received by Portage Point From the Debtors**

19.    In connection with these cases, the Debtors paid prepetition retainers to Portage Point in the amount of $200,000 on March 22, 2023, and $100,000 on April 5, 2023.  In addition, in the 90 days prior to the Petition Date, Portage Point received payments in the ordinary course of

business totaling $688,840.50 in the aggregate for Hourly Fees[2].  Finally, in the 90 days prior to the Petition Date, the subsidiaries of Portage Point Partners, LLC, Triple P RTS, LLC and Triple P Securities, LLC, received payment for expenses pursuant to their Engagement Letter totaling $64,664.42.  As of the Petition Date, Portage Point holds an unapplied retainer balance of $166,733.45. At all times during the 90-day period prior to the Petition Date Portage Point maintained a positive balance of its retainer.  As stated in the Engagement Letter, the retainer is the property of Portage Point, is not held in a separate account, and was earned upon receipt, and, consequently, Portage Point placed the amounts into its general cash account.

20.     As of the Petition Date, the Debtors did not owe Portage Point any amounts for services rendered before the Petition Date.  Although certain expenses and fees may have been incurred, but not yet applied to Portage Point's retainers, Portage Point's total retainers always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

**G.     No Duplication of Services**

21.     Portage Point shall use its reasonable best efforts to ensure its services will complement, and not duplicate, the services rendered by any other professionals retained in these Chapter 11 Cases.

**H.     Connections to Potential Parties in Interest**

22.     In connection with Portage Point's proposed retention by the Debtors, Portage Point undertook to determine whether it had any conflicts or other material relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.  In connection with this inquiry, Portage Point obtained from the Debtors and their professionals the names of individuals and entities that may be parties in interest in these chapter 11 cases (the "Potential Parties in Interest").  A categorized summary of the Potential Parties in Interest is provided on **Schedule 1** attached hereto.  I have not received from the Debtors, and do not currently know of, any other

---

[2] A portion of the prepetition fees collected by Triple P RTS, LLC was for time billed by a single junior staff member supporting investment banking services.

1    persons or entities that are parties in interest or professionals in these chapter 11 cases, other than

2    the Potential Parties in Interest identified in Schedule 1 hereto.

3          23.     To the best of my knowledge, information, and belief, Portage Point has not

4    represented any Potential Parties in Interest in connection with matters relating to the Debtors, their

5    estates, assets, or businesses, and will not represent other entities which are creditors of, or have

6    other relationships to, the Debtors in matters relating to these chapter 11 cases.

7          24.     As part of this inquiry, Portage Point runs an internal process to determine whether

8    the names of each of the Potential Parties in Interest are or have been current and recent clients,

9    vendors, and referral sources.  Through this process, Portage Point determined that it currently has

10   and/or formerly had a relationship with certain of the Potential Parties in Interest (and/or their

11   affiliates or entities that Portage Point believes to be affiliates, as the case may be) on matters wholly

12   unrelated to the Debtors or these chapter 11 cases.  To the best of my knowledge, information and

13   belief, and based on such internal review process, **Schedule 2** lists Potential Parties in Interest

14   (and/or their apparent affiliates or entities that Portage Point believes to be affiliates, as the case

15   may be) with which Portage Point currently has or formerly had a client or similar relationship on

16   matters wholly unrelated to the Debtors or these Chapter 11 Cases, including but not limited to

17   engagements to provide financial advisory services and entities with whom Portage Point has

18   engaged in or is currently engaged in an ordinary course business development dialogue (the

19   "Connections to Potential Parties in Interest").

20         25.     As part of Portage Point's diverse business, Portage Point appears or may appear as

21   an advisor or an investment banker in numerous cases, proceedings, or transactions involving

22   attorneys, accountants, investment bankers, and financial consultants, some of whom may represent

23   claimants and Potential Parties in Interest or be claimants and Potential Parties in Interest in these

24   chapter 11 cases.  Further, Portage Point (including its professionals through their prior

25   employment) has in the past, and may in the future, be represented by attorneys and law firms, some

26   of whom may be involved in these chapter 11 cases.  In addition, Portage Point (including its

27   professionals through their prior employment) has in the past and will likely in the future be working

28

with, against, or for other professionals involved in these chapter 11 cases in matters unrelated to these chapter 11 cases.  In addition, Portage Point has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these chapter 11 cases in which it works with or against or has mutual clients with other professionals involved in these chapter 11 cases.  In particular, Portage Point may also be engaged to represent, or may have been engaged to represent in the past, committees or groups of lenders, creditors, or equity owners in matters wholly unrelated to the Debtors or these chapter 11 cases, some of which are included on the Potential Parties in Interest list.

26.    Other than as referenced herein or set forth on Schedule 2, I am unaware of any existing or prior client or similar relationships that Portage Point has had with the Potential Parties in Interest.  Portage Point has not been engaged to assist any entity or person other than the Debtors on matters relating to, or in connection with, these chapter 11 cases.  If the Court approves the proposed employment of Portage Point by the Debtors, Portage Point will not accept any engagement or perform any services in relation to these chapter 11 cases for any entity or person other than the Debtors.  It is possible that Portage Point may now or in the future be engaged by one or more of the Potential Parties in Interest in matters wholly unrelated to the Debtors or these chapter 11 cases without my knowledge.  In addition, the Debtors may have customers, creditors, competitors, and other parties with whom they maintain business relationships that are not listed as Potential Parties in Interest and with whom Portage Point may now or in the future have engagements or maintain material commercial or other professional relationships.  To the extent that Portage Point discovers any, or enters into any new material commercial or other professional relationship with Potential Parties in Interest, it will use reasonable efforts to supplement this disclosure to the Court.

27.    Portage Point and certain of its members and employees may have in the past represented, may currently represent, and likely in the future will represent, one or more Potential Parties in Interest in connection with matters unrelated (except as otherwise disclosed herein) to the Debtors and these chapter 11 cases.

28.     Certain employees of Portage Point may have mortgages, deposits, consumer loans, investment accounts, brokerage accounts, or other banking, brokerage, or customer relationships with the Debtors or institutions that are creditors, equity holders, or other Potential Parties in Interest in these chapter 11 cases.  I do not believe that these relationships create a conflict of interest regarding the Debtors or their chapter 11 cases.

29.     Certain employees of Portage Point were formerly employed by other investment banking, financial services, or other professional services firms that may be among, or represent other parties that are among, the creditors, equity holders, or other Potential Parties in Interest in these chapter 11 cases in connection with matters unrelated to the Debtors and these chapter 11 cases.  I do not believe that these matters create a conflict of interest regarding the Debtors or these chapter 11 cases.

30.     Based on the foregoing, to the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, (a) Portage Point is a "disinterested person" within the meaning of § 101(14) of the Bankruptcy Code, as required by § 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates, and (b) Portage Point has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in this Declaration.

31.     To the extent that any new material facts or relationships bearing on the matters described herein during the period of Portage Point's retention are discovered or arise, Portage Point will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

1

2    I declare under penalty of perjury under the laws of the United States of America that the

3  foregoing is true and correct.

4    Executed on this 19th day of May, 2023, at Scottsdale, Arizona.

5

6    _____
     Alyssa Lozynski

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Exhibit 1 to Lozynski Declaration

**Engagement Letter**

PORTAGE POINT PARTNERS

Triple P RTS, LLC
Triple P Securities, LLC
300 North LaSalle, Suite 1420
Chicago, IL 60654
portagepointpartners.com

March 17, 2023

Alice Cheng
President & CEO
Beverly Community Hospital Association
309 West Beverly Boulevard
Montebello, CA 90640

*Re: Retention to Provide Restructuring Advisory and Investment Banking Services*

Dear Ms. Cheng:

This letter agreement (this "Agreement") confirms the understanding and agreement between Triple P RTS, LLC and Triple P Securities, LLC (collectively, "Portage Point") and Beverly Community Hospital Association and its controlled subsidiaries (collectively, the "Company") regarding the Company's engagement of Portage Point to provide certain restructuring advisory and investment banking services to the Company on the terms and conditions set forth herein (the "Engagement").

All defined terms used in this Agreement shall have the meanings ascribed to them in this Agreement. This Agreement refers to Portage Point and the Company each as a "party" and to Portage Point and the Company together as the "parties."

The Company hereby retains Triple P RTS, LLC as its restructuring advisor and Triple P Securities, LLC as its sole investment banker to provide the Company with general restructuring advice and to advise it in connection with any Restructuring, Sale Transaction, and/or Financing (each as defined below) on the terms and conditions set forth herein. By signing this Agreement, Portage Point hereby accepts its appointment as restructuring advisor and investment banker under the terms and conditions hereof.

**Description of Services**

1. Portage Point agrees, in consideration of the compensation provided for herein, to perform such of the following services as the Company may reasonably request.

   *Investment Banking*

   (a) reviewing and analyzing the Company's business, operations, and financial projections;

   (b) evaluating the Company's potential debt capacity in light of its projected cash flows;

   (c) assisting in the determination of a capital structure for the Company;

   (d) assisting in the determination of a range of values for the Company on a going-concern basis;

   (e) advising and assisting the Company in evaluating any potential Financing by the Company, and, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such Financing;



Confidential



(f) assisting the Company in identifying and evaluating candidates for any potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction;

(g) advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring, Sale Transaction and/or Financing;

*Restructuring Advisory*

(h) assisting in the evaluation and/or development of a short-term cash flow model and / or related liquidity management tools for the Company for such purpose(s) as the Company may require;

(i) assisting in the evaluation and/or development of a business plan and / or such other related forecasts and analyses for the Company for such purpose(s) as the Company may require;

(j) assisting in the evaluation and implementation of contingency planning related to Company's commencing or otherwise becoming the subject of a case under chapter 11 of title 11 of the United States Code (any such case, a "Chapter 11 Case");

(k) assisting in obtaining and presenting information required by parties in interest in a Chapter 11 Case, including any statutory committees appointed in the Chapter 11 Case, or by the court presiding over the Chapter 11 Case (the "Bankruptcy Court");

*General*

(l) advising the Company on tactics and strategies for negotiating with the Constituents as defined below;

(m) rendering financial advice to the Company and participating in meetings or negotiations with the Constituents and/or rating agencies or other appropriate parties in connection with any Restructuring, Sale Transaction and/or Financing;

(n) assisting the Company in preparing documentation within Portage Point's area of expertise that is required in connection with any Restructuring, Sale Transaction and/or Financing;

(o) attending meetings of the board of directors (or similar governing body) of the Company with respect to matters on which Portage Point has been engaged to advise hereunder;

(p) providing testimony, as necessary, with respect to matters on which Portage Point has been engaged to advise hereunder in any proceeding in a Chapter 11 Case; and

(q) providing the Company with other financial restructuring advice as may be specifically agreed upon in writing by the Company and Portage Point.

## Commencement of Engagement

2. Portage Point shall commence the Engagement on or about March 20, 2023.





## Fees, Retainer and Expense Reimbursement

3.  As consideration for the services to be provided, the Company shall pay the following compensation to Portage Point:

(a) *Hourly Fees*: Portage Point's hourly fees (the "Hourly Fees") shall be based on the time worked by Portage Point personnel at Portage Point's hourly rates, which as of the date of this Agreement are as follows.

| Title | Hourly Rate |
|---|---|
| Managing Partner | $975 |
| Service Line Leader | $925 |
| Senior Advisor | $800 - $925 |
| Managing Director | $800 - $875 |
| Director | $650 - $725 |
| Vice President | $525 - $635 |
| Associate | $395 - $435 |

(b) Portage Point's Hourly Fees shall be calculated separately from, and shall be in addition to, Portage Point's fees in clauses (c) – (f) below; *provided, however*, Portage Point will not charge Hourly Fees for its Managing Director and Director performing Investment Banking services. Portage Point reserves the right to adjust its hourly billing rates in the ordinary course of the Engagement. Hourly billing rates are typically adjusted quarterly to reflect advancing experience, capabilities and seniority of professionals as well as general economic factors.

(c) *Monthly Fee*: A monthly fee of $100,000 (the "Monthly Fee"), payable on execution of this Agreement and on the first day of each month thereafter until the earlier of the completion of the Restructuring or the termination of Portage Point's Engagement pursuant to Section 21 of this Agreement. Fifty percent (50%) of all Monthly Fees paid in respect of any months following the sixth month of the Engagement shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable; *provided, however*, that if the Company commences or otherwise becomes the subject of any Chapter 11 Case, such credit shall only apply to the extent that such fees are approved in their entirety by the Bankruptcy Court, if applicable.

(d) *Restructuring Fee*: A fee equal to $1,250,000, payable upon the consummation of a Restructuring (the "Restructuring Fee"); *provided, however*, that if a Restructuring is to be completed through a "prepackaged" or "prearranged" chapter 11 plan, the Restructuring Fee shall be earned and shall be payable upon the earlier of (i) execution of definitive agreements with respect to such plan; and (ii) delivery of binding acceptances of such plan by a sufficient number of Stakeholders to bind all Stakeholders to the plan under the Bankruptcy Code; *provided, further*, that if Portage Point is paid a fee in connection with a "prepackaged" or "prearranged" chapter 11 plan and a chapter 11 plan is not consummated, Portage Point shall return such fee to the Company (less any Monthly Fees that have accrued).



　


(e) *Sale Transaction Fee:*

    (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the Company's assets or all or a majority of or a controlling interest in the Company's equity securities, Portage Point shall be paid a fee (the "Sale Transaction Fee") equal to $1,250,000 plus 3% of the Aggregate Consideration (as defined in Schedule I hereto) above $65,000,000.

    (ii) Any Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(f) *Financing Fee:* A fee, payable upon the consummation of a Financing (the "Financing Fee"), equal to the applicable percentages of gross proceeds as follows based on the security type issued in the Financing: (i) 2.0% of any senior secured debt financing, government financing, or "debtor-in-possession" financing, *plus* (ii) 4.0% of any junior secured or unsecured debt financing, *plus* (iii) 6.0% of any equity, equity-linked or equity-stapled or similarly bundled equity financing. The Financing Fee is subject to a $200,000 minimum for any debtor-in-possession financing.

(g) For the avoidance of any doubt, more than one fee may be payable pursuant to clauses (d), (e) and (f) above; provided, however, Portage Point will not be paid both a Restructuring Fee and a Sale Transaction Fee.

(h) Upon the execution of the Agreement, the Company shall pay Portage Point an advance payment retainer in the amount of $200,000. The Company agrees to pay one or more additional advance payment retainers to Portage Point upon request by Portage Point so that the amount of any advance payment retainers remains at or above Portage Point's estimated fees and expenses. Portage Point may apply the advance payment retainers to any outstanding fees as services are rendered and to expenses as they are incurred. The Company understands and acknowledges that any advance payment retainers are earned by Portage Point upon receipt, any advance payment retainers become the property of Portage Point upon receipt, and the Company no longer has a property interest in any advance payment retainers upon Portage Point's receipt thereof.

(i) In addition to the fees payable under this Agreement, and regardless of whether any transaction occurs, the Company shall promptly (i) reimburse Portage Point for all expenses incurred by Portage Point in connection with the Engagement and the fees and expenses of counsel, if any, retained by Portage Point, and (ii) pay to Portage Point an amount equal to three percent (3%) of Portage Point's fees to cover Portage Point's internal expenses that are not billed through as direct reimbursable expenses. Direct reimbursable expenses include outside copy services, travel, lodging, meals, and services of outside vendors. Internal expenses that are not billed through as direct reimbursement expenses include database and information services, administrative support, research expenses, and technology and telecommunications expenses. The Company shall also reimburse Portage Point, at such times as Portage Point shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with the Engagement (and regardless of whether any transaction occurs). Portage Point will provide the Company with a reasonably itemized statement of expenses incurred in connection with the Engagement upon request.



Confidential
Page 4



(j)  Portage Point will submit invoices from time to time setting forth its fees for services rendered and its expenses incurred. All invoices shall be due and payable immediately upon receipt and paid via wire transfer to Portage Point's bank account, as set forth in the invoice.

(k)  As part of the compensation payable to Portage Point hereunder, the Company agrees to the indemnification, reimbursement, contribution, and other provisions (the "Indemnification Letter") attached to this Agreement as **Addendum A** and incorporated herein in their entirety.

4.  No fee payable to any third party, by the Company or any other person or entity, shall reduce or otherwise affect any fee payable to Portage Point under this Agreement.

**Confidentiality; Use of Information**

5.  The Company will furnish or cause to be furnished to Portage Point such current and historical financial information and other information regarding the business of the Company as Portage Point may request in connection with the Engagement. The Company represents and warrants to Portage Point that all of the foregoing information will be accurate and complete at the time it is furnished and agrees to keep Portage Point advised of all developments materially affecting the Company or its financial position. In performing its services pursuant to this Agreement, Portage Point shall be entitled to rely upon information furnished to it on behalf of the Company or any third party and information that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information.

6.  Portage Point shall use reasonable efforts to keep confidential all non-public confidential or proprietary information of the Company obtained during the performance of its services hereunder (the "Company Confidential Information") and will not disclose Company Confidential Information to any other person or entity except as provided in Section 7 of this Agreement. This obligation shall survive the termination of this Agreement or Portage Point's Engagement hereunder for a period of one year following the date of such termination.

7.  Portage Point may make such disclosures of Company Confidential Information as Portage Point reasonably believes are required by applicable law or any regulatory requirement or authority. Portage Point may disclose Company Confidential Information to Portage Point personnel who have a need to know the Company Confidential Information as it relates to the services being provided under this Agreement. Portage Point may make reasonable disclosures of Company Confidential Information to third parties, such as the Company's Stakeholders, in connection with the performance of Portage Point's services hereunder if Portage Point reasonably believes that such third party is bound by confidentiality obligations to or for the benefit of the Company.

8.  The Company agrees that Portage Point shall have the right to publish and distribute, at Portage Point's expense, marketing materials that contain a factual summary of Portage Point's Engagement hereunder and indicate generally the results achieved.

9.  All analyses, final reports, presentation materials, and other work product that Portage Point creates or develops specifically for the Company and delivers to the Company as part of the Engagement (collectively, "Work Product") shall be owned by the Company; *provided* that all methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, templates, models, utilities and other intellectual property that Portage Point has created, acquired, or developed or will create, acquire, or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive



property of Portage Point and shall not constitute Work Product. The Company shall not acquire any interest in the Engagement Tools other than a limited, worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product. Unless otherwise specified in this Agreement, any Engagement Tools provided to the Company are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

10. The Company shall not disseminate any Work Product to any third parties at any time in any manner or for any purpose without Portage Point's prior approval (not to be unreasonably withheld or delayed), except to the extent required by applicable law.

## Other

11. In performing its services pursuant to this Agreement, Portage Point is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any transaction. In addition, Portage Point shall not be responsible for providing or deemed to have provided any tax, accounting, actuarial, legal, or other specialist advice.

12. Portage Point has been retained under this Agreement as an independent contractor to the Company, and nothing herein is intended to confer any rights or remedies as against Portage Point upon any person or entity (including the Company's governing body, management, employees, creditors, and securityholders) other than the Company. It is further understood and agreed that this Agreement and the Engagement do not create any fiduciary relationship between Portage Point and any person or entity. No one, other than senior management or the board of directors (or similar governing body) of the Company (in their capacities as such), is authorized to rely upon the Company's Engagement of Portage Point or any statements, advice, opinions or conduct by Portage Point. Without limiting the foregoing, any advice, written or oral, rendered in the course of the Company's Engagement of Portage Point is solely for the purpose of assisting senior management and / or the board of directors (or similar governing body) of the Company (in their capacities as such) in evaluating potential strategic, operational and / or financial initiatives and/or relevant potential transaction(s), including any Restructuring, Sale Transaction and / or Financing and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any such potential strategic, operational and / or financial initiative and / or transactions, including any Restructuring, Sale Transaction and / or Financing. The Company agrees that, notwithstanding any termination of Portage Point's Engagement, any advice, written or oral, rendered by Portage Point and the terms of our Engagement hereunder may not be disclosed publicly or made available to third parties without Portage Point's prior written consent. This Section 12 shall survive the termination of Portage Point's Engagement. In connection with the services to be provided hereunder, Portage Point may employ the services of its affiliates and may share with any such entity any information concerning the Company, provided that Portage Point and such entities shall hold any nonpublic information confidential in accordance with this Agreement and their respective customary policies relating to non-public information. Any such entity so employed shall be entitled to all of the benefits afforded to Portage Point hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its expenses on the same basis as Portage Point.

13. To coordinate efforts on behalf of the Company during the period of Portage Point's Engagement hereunder, the Company will promptly inform Portage Point of any discussions, negotiations and / or inquiries regarding any potential strategy, operational and / or financial initiatives and / or transactions,





including any Restructuring, Sale Transaction and / or Financing, including any such discussions or inquiries that have occurred during the six-month period prior to the date of this Agreement. If Portage Point receives an inquiry concerning any transaction, Portage Point will promptly inform the Company of such inquiry.

14. If, as a result of or in connection with Portage Point's Engagement hereunder, Portage Point becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena, or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will reimburse Portage Point for the reasonable fees and expenses of its counsel incurred in responding to such a request. Nothing in this Section 14 shall affect in any way the Company's obligations under the Indemnification Letter.

15. The Portage Point Parties (as defined below) shall not be liable to the Company, or to any party asserting any claims on behalf of the Company, except for direct damages found in a final determination by a court of competent jurisdiction to be the direct result of the gross negligence, bad faith, self- dealing or intentional misconduct of Portage Point. The Portage Point Parties shall not be liable for incidental, consequential, or special damages, lost profits, lost data, reputational damages, punitive damages, or any other similar damages under any circumstances, even if they have been advised of the possibility of such damages. The Portage Point Parties' aggregate liability, whether in tort, contract, or otherwise, is limited to the amount of fees paid to Portage Point for services under this Agreement (the "Liability Cap"). The Liability Cap is the total limit of the Portage Point Parties' aggregate liability for any and all claims or demands by anyone pursuant to or in connection with this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by Portage Point pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the Portage Point Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the Portage Point Parties pursuant to this Agreement exceed the Liability Cap. The "Portage Point Parties" comprise Portage Point, its current and future affiliates, and its and their respective directors, managers, officers, members, employees, agents, and other personnel.

16. Subject to Section 17 and Section 26 of this Agreement, any claim arising out of or relating to the Agreement, or the breach thereof, shall be resolved by arbitration. In any such arbitration, Portage Point shall appoint one non-neutral arbitrator, and the Company shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within thirty days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association ("AAA"). The arbitration shall be conducted in Chicago, Illinois under the AAA Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

17. Notwithstanding Section 16 of this Agreement, Portage Point may in its sole discretion proceed directly to a court of competent jurisdiction to (a) enforce the terms of this Agreement for any claim (and any subsequent counterclaim) against the Company relating to either the non-payment of fees or expenses due under this Agreement or (b) enforce the Company's obligations under the Indemnification Letter. **In any court action or proceeding arising out of this Agreement, the Company waives any right to trial by jury.**





18. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, Portage Point, and any other person or entity entitled to indemnity under the Indemnification Letter. The Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound.

19. For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission or in the form of an electronic signature shall constitute valid, sufficient delivery thereof.

20. This Agreement is governed by and shall be construed in accordance with the laws of the State of Illinois with respect to contracts made and to be performed entirely therein and without regard to choice of law principles.

21. Portage Point's Engagement hereunder and may be terminated by the Company or by Portage Point at any time only upon written notice by the terminating party to the other party (and not by any other action, conduct, or event), without liability or continuing obligation to either party following any such termination, except that (a) following any termination of the Engagement, Portage Point shall remain entitled to any fees accrued pursuant to <u>Section 3</u> but not yet paid prior to such termination and to reimbursement of expenses incurred prior to such termination; and (b) if Portage Point's Engagement is terminated by the Company pursuant to this Agreement, Portage Point shall remain entitled to full payment of all fees described in <u>Section 3</u> in respect of any Restructuring, any Financing, and/or any Sale Transaction announced or resulting from negotiations occurring during the period from the date of this Agreement until twelve months following such termination.

22. Simultaneously herewith, the Company and Portage Point are entering into the Indemnification Letter. The Indemnification Letter shall survive any termination of this Agreement or Portage Point's Engagement hereunder.

23. The Company acknowledges and agrees that Portage Point has made a significant monetary investment recruiting, hiring, and training its personnel. Accordingly, the Company acknowledges and agrees to the following:

   (a) During the term of this Agreement and for a period of two years after the final invoice is rendered by Portage Point with respect to the Engagement (the "<u>Restrictive Period</u>"), the Company and its affiliates shall not directly or indirectly hire, contract with, or solicit the employment of any Portage Point personnel.

   (b) If during the Restrictive Period the Company or any of its affiliates directly or indirectly hires or contracts with any Portage Point personnel in violation of <u>Section 23(a)</u> above, the Company agrees to pay to Portage Point as liquidated damages and not as a penalty the sum total of (i) $1,000,000 for a Managing Director or higher, (ii) $700,000 for a Director, (iii) $600,000 for a Vice President, (iv) $500,000 for an Associate, and (v) $250,000 for any other Portage Point personnel.





(c) Liquidated damages in the amounts set forth in <u>Section 23(b)</u> above are (i) fair, reasonable and necessary under the circumstances to reimburse Portage Point for the costs of recruiting, hiring and training its personnel as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that Portage Point has made in its personnel and (ii) appropriate due to the difficulty of calculating the exact amount and value of that investment.

(d) <u>Section 23</u> of this Agreement shall survive the termination of Portage Point's Engagement.

**Retention Related Matters**

24. If the Company obtains support commitments from one or more of the Company's key Constituents (as defined below) with respect to a transaction (such Constituents, the "Supporting Constituents," and any documentation of such support commitments, a "Support Agreement"), the Company agrees that it will use best efforts to include in the Support Agreement a provision that the Supporting Constituents affirmatively agree to support and will not object to or in any way oppose (a) the retention of Portage Point, (b) the terms and conditions set forth in this Agreement, including the fee and expense structure set forth herein, and (c) any fee statement or application submitted by Portage Point to the Bankruptcy Court for allowance of the fees and expenses payable to Portage Point under the terms of this Agreement.

25. If the Company commences or otherwise becomes the subject of a Chapter 11 Case, the Company shall use its best efforts to obtain prompt authorization from the Bankruptcy Court to retain Portage Point on the terms and conditions set forth in this Agreement under the provisions of sections 327 and 328(a) of the Bankruptcy Code, with such retention to be effective as of the date the Company became a debtor under the Bankruptcy Code. Subject to being so retained, Portage Point agrees that during the pendency of any Chapter 11 Case, it shall continue to perform its obligations under the Agreement and that it shall file statements and/or applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure and the local rules and order of the Bankruptcy Court. The Company shall supply Portage Point with a draft of the application and proposed retention order authorizing Portage Point's retention sufficiently in advance of the filing of such application and proposed order to enable Portage Point and its counsel (if any) to review and comment thereon. Portage Point shall be under no obligation to provide any services under this Agreement if the Company becomes a debtor under the Bankruptcy Code unless Portage Point's retention under the terms of this Agreement is approved under sections 327 and 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Portage Point.

26. If the Company commences or otherwise becomes the subject of a Chapter 11 Case, the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement during the pendency of the Chapter 11 Case.

**Key Definitive Terms**

27. As used in this Agreement, the following defined terms have the meanings specified below:

(a) "<u>Restructuring</u>" means, collectively, any restructuring, reorganization (whether or not pursuant to chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>")), and/or recapitalization of all or a significant portion of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical





liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders." and together with the Company's other constituents, the "Constituents"); a rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement, or forgiveness of Existing Obligations; a conversion of Existing Obligations into equity or other securities; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests; or otherwise through another similar transaction or series of transactions.

(b) "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of newly-issued (including securities held in treasury) equity, equity-linked or debt securities, instruments, or obligations of the Company, as well as any federal, state or local government loan, grant or investment, and including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code.

(c) "Sale Transaction" means any transaction or series of transactions involving (1) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with another company; (2) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the Company's then-outstanding stock or possessing a majority of the Company's then-outstanding voting power (except as may occur with current Stakeholders pursuant to a Restructuring); (3) any other purchase or acquisition or agreement or commitment to sell, directly or indirectly, by a buyer or buyers (including, without limitation, any liquidator that participates in a sale process) of significant assets, securities, or other interests of the Company or (4) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party. For purposes of this Agreement, any sale of newly issued securities (including securities held in treasury) shall be deemed a "Financing" and not a "Sale Transaction."

*[Signature Page Follows]*



If the above is in accordance with your understanding of the terms of Portage Point's Engagement, please sign and return this Agreement at your earliest convenience.

We look forward to our work together.

Sincerely,

Triple P RTS, LLC

Matthew D. Ray
Founder & Managing Partner

Triple P Securities, LLC

Jason A. Cohen
Managing Director

*Acknowledged and agreed to as of the date first written above:*

Beverly Community Hospital Association

By: _____
    Alice Cheng

Title: President & CEO



## Schedule I

For purposes hereof, the term "<u>Aggregate Consideration</u>" means (1) the total amount of cash and the fair market value (on the date of payment) of all of the property paid and payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid and payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, *plus* (2) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money or other liabilities (including pension liabilities and guarantees of borrowings) assumed, cancelled, exchanged or forgiven directly or indirectly by a third party. Aggregate Consideration shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, after the date hereof other than normal quarterly cash dividends, and, in the case of the sale of assets, the net value of any current assets not sold by the Company or relevant Company entity, as applicable.

For purposes of calculating Aggregate Consideration, (1) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, (2) in the case of a "credit bid" or other contribution or exchange of Existing Obligations, the value of such Existing Obligations shall be the face value. and (3) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the ten trading days prior to the closing of the Sale Transaction (the "<u>Valuation Date</u>"); *provided* that the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date, and any restricted stock (*i.e.*, stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of Portage Point's fee relating thereto shall be calculated by Portage Point in good faith and paid to Portage Point upon consummation of the Sale Transaction.

\* \* \* \* \*

Confidential





**Addendum A**

March 20, 2023

Alice Cheng
President & CEO
Beverly Community Hospital Association
309 West Beverly Boulevard
Montebello, CA 90640

Ladies and Gentlemen:

1.    In connection with the engagement of Triple P RTS, LLC and Triple P Securities, LLC (collectively, "Portage Point") to advise and assist Beverly Community Hospital Association and its controlled subsidiaries (collectively, the "Company") as to the matters set forth in the engagement letter of even date herewith, the Company and Portage Point are entering into this letter agreement. It is understood and agreed that in the event that Portage Point or any of its current or future affiliates, or any of its or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Portage Point, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including the Company's securityholders, related to, arising out of or in connection with our engagement, the Company will promptly reimburse each such Indemnified Person for its legal and other expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith. The Company will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with Portage Point's engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is initiated or brought by the Company or on the Company's behalf and whether or not in connection with any action, claim, proceeding or investigation in which the Company or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final (in that it is no longer subject to appeal or review) to have resulted solely from such Indemnified Person's bad faith, willful misconduct or gross negligence. The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its securityholders or creditors related to, arising out of or in connection with our engagement except to the extent that any loss, claim, damage or liability is found by a court of competent jurisdiction in a judgment which has become final (in that it is no longer subject to appeal or review) to have resulted solely from such Indemnified Person's bad faith, willful misconduct or gross negligence. If multiple claims are brought against any Indemnified Person in an arbitration related to, arising out of or in connection with Portage Point's engagement, and indemnification is permitted under applicable law with respect to at least one such claim, the Company agrees that any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

2.    If for any reason the foregoing indemnification is held unenforceable or is otherwise unavailable, then the Company shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative



benefits received, or sought to be received, by the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand, in the matters contemplated by Portage Point's engagement as well as the relative fault of the Company and such persons with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. The Company agrees that for the purposes hereof the relative benefits received, or sought to be received, by the Company and its securityholders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (a) the total value paid or proposed to be paid by or to the Company and its securityholders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) for which Portage Point has been engaged to perform restructuring advisory and investment banking services bears to (b) the fees paid or proposed to be paid to Portage Point in connection with such engagement; *provided, however,* that, to the extent permitted by applicable law, in no event shall Portage Point or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Portage Point for such restructuring advisory and investment banking services. The Company's reimbursement, indemnity and contribution obligations under this agreement shall be joint and several, shall be in addition to any liability that the Company may otherwise have, shall not be limited by any rights Portage Point or any other Indemnified Person may otherwise have, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, Portage Point, and any other Indemnified Persons.

3.      The Company agrees that, without Portage Point's prior written consent (which will not be unreasonably withheld), the Company will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not Portage Point or any other Indemnified Persons are an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

4.      This agreement and any claim related directly or indirectly to this agreement shall be governed and construed in accordance with the laws of the State of Illinois (without giving regard to the conflicts of law provisions thereof). Any such claim shall be resolved by arbitration. In any such arbitration, Portage Point shall appoint one non-neutral arbitrator, and the Company shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within thirty days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association ("AAA"). The arbitration shall be conducted in Chicago, Illinois under the AAA Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

5.      Notwithstanding Section 4 of this agreement, Portage Point may in its sole discretion proceed directly to a court of competent jurisdiction to enforce the terms of this agreement and the Company's obligations hereunder. In any court action or proceeding related to, arising out of, or in connection with this agreement, the Company waives any right to trial by jury.





6.      This agreement shall remain in effect indefinitely, notwithstanding any termination of Portage Point's engagement.

Very truly yours,

Sincerely,

Triple P RTS, LLC

Matthew D. Ray
Founder & Managing Partner


Triple P Securities, LLC

Jason A. Cohen
Managing Director


*Agreed to and accepted as of the date first above written:*

Beverly Community Hospital Association, on behalf of itself and its controlled subsidiaries

By: _____
      Alice Cheng

Title: President & CEO

## Schedule 1 to Lozynski Declaration

**Potential Parties in Interest**

## SCHEDULE 1(a)

### <u>Debtors</u>

Beverly Community Hospital Association
Montebello Community Health Services, Inc.
Beverly Hospital Foundation

# SCHEDULE 1(b)

## <u>Directors/Officers (current and former)</u>

Lyla Eddington, Chairperson
Carlos Manuel Haro, 1st VC
Renee D. Martinez, 2nd VC
Gary R. Einstein, Treasurer
Gautam Ganguly, Secretary
Richard L. Adams II
Goharik Gabriel
Ralph Hansen
Aziz Khan
Alma Perez
Art Revueltas
Pamala K. Sakamoto
George Wang
Parham Naghdechi
Shushma Patel
Julie France
Denton Guthrie
John Hsu
Rosemary Orozco
Monica Thornhill-Joynes
Alice Cheng, President and CEO
Houshang Abd, CFO
Sridhar Chadalavada ("Dr. Chad"), CIO
Jim Mathew, Senior Director Revenue Cycle
Chona Austria, Payroll & AP Supervisor
George Holtz, Administrative Director, HR
Nancy Lee, Sr VP of Operations
Art Revueltas
Shushma Patel
Edgar Morales
Deanna Khan
Lester Fujimoto
Julie France
Jay Nomura
Goharik Gabriel
Ralph Hansen
Carol Hansen
Bernadette Hensel
Betty Peralta
Ernest Peralta
Barbara Risher Welch
Brennan Hughes
Noor Zubeida Khan

# SCHEDULE 1(c)

## **All Secured Lenders Attorneys**

Greenberg Traurig
Nathan Shultz

# SCHEDULE 1(d)

## **All Secured Lenders including DIP Lenders**

US Bank
Hilco Real Estate
HRE Montebello
Hanmi Bank

## SCHEDULE 1(e)

### Bankruptcy Judges and UST staff for Central District of California

Hon. Neil W. Bason
Hon. Sheri Bluebond
Hon Julia W. Brand
Hon.  Sandra R. Klein
Honorable Robert N. Kwan
Honorable Ernest M. Robles
Honorable Barry Russell
Honorable Deborah J. Saltzman
Hon. Vincent P. Zurzolo
Scott C. Clarkson
Magdalena Reyes Bordeaux
Mark H. Houle
Wayne Johnson
Scott H. Yun
Martin Barash
Ronald A. Clifford
Theodor C. Albert
Erithe A. Smith
Alan M. Ahart
Victoria Kaufman
Geraldine Mund
Maureen A. Tighe
Gregg W. Zive
Michael Jones
Dare Law
Noreen Madoyan
Ron Maroko
Kelly Morrison
Hatty Yip
Patti Brundige
Karen Polk
Jason Russell
Marlene Fouche
Jenna Rose Hunter
Jieun Kwon
Helen Cruz
Sonny Flores
Stephanie J. Hill
Maria A. Ramos
Abram S. Feuerstein
Everett L. Green
Ali Matin
Cameron Ridley

Rhea A. Aquino
Mary Avalos
Carolyn K. Howland
Adela M. Salgado
Kenneth Misken
Nancy Goldenberg
Michael Hauser
Kristin Mihelic
Queenie Ng
Leslie Skorheim
Marilyn Sorensen
Kristina Howard
Michele R. Steele
Jaimee Zayicek
Tari King
Hugh Powell
Eryk R. Escobar
Katherine C. Bunker
Russell Clementson
Brian Fittipaldi
Maria Marquez
Alfred Cooper
Sandra Cruz
Joyce Hong
Veronica Hernandez
Brian Fittipaldi

# SCHEDULE 1(f)

## **Banks**

Hanmi Bank
Bank of the West
Bank of America

# SCHEDULE 1(g)

## **Debtors Attorneys**

Orrick Herrington & Sutcliffe

# SCHEDULE 1(h)

## **Debtors Ordinary Course Professionals**

Seyfarth and Shaw LLP
MKM Law Group PC
Blanchard Saiger Law PC
Clark-Hill
Reeves Immigration Law Group
Law Firm of Eric H Jacobs
Defense Advocacy Law Firm
The Oaks Law Group
Doyle, Schiffer, McMahon LLP
Littler LLP
West and Rosa LLP
Hooper, Lundy, and Bookman PC
James R. Lahana
Barry Posner
Posner Healthcare Consulting
Stelian Damu
Moss Adams LLP
Mari Takahashi
Holthouse Carlin & Van Trigt LLP
Michael Hunn

# SCHEDULE 1(i)

## **Financial Advisors**

Portage Point

# SCHEDULE 1(j)

## Insurers

California Healthcare Insurance Company, Inc.
Admiral Insurance Company
Endurance American Specialty Insurance Company
ACE American Insurance Company
Starr Indemnity & Liability Company
Berkley Regional Insurance Company
AIG Specialty Insurance Company
ACE American Insurance Company
Illinois Union Insurance Company
Alliant Insurance Services, Inc.
Alliant Insurance Services, Inc.
Ironshore Specialty Insurance Company
National Union Fire Insurance Company of Pittsburgh, PA
Lloyd's of London
Safety National
Keenan And Associates
Express Scripts, Inc.
Trustmark Voluntary Benefit
Reliance Standard Insurance Company
Vision Service Plan - (Ca)
Catilize Health
The Lincoln National Life
Diversified Investment Advisors

# SCHEDULE 1(k)

## Landlords and Tenants

Rosa Guiterrez
Juan Francisco Garcia
Christopher Ruvalcaba
Jocelyne Blanco
Nefaliz Cuello
Abraham Moreno
Alba Sanchez
Jeanne Leyva Paramo
Katy Mimi Chanthavong
Jacob Walter Cabral
Eryssa Sophia Ninette Carda
John William Leatherby III
Taylor Ann McMahan
Mary E. McMahan Costabile
Christoper Frumento
Savona Woodworks
Frumento's Italian Market
Popular Liquor
Arax Deli & Grocery
KFC (Kentucky Fried Chicken)
Beverly Care

# SCHEDULE 1(l)

## Litigation Parties

Antonio Fernandez
Rusty Rendon
Destiny Rago
Viviana Hernandez Orozco
Dr. Ihsan Shamaan
Ventura

# SCHEDULE 1(m)

## Potential Acquisition Parties

Adventist

# SCHEDULE 1(n)

## Government Authorities

United States Office of Inspector General
Centers for Medicare & Medicaid Services
Noridian Healthcare Solutions
Los Angeles County Tax Collector
Los Angeles County Fire Department
Department of Industrial Relations
Department of Justice
Department of Toxic Substances
Montebello Police Department
Department of Health Care Services
US Department of Homeland Security
Employment Development Department
Department of Public Health
Ca Dept Of Tax And Fee Admin
United States Postal Service
State of California
United States Treasury
California Department of Health Care Services

# SCHEDULE 1(o)

## Top 30 Unsecured Creditors

California Department OfHealth Care Services
Noridian Healthcare Solutions, LLC
Alhambra Hospital Medical Center
Advantis Medical Staffing
Office of Inspector General (OIG)
Shiftwise
Medical Solutions LLC
Sodexho Inc & Affiliates
Stryker Orthopedics
First Financial Holdings LLC
Axis Spine LLC
Allied Universal Security Services
Medline Industries Inc
Boston Scientific Corp
Huntington Technology Finance
Constellation New Energy-Gas
Nixon Peabody LLP
Stryker Endoscopy
Baxter Healthcare Corp
Private Attorney General Act (PAGA) / Pheonix Settlement Advisors
Stryker Instruments
Arthrex, Inc
Keenan and Associates
Abbott Laboratories Inc
Medical Information Technology, Inc
Medstar Anesthesia Services Inc
Cepheid Inc.
Philips Healthcare
Cloudwave
Outset Medical Inc

# SCHEDULE 1(p)

## Material Trade Vendors

Medical Solutions Llc
Shiftwise
Medline Industries Inc
Sodexho, Inc & Affiliates
Advantis Medical Staffing Llc
Amerisourcebergen Drug Corporation
Stryker Orthopedics
First Financial Corporate Services
Axis Spine Llc
Amerisourcebergen - Wac Account
Medstar Anesthesia Services Inc
Allied Universal Security Services
Huntington Technology Finance Inc
Hospitalist Group Of Montebello
Express Scripts, Inc.
American Red Cross
Prestige Pulmonary Consultants
Cepheid Inc.
Baxter Iv Systems Div
Boston Scientific
Siemens Healthcare
Healthcare Financial Services
Noridian Healthcare Solutions, Llc
Abbott Rapid Dx
Core Anesthesia Associates Inc
Apex Health Network Llc
Amerisourcebergen - 340B Account
Medical Ultrasound Group Inc
Smith And Nephew Inc
Medical Information Technology Inc
Ge Healthcare
Dept Of Hlth Svcs - Acctng Section
Keenan And Associates
Diversified Investment Advisors
Optima Healthcare Insurance Service
So Ca Edison Co
Nixon Peabody Llp
Abbott Laboratories
Medtronic Usa, Inc.
Moss Adams Llp
Philips Medical Systems
Transamerica Loan Void Check
Tiaa Bank

Medico Professional
Pararev
Neurology Consultants Medical Group
Cross America Financial Llc
Trustmark Voluntary Benefit
Reliance Standard Insurance Company
Jubilant Draximage Inc
Cep America - Telehealth Pc
Arthrex, Inc
Mri Contract Staffing
Doyle & Schafer Llp
United Nurses Assoc Of Calif/
Bhc Alhambra Hospital
City Of Hope National Medical
The Gas Company
Seyfarth Shaw Llp
Red E Services
Cardinal Health/Allegiance
Lilian L. Gong & Associates, Inc
Athens Disposal Co Inc
Quest Diagnostics
Mlh, A Medical Professional Corp
Constellation New Energy-Gas
Biomerieux Vitex Inc
Hanmi Bank
Stryker Instruments
Southern California Brain &
Css Consulting Group
Haemokinetics Llc
Airgas, Inc
Outset Medical Inc
Agiliti Imaging
Wu, Yiping Md Inc
Hospital Association Of So Ca
3M Company
Ae & Associates, Llc
Cohen, Kenneth L. Md
Steris Instrument Management Svcs
Erik Matthew Dworsky
Abbott Vascular
Harbor Pointe Air Conditioning
Adp Llc **Void**
Ge Healthcare Iits Usa Corp.
Ge Medical Systems
Convergeone Inc
Yung R Cho Md

Montebello Land And Water Co
Hunn Group Llc
Bankcard Center
Canon Medical Systems Usa Inc
Olympic Staffing Services
Central Admixture Pharmacy Services
Taft Cleaners Lp
Advisory Board Company The
Us Telepacific Corp
Focus Medical Imaging
Health Care Access And Information

# SCHEDULE 1(q)

## **Utility Providers**

So Ca Edison Co
The Gas Company
Athens Disposal Co Inc
Constellation New Energy-Gas
Montebello Land And Water Co
Digital Telecommunications Corp
Mediwaste Disposal Llc
T-Mobile
American Messaging
AT&T
Recycled Waste Products
US Telepacific Corp

## Schedule 2

## Connections to Potential Parties in Interest

| Disclosures of Portage Point | | | |
|---|---|---|---|
| **Potential Interested Party** | **Relationship to Debtors** | **Status (Active/Inactive)** | **Relationship to Portage Point** |
| U.S. Bank | Secured Bond Trustee | Active | Secured lender on a separate investment banking M&A sale process run by Portage Point |

**Exhibit A to Application**

**Proposed Order**

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   JUSTIN R. BERNBROCK (admitted *pro hac vice*)
2  CATHERINE JUN (admitted *pro hac vice*)
   ROBERT B. McLELLARN (admitted *pro hac vice*)
3  321 North Clark Street, 32nd Floor
   Chicago, Illinois 60654
4  Telephone: 312.499.6300
   Facsimile:  312.499.6301
5  Email:     jbernbrock@sheppardmullin.com
              cjun@sheppardmullin.com
6             rmclellarn@sheppardmullin.com

7  JENNIFER L. NASSIRI, SBN 209796
   ALEXANDRIA G. LATTNER, SBN 314855
8  1901 Avenue of the Stars, Suite 1600
   Los Angeles, CA 90067-6055
9  Telephone: 310.228.3700
   Facsimile:  310.228.3701
10 Email:     jnassiri@sheppardmullin.com
              alattner@sheppardmullin.com
11
   Proposed Counsel to Debtors and
12 Debtors in Possession

13              UNITED STATES BANKRUPTCY COURT
         CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION
14

15 | In re: | Lead Case No: 2:23-bk-12359-SK |
   | BEVERLY COMMUNITY HOSPITAL | Jointly administered with: |
16 | ASSOCIATION, dba BEVERLY HOSPITAL | Case No: 2:23-bk-12360-SK |
   | (A NONPROFIT PUBLIC BENEFIT | Case No: 2:23-bk-12361-SK |
17 | CORPORATION), *et al*,[1] | |

18 |              Debtors, | Hon. Sandra R. Klein |
   | | Chapter 11 Case |
19

20 | ☒  Affects all Debtors | **ORDER APPROVING DEBTOR'S** |
   | | **APPLICATION SEEKING AN ORDER** |
21 | ☐  Affects Beverly Community | **AUTHORIZING THE RETENTION AND** |
   |    Hospital Association | **EMPLOYMENT OF TRIPLE P RTS, LLC** |
22 | | **AS RESTRUCTURING ADVISOR FOR** |
   | ☐  Affects Montebello Community Health | **THE DEBTORS AND DEBTORS IN** |
23 |    Services, Inc. | **POSSESSION PURSUANT TO 11 U.S.C.** |
   | | **§§ 327(a) and 330, EFFECTIVE AS OF** |
24 | ☐  Affects Beverly Hospital Foundation | **THE PETITION DATE** |

25

26 [1]  The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal  tax identification
        number, are:  Beverly Community Hospital Association d/b/a Beverly Hospital (6005), Montebello Community
27      Health Services, Inc. (3550), and Beverly Hospital Foundation (9685).  The mailing address for the Debtors is
        309 W. Beverly Blvd., Montebello, California 90640.

28

-1-

No hearing required unless requested per LBR 2014-(b)]

Upon the application (the "Application") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (this "Order") authorizing the Debtors to retain and employ Triple P RTS, LLC ("Portage Point") as their restructuring advisor effective as of April 19, 2023, pursuant to Bankruptcy Code sections 327, and 330, and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1(b), and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court Central District of California ("LBR"); and the Court having reviewed the Application, the Declaration of Alyssa Lozynski (the "Lozynski Declaration"), a senior director at Portage Point; and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Lozynski Declaration that (a) Portage Point does not hold or represent an interest adverse to the Debtors' estates and (b) Portage Point is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Application is GRANTED as set forth in this Order.

2.      The Debtors are authorized to retain and employ Triple P RTS, LLC ("Portage Point") as their restructuring advisor effective as of April 19, 2023, in accordance with the Application and the Engagement Letter;

3.      Portage Point is authorized to provide the Debtors with the professional services as described in the Application and the Engagement Letter.

4.      Portage Point shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330, and 331 of the Bankruptcy Code for the Restructuring Advisory services and shall also comply with the applicable provisions of the Bankruptcy Rules, LBRs, and any other applicable procedures and orders of the Court.

5.      Notwithstanding anything in the Engagement Letter to the contrary, Portage Point shall apply any remaining amounts of its prepetition retainers as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Portage Point.

6.      Notwithstanding anything to the contrary in the Engagement Letter, the Application or the Lozynski Declaration, to the extent that Portage Point uses the services of independent contractors or subcontractors (collectively, the "Contractors") or affiliates in these chapter 11 cases, Portage Point shall (i) pass through the cost of such Contractors to the Debtors at the same rate that Portage Point pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors and affiliates are subject to the same conflicts checks as required for Portage Point; and (iv) file with this Court such disclosures required by Bankruptcy Rule 2014(a) with respect to such Contractors and affiliates.

7.      The indemnification provision set forth in the Engagement Letter as modified by the Application is approved.

8.      The Debtors and Portage Point are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

9.      To the extent the Application, the Lozynski Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

10.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.      Notwithstanding anything to the contrary in the Application or the Engagement Letter, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
222 N Pacific Coast Highway, 3rd Floor, El Segundo, CA 90245.

A true and correct copy of the foregoing document entitled (*specify*): Debtors' Notice of Application and Application
Seeking an Order Authorizing the Retention and Employment of Triple P RTS, LLC as Restructuring Advisor for the
Debtors in Possession Pursuant to 11 U.S.C. §§ 327(a) and 330, Effective as of April 19, 2023; Declaration of
Lozynski in Support Thereof
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
05/19/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  05/22/2023_____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  05/19/2023_____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

05/19/2023    Jonathan J. Thomson_____          /s/ Jonathan J. Thomson_____
*Date*              *Printed Name*                                      *Signature*

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## SERVICE LIST (via NEF)

| CreditorName | Email |
| --- | --- |
| Megan M Adeyemo | madeyemo@grsm.com; asoto@grsm.com |
| David E Ahdoot | dahdoot@bushgottlieb.com; kprestegard@bushgottlieb.com |
| Joseph M Ammar | ammar@millercanfield.com |
| Scott E Blakeley | seb@blakeleyllp.com; ecf@blakeleyllp.com |
| Joseph P Buchman | jbuchman@bwslaw.com; gmitchell@bwslaw.com |
| Adrian Butler | abutler@bushgottlieb.com |
| Augustus Curtis | augustus.t.curtis@usdoj.gov |
| Evelina Gentry | evelina.gentry@akerman.com; rob.diwa@akerman.com |
| Evan Gershbein | ECFpleadings@kccllc.com |
| Steven T Grubner | sgubner@bg.law, ecf@bg.law |
| Brian T Harvey | bharvey@buchalter.com |
| Robert M Hirsh | rhirsh@lowenstein.com |
| Darryl Jay Horowitt | dhorowitt@ch-law.com; bkasst@ch-law.com |
| Sonja Hourany | sonja.hourany@quinngroup.net; kadele@wgllp.com; lbracken@wgllp.com; shourany@ecf.courtdrive.com |
| Michael Jones | michael.jones4@usdoj.gov |
| Quinn Scott Kaye | kaye@millercanfield.com |
| Alexandria Lattner | alattner@sheppardmullin.com; ehwalters@sheppardmullin.com |
| Marc A Levinson | MALevinson@orrick.com; borozco@orrick.com |
| Ron Maroko | ron.maroko@usdoj.gov |
| Kelly L Morrison | kelly.l.morrison@usdoj.gov |
| Tania M Moyron | tania.moyron@dentons.com; malka.zeefe@dentons.com; kathryn.howard@dentons.com; derry.kalve@dentons.com; glenda.spratt@dentons.com; DOCKET.GENERAL.LIT.LOS@dentons.com |
| Jennifer L Nassiri | JNassiri@sheppardmullin.com |
| Neli Nima Palma | neli.palma@doj.ca.gov |
| Russell W Reynolds | rreynolds@ch-law.com; bkasst@ch-law.com |
| Mary H Rose | mrose@buchalter.com |
| Nathan A Schultz | nschultzesq@gmail.com |
| Olivia Scott | olivia.scott3@bclplaw.com; theresa.macaulay@bclplaw.com |
| Howard Steinberg | steinbergh@gtlaw.com; pearsallt@gtlaw.com; howard-steinberg-6096@ecf.pacerpro.com |
| Tamar Terzian | tamar@terzlaw.com; sandra@terzlaw.com |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |

**SERVICE LIST (via NEF)**

| CreditorName | Email |
|---|---|
| Mark J Valencia | mvalencia@vclitigation.com |
| Emilio Eugene Varanini, IV | emilio.varanini@doj.ca.gov |
| Kenneth K Wang | kenneth.wang@doj.ca.gov;<br>Jennifer.Kim@doj.ca.gov;<br>Stacy.McKellar@doj.ca.gov;<br>yesenia.caro@doj.ca.gov;<br>Christine.Murphy@doj.ca.gov |
| Sharon Z. Weiss | sharon.weiss@bclplaw.com;<br>raul.morales@bclplaw.com;<br>REC_KM_ECF_SMO@bclplaw.com |
| Roye Zur | rzur@elkinskalt.com;<br>cavila@elkinskalt.com;<br>lwageman@elkinskalt.com;<br>1648609420@filings.docketbird.com |

SERVICE LIST (via First-Class Mail)

| Description | CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| TOP 30 | Abbott Laboratories Inc | Nathan Scott | 100 Abbot Park Road | | | Abbot Park | IL | 60064 |
| TOP 30 | Advantis Medical Staffing | Elayne Goldmane | 13156 Noel Road Suite 300 | | | Dallas | TX | 75240 |
| Counsel for Advantis Medical Staffing | Akerman LLP | Evelina Gentry and Anthony D. Sbardellati | 601 West Fifth Street, Suite 300 | | | Los Angeles | CA | 90071 |
| TOP 30 | Alhambra Hospital Medical Center | Terry Chu | 4619 N. Rosemead Blvd. | | | Rosemead | CA | 91770 |
| Attorneys for California Statewide Communities Development Authority | Allen Matkins Leck Gamble Mallory & Natsis LLP | Debra A. Riley, Esq. | One America Plaza | 600 West Broadway, 27th Floor | | San Diego | CA | 92101-0903 |
| TOP 30 | Allied Universal Security Services | Moises Rodriguez | 161 Washington St Suite 600 | | | Conshohocken | PA | 19428 |
| TOP 30 | Arthrex, Inc | Carla Pitcher | 2825 Airview Boulevard | | | Kalmazoo | MI | 49002 |
| Office of the Attorney General of the United States | Attorney General of the United States | U.S. Department of Justice | 950 Pennsylvania Avenue, NW | | | Washington | DC | 20530-0001 |
| TOP 30 | Axis Spine Llc | DD Mate | 1812 W Burbank Blvd #5384 | | | Burbank | CA | 91506 |
| TOP 30 | Baxter Healthcare Corp | Yolieth Bazan Matamoros | 17511 Armstrong Ave | | | Irvine | CA | 92614 |
| Counsel to Baxter Healthcare Corporation | Blakeley LC | Scott E. Blakeley | 530 Technology Drive, Suite 100 | | | Irvine | CA | 92618 |
| TOP 30 | Boston Scientific Corp | Kathleen Homsab | 300 Boston Scientific Way | | | Marlborough | MA | 01752-1234 |
| Counsel for Sodexo | Brown McGarry Nimeroff LLC | Jami B. Nimeroff | Two Penn Center, Suite 610 | 1500 John F. Kennedy Boulevard | | Philadelphia | PA | 19102 |
| Counsel to Proposed DIP Lender | Bryan Cave Leighton Paisner LLP | Eric S. Prezant | 161 North Clark Street, Suite 4300 | | | Chicago | IL | 60612 |
| Counsel to Proposed DIP Lender | Bryan Cave Leighton Paisner LLP | Vanessa Sunshine and Sharon Weiss | 120 Broadway, Suite 300 | | | Santa Monica | CA | 90401-2386 |
| Counsel for United Nurses Associations of California/Union of Health Care Professionals | Bush Gottlieb, A Law Corporation | David E. Ahdoot, Kirk M. Prestegard and Adrian R. Butler | 801 North Brand Boulevard | Suite 950 | | Glendale | CA | 91203 |
| TOP 30 | California Department Of Health Care | Tomas J. Aragon | 1501 Capitol Avenue, Suite 4510 | | | Sacramento | CA | 95814 |
| California Department of Health Care Services | California Department of Health Care Services | Jennifer Kent, Director | 1501 Capitol Avenue, Suite 4510 | | | Sacramento | CA | 95814 |
| California Department of Public Health | California Department of Public Health | Stephanie Spich | PO Box 997377 MS 0500 | | | Sacramento | CA | 95899-7377 |
| California Secretary of State | California Secretary of State | | 1500 11th Street | | | Sacramento | CA | 95814 |
| California State Board of Pharmacy | California State Board of Pharmacy | | 1625 North Market Boulevard | | | Sacramento | CA | 95834 |
| California Statewide  Communities Development Authority | California Statewide  Communities Development Authority | Chair | 1100 K Street, Suite 101 | | | Sacramento | CA | 95814 |
| Center for Medicare and Medicaid Services | Center for Medicare and Medicaid Services | Steven Chickering, the Associate Regional Administrator | 90 – 7th Street, Suite 5-300 | | | San Francisco | CA | 94103-6706 |
| TOP 30 | Cepheid Inc. | Susan Jose | 904 E Caribbean Dr | | | Sunnyvale | CA | 94089 |
| TOP 30 | Cloudwave | Loraine Sarno | 100 Crowley Dr. | | | Marlborough | MA | 01752 |
| TOP 30 | Constellation New Energy-Gas | Zachary Kecyzkecy | 9400 Bunsen Parkway Suite 100 | | | Louisville | KY | 40220 |
| Proposed Counsel to the Official Committee of Unsecured Creditors | Dentons US LLP | Tania M. Moyron, Samuel R. Maizel and Rebecca M. Wicks | 601 South Figueroa Street, Suite 2500 | | | Los Angeles | CA | 90017-5704 |
| Department of Health Care Services | Department of Health Care Services | Tanya Homman, Chief of Provider Enrollment Division | MS 4704, P.O. Box 997412 | | | Sacramento | CA | 95899-7412 |
| Counsel for Medico Professional Linen Service and American Textile Maintenance | Elkins Kalt Weintraub Reuben Gartside LLP | Roye Zur | 10345 W. Olympic Blvd. | | | Los Angeles | CA | 90064 |
| Employment Development Dept. | Employment Development Dept. | | 722 Capitol Mall, MIC 92E | | | Sacramento | CA | 95814 |
| TOP 30 | First Financial Holdings Llc | Ricardo Oseguera | 750 The City Drive South, Suite 300 | | | Orange | CA | 92868 |
| Counsel to Indenture Trustee | Greenberg Traurig, LLP | Colleen Murphy, Kevin Walsh | One International Place, Suite 2000 | | | Boston | MA | 02110 |
| Hanmi Bank | Hanmi Bank | Specialty Lending | 2010 Main St. Suite 590 | | | Irvine | CA | 92614 |
| Hanmi Bank | Hanmi Bank | Specialty Lending | 1920 Main St. Suite 1140 | Attn Ben Sottile | | Irvine | CA | 92614 |
| Hanmi Bank | Hanmi Bank | | 10180 Reseda Blvd | | | Northridge | CA | 91324 |
| Proposed DIP Lender | Hilco Real Estate | Attn Gary C. Epstein, Ryan Lawlor, Neil Aaronson and Robert Lubin | 5 Revere Drive, Suite 206 | | | Northbrook | IL | 60062 |
| TOP 30 | Huntington Technology Finance | Brent McQueen | 2285 Franklin Road | | | Bloomfield Hills | MI | 48302 |
| IRS | Internal Revenue Service | Attn Susanne Larson | 31 Hopkins Plz Rm 1150 | | | Baltimore | MD | 21201 |
| IRS | Internal Revenue Service | Centralized Insolvency Operation | P.O. Box 7346 | | | Philadelphia | PA | 19101-7346 |
| IRS | Internal Revenue Service | Centralized Insolvency Operation | 2970 Market St | | | Philadelphia | PA | 19104 |
| IRS | Internal Revenue Service | | 300 North Los Angeles Street | | | Los Angeles | CA | 90012 |
| IRS | Internal Revenue Service | | 600 Arch Street | | | Philadelphia | PA | 19101 |
| TOP 30 | Keenan and Associates | Eric Rodriguez | 2355 Crenshaw Blvd., Suite 200 | | | Torrance | CA | 90501 |

SERVICE LIST (via First Class Mail)

| Description | CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| Counsel for Hanmi Bank | Law Office of Nathan A. Schultz, P.C. | Nathan A. Schultz, Esq. | 10621 Craig Road | | | Traverse City | MI | 49686 |
| Counsel to Medline Industries, LP | Lowenstein Sandler LLP | Robert M. Hirsh and Phillip Khezri | 1251 Avenue of the Americas | | | New York | NY | 10020 |
| TOP 30 | Medical Information Technology, Inc | Goretti Medeiros | 7 Blue Hill River Road | | | Canton | MA | 02021 |
| TOP 30 | Medical Solutions LLC | Ruben Ramirez | 1010 N 102Nd St Suite 300 | | | Omaha | NE | 68114 |
| TOP 30 | Medline Industries Inc | Brent Fogel | Three Lakes Drive | | | Northfield | IL | 60093 |
| TOP 30 | Medstar Anesthesia Services Inc | Robert Resnick | 9251 Wedgewood St | | | Temple City | CA | 91780 |
| National Association of Attorneys General | National Association of Attorneys General | | 1850 M Street NW, 12th Floor | | | Washington | DC | 20036 |
| TOP 30 | Nixon Peabody Llp | Jennifer O'Neal | 1300 Clinton Square | | | Rochester | NY | 14604 |
| TOP 30 | Noridian Healthcare Solutions, LLC | Theresa Pachel | 900 42nd Street S | | | Fargo | ND | 58103 |
| TOP 30 | Office of Inspector General (OIG) | Nicole Caucci | 405 South Main Street Suite 350 | | | Salt Lake City | UT | 84111 |
| Attorney General of California | Office of the Attorney General | Emilio Varanini, Supervising Deputy Attorney General | 455 Golden Gate Ave., Suite 11000 | | | San Francisco | CA | 94102 |
| Attorney General of California | Office of the Attorney General | Neli Palma and Melissa Hamill | 1300 I Street P.O. Box 944255 | | | Sacramento | CA | 94244-2550 |
| Attorney General of California | Office of the Attorney General | Roma Patel, Deputy Attorney General | 300 South Spring Street, Suite 7505 | | | Los Angeles | CA | 90013-1230 |
| Office of the Attorney General of California | Office of the Attorney General of California | Consumer Law Section | Attn Bankruptcy Notices | 455 Golden Gate Ave., Suite 11000 | | San Francisco | CA | 94102 |
| Deputy General Counsel to California Department of Health Care Services | Office of the California Attorney General | Department of Justice | Kenneth K. Wang | 300 South Spring Street, Suite 1702 | | Los Angeles | CA | 90013 |
| Office of the CA Attorney General | Office of the California Attorney General | Department of Justice | Jennifer Kim | 300 South Spring Street, Floor 9 | | Los Angeles | CA | 90013 |
| Counsel to Hanmi Bank | Orrick, Herrington & Sutcliffe LLP | Brendan LaFountain | 400 Capitol Hall | | | Sacramento | CA | 95814-4497 |
| TOP 30 | Outset Medical Inc | Andy Rabon | 3052 Orchard Drive | | | San Jose | CA | 95134 |
| TOP 30 | Philips Healthcare | Jose Rivera | 222 Jacobs Street | | | Cambridge | MA | 02141 |
| TOP 30 | Private Attorney General Act (PAGA) | Jarrod Salinas | 1411 North Batavia Street #105 | | | Orange | CA | 92867 |
| Counsel for California Statewide Communities Development Corporation dba CSDA | Richards, Watson & Gershon | Stephen D. Lee | 350 South Grand Avenue, 37th Floor | | | Los Angeles | CA | 90071 |
| TOP 30 | Shiftwise | Jennifer Folds | 200 SW Market Street Suite 700 | | | Portland | OR | 97201 |
| Counsel to Hanmi Bank | Shulman Hodges & Bastian LLP | Michael J. Petersen | 100 Spectrum Center Drive, Suite 600 | | | Irvine | CA | 92614 |
| Proposed Counsel to the Official Committee of Unsecured Creditors | Sills Cummis & Gross P.C. | Andrew Sherman and Boris Mankovetskiy | One Riverfront Plaza | | | Newark | NJ | 07102 |
| TOP 30 | Sodexho Inc & Affiliates | Luis Lunalluna | 9801 Washingtonian Boulevard | | | Gaithersburg | MD | 20878 |
| State of California Employment Development Department | State of California Employment Development Department | Bankruptcy Group MIC 92E | P. O. Box 826880 | | | Sacramento | CA | 94280-0001 |
| TOP 30 | Stryker Endoscopy | Joe Gallinatti | 5900 Optical Ct | | | San Jose | CA | 95138 |
| TOP 30 | Stryker Instruments | Donovan Reiley | 4100 E. Milham Road | | | Kalamazoo | MI | 49001 |
| TOP 30 | Stryker Orthopedics | Trent Zaks | 325 Corporate Drive | | | Mahwah | NJ | 07430 |
| U.S. Department of Health & Human Services | U.S. Department of Health & Human Services | Alex M. Azar II, Secretary | 200 Independence Avenue, S.W. | | | Washington | DC | 20201 |
| U.S. Department of Health and Human Services | U.S. Department of Health and Human Services | Angela M. Belgrove, Assistant Regional Counsel | Office of the General Counsel, Region IX | 90 7th Street, Suite 4-500 | | San Francisco | CA | 94103-6705 |
| United States Attorney Civil Process Clerk | United States Attorney's Office | | Federal Building | Room 7516 | 300 North Los Angeles Street | Los Angeles | CA | 90012 |
| United States Attorney's Office | United States Attorneys Office | Central District of California | 312 North Spring Street | Suite 1200 | | Los Angeles | CA | 90012 |
| United Stated Attorney's Office | United States Attorneys Office | Northern District of California | 150 Almaden Boulevard | Suite 900 | | San Jose | CA | 95113 |
| U.S. Department of Health and Human Services, among other agencies and departments of the United States | United States Department of Justice | Civil Division | Augustus T. Curtis | P.O. Box 875 | Ben Franklin Station | Washington | DC | 20044-0875 |
| United States Department of Justice | United States Department of Justice | Ben Franklin Station | P. O. Box 683 | | | Washington | DC | 20044 |
| Office of the United States Trustee | United States Trustee | Peter C. Anderson | Office of the UST/DOJ | 915 Wilshire Blvd., Suite 1850 | | Los Angeles | CA | 90017 |
| Indenture Trustee | US Bank NA | Christopher F. Gehman Vice President, Global Corporate Trust Services | James Center Three | 1051 East Cary Street, 6th Floor | | Richmond | VA | 23219 |
| Indenture Trustee | US Bank NA | | Po Box 70870 | | | St Paul | MN | 55170-9690 |
| Chambers | USBC Central District of California | Hon. Sandra R. Klein | Edward R. Roybal Federal Building and U.S. Courthouse | 255 East Temple Street, Suite 1582 | | Los Angeles | CA | 90012 |

| Description | CreditorName | CreditorNoticeName | Email |
|---|---|---|---|
| TOP 30 | Abbott Laboratories Inc | Nathan Scott | nathan.scott@abbott.com |
| TOP 30 | Advantis Medical Staffing | Elayne Goldmane | goldman@advantismed.com |
| Counsel for Advantis Medical Staffing | Akerman LLP | Evelina Gentry and Anthony D. Sbardellati | evelina.gentry@akerman.com |
| TOP 30 | Alhambra Hospital Medical Center | Terry Chu | terrychu@alhambrahospital.com |
| Attorneys for California Statewide Communities Development Authority | Allen Matkins Leck Gamble Mallory & Natsis LLP | Debra A. Riley, Esq. | driley@allenmatkins.com |
| TOP 30 | Allied Universal Security Services | Moises Rodriguez | moises.rodriguez@aus.com |
| TOP 30 | Arthrex, Inc | Carla Pitcher | Carla.Pitcher@arthrex.com |
| TOP 30 | Axis Spine Llc | DD Mate | dmate@axisspineco.com |
| Counsel to Baxter Healthcare Corporation | Blakeley LC | Yolieth Bazan Matamoros | yolieth_bazan@baxter.com |
| TOP 30 | Blakeley LC | Scott E. Blakeley | SEB@BlakeleyLC.com |
| TOP 30 | Boston Scientific Corp | Kathleen Homsab | Kathleen.homsab@bsci.com |
| Counsel for Sodexo | Brown McGarry Nimeroff LLC | Jami B. Nimeroff | jnimeroff@bmnlawyers.com |
| Counsel to Proposed DIP Lender | Bryan Cave Leighton Paisner LLP | Eric S. Prezant | eric.prezant@bclplaw.com |
| Counsel to Proposed DIP Lender | Bryan Cave Leighton Paisner LLP | Vanessa Sunshine and Sharon Weiss | vanessa.sunshine@bclplaw.com; sharon.weiss@bclplaw.com |
| Counsel for United Nurses Associations of California/Union of Health Care Professionals | Bush Gottlieb, A Law Corporation | David E. Ahdoot, Kirk M. Prestegard and Adrian R. Butler | dahdoot@bushgottlieb.com; kprestegard@bushgottlieb.com; abutler@bushgottlieb.com |
| TOP 30 | California Department Of Health Care | Tomas J. Aragon | D'Andria.Lewis@dhcs.ca.gov; Christine.Oguro@dhcs.ca.gov |
| California Department of Public Health | California Department of Public Health | Stephanie Spich | stephanie.spich@cdph.ca.gov |
| TOP 30 | Cepheid Inc. | Susan Jose | susan.jose@cepheid.com |
| TOP 30 | Cloudwave | Loraine Sarno | lsarno@insightinvestments.com |
| TOP 30 | Constellation New Energy-Gas | Zachary Kecyzkecy | ZacharyKecyzkecy@spectrum-nrg.com |
| Proposed Counsel to the Official Committee of Unsecured Creditors | Dentons US LLP | Tania M. Moyron, Samuel R. Maizel and Rebecca M. Wicks | tania.moyron@dentons.com; samuel.maizel@dentons.com; rebecca.wicks@dentons.com |
| Counsel for Medico Professional Linen Service and American Textile Maintenance | Elkins Kalt Weintraub Reuben Gartside LLP | Roye Zur | rzur@elkinskalt.com |
| TOP 30 | First Financial Holdings Llc | Ricardo Oseguera | roseguera@ffequipmentleasing.com |
| Counsel to Indenture Trustee | Greenberg Traurig, LLP | Colleen Murphy, Kevin Walsh | Colleen.Murphy@gtlaw.com; Kevin.Walsh@gtlaw.com |
| Proposed DIP Lender | Hilco Real Estate | Attn Gary C. Epstein, Ryan Lawlor, Neil Aaronson and Robert Lubin | gepstein@hilcoglobal.com; rlawlor@hilcoglobal.com; NAaronson@hilcoglobal.com; RLubin@hilcoglobal.com |
| TOP 30 | Huntington Technology Finance | Brent McQueen | brent.a.mcqueen@huntington.com |
| TOP 30 | Keenan and Associates | Eric Rodriguez | erodriguez@keenan.com |
| Counsel for Hanmi Bank | Law Office of Nathan A. Schultz, P.C. | Nathan A. Schultz, Esq. | nschultzesq@gmail.com |
| Counsel to Medline Industries, LP | Lowenstein Sandler LLP | Robert M. Hirsh and Phillip Khezri | mhirsh@lowenstein.com; pkhezri@lowenstein.com |
| TOP 30 | Medical Information Technology, Inc | Goretti Medeiros | gmedeiros@meditech.com |
| TOP 30 | Medical Solutions LLC | Ruben Ramirez | Nick.Rudman@medicalsolutions.com; brian.koenig@koleyjessen.com |
| TOP 30 | Medline Industries Inc | Brent Fogel | bfogel@medline.com |
| TOP 30 | Medstar Anesthesia Services Inc | Robert Resnick | robert.amedinc@gmail.com |
| National Association of Attorneys General | National Association of Attorneys General | | support@naag.org |
| TOP 30 | Nixon Peabody Llp | Jennifer O'Neal | joneal@nixonpeabody.com |
| TOP 30 | Noridian Healthcare Solutions, LLC | Theresa Pachel | JE-ERS@noridian.com |
| TOP 30 | Office of Inspector General (OIG) | Nicole Caucci | Nicole.Caucci@oig.hhs.gov |
| Attorney General of California | Office of the Attorney General | Emilio Varanini, Supervising Deputy Attorney General | Emilio.Varanini@doj.ca.gov |
| Attorney General of California | Office of the Attorney General | Neli Palma and Melissa Hamill | Neli.Palma@doj.ca.gov; Melissa.Hamill@doj.ca.gov |
| Attorney General of California | Office of the Attorney General | Roma Patel, Deputy Attorney General | Roma.Patel@doj.ca.gov |
| Office of the Attorney General of California | Office of the Attorney General of California | Consumer Law Section | Scott.Chan@doj.ca.gov |
| Deputy General Counsel to California Department of Health Care Services | Office of the California  Attorney General | Department of Justice | Kenneth.Wang@doj.ca.gov |
| TOP 30 | Outset Medical Inc | Andy Rabon | arabon@outmedical.com |
| TOP 30 | Philips Healthcare | Jose Rivera | jose.rivera@philips.com |
| TOP 30 | Private Attorney General Act (PAGA) | Jarrod Salinas | jarrod@phoenixclassaction.com |
| Counsel for California Statewide Communities Development Corporation dba CSDA | Richards, Watson & Gershon | Stephen D. Lee | slee@rwglaw.com |
| TOP 30 | Shiftwise | Jennifer Folds | jennifer.folds@medefis.com |
| Proposed Counsel to the Official Committee of Unsecured Creditors | Sills Cummis & Gross P.C. | Andrew Sherman and Boris Mankovetskiy | asherman@sillscummis.com; bmankovetskiy@sillscummis.com |

SERVICE LIST (via Electronic Mail)

| Description | CreditorName | CreditorNoticeName | Email |
|---|---|---|---|
| TOP 30 | Sodexho Inc & Affiliates | Luis Lunalluna | LuisLunalluna@beverly.org |
| TOP 30 | Stryker Endoscopy | Joe Gallinatti | joe.gallinati@stryker.com |
| TOP 30 | Stryker Instruments | Donovan Reiley | donovan.reiley@stryker.com |
| TOP 30 | Stryker Orthopedics | Trent Zaks | TrentZaks@stryker.com |
| U.S. Department of Health and Human Services, among other agencies and departments of the United States | United States Department of Justice | Civil Division | augustus.t.curtis@usdoj.gov |
| Office of the United States Trustee | United States Trustee | Peter C. Anderson | hatty.yip@usdoj.gov; Michael.Jones4@usdoj.gov |
| Indenture Trustee | US Bank NA | Christopher H. Gehman Vice President, Global Corporate Trust Services | christopher.gehman@usbank.com |