SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
JUSTIN R. BERNBROCK (admitted *pro hac vice*)
CATHERINE JUN (admitted *pro hac vice*)
ROBERT B. McLELLARN (admitted *pro hac vice*)
321 North Clark Street, 32nd Floor
Chicago, Illinois 60654
Telephone: 312.499.6300
Facsimile: 312.499.6301
Email:     jbernbrock@sheppardmullin.com
           cjun@sheppardmullin.com
           rmclellarn@sheppardmullin.com
JENNIFER L. NASSIRI, SBN 209796
ALEXANDRIA G. LATTNER, SBN 314855
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6055
Telephone: 310.228.3700
Facsimile: 310.228.3701
Email:     jnassiri@sheppardmullin.com
           alattner@sheppardmullin.com

Proposed Counsel to Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>BEVERLY COMMUNITY HOSPITAL ASSOCIATION, dba BEVERLY HOSPITAL (A NONPROFIT PUBLIC BENEFIT CORPORATION), *et al*,[1]<br><br>Debtors,<br><br>---<br><br>☒  Affects all Debtors<br><br>☐  Affects Beverly Community Hospital Association<br><br>☐  Affects Montebello Community Health Services, Inc.<br><br>☐  Affects Beverly Hospital Foundation | Case No.: 2:23-bk-12359-SK<br><br>Jointly administered with:<br><br>Case No: 2:23-bk-12360-SK<br><br>Case No: 2:23-bk-12361-SK<br><br>Hon. Sandra R. Klein<br><br>Chapter 11 Case<br><br>**NOTICE OF FILING FINAL BIDDING PROCEDURES**<br><br>Date:     July 12, 2023<br>Time:     10:00 a.m.<br>Judge:    Sandra R. Klein<br>Place:    Zoom.Gov |

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Beverly Community Hospital Association d/b/a Beverly Hospital (6005), Montebello Community Health Services, Inc. (3550), and Beverly Hospital Foundation (9685).  The mailing address for the Debtors is 309 W. Beverly Blvd., Montebello, California 90640.

-

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES TRUSTEE, REGION 16, ALL OF THE DEBTORS' SECURED CREDITORS, TOP 30 UNSECURED CREDITORS, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND ALL OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on May 24, 2023, the Debtors filed the *Debtors' Notice of Motion and Motion for the Entry of an Order (I) Approving Asset Purchase Agreement for Stalking Horse Purchaser and for Prospective Overbidders, (II) Approving Bid Protections, (III) Approving Bidding Procedures, (IV) Scheduling Certain Dates Thereto, (V) Approving Form of Notice and (VI) Scheduling Court Hearing to Approve Sale Free and Clear to the Successful Bidder* (the "Bidding Procedures Motion") [Dkt. No. 308].

**PLEASE TAKE FURTHER NOTICE** that on May 31, 2023, the Court held a hearing on the Bidding Procedures Motion, and granted the Motion, as modified on the record at the hearing thereon. The Court provided additional time for the Debtors to incorporate comments to the proposed order and attached bidding procedures from certain parties in interest.

**PLEASE TAKE FURTHER NOTICE** that on June 2, 2023, the Court entered an order (the "Bidding Procedures Order") granting the Bidding Procedures Motion and attached exhibits thereto, including the Debtors' proposed Bidding Procedures and the Significant Dates. Consistent with the Court's order, the Debtors hereby give notice that the Debtors have prepared the final Bidding Procedures and have made a few minor edits in the Bidding Procedures consistent with the Court's Order. More specifically, the Debtors have added the following language to the Bidding Procedures at the end of Section II. Assets to Be Sold:

> There is a dispute as to whether Debtor Beverly Community Health Association's (Debtor's) Medi-Cal Provider Agreement is an executory contract. The California Department of Health Care Services takes the position that Debtor's Medi-Cal Provider Agreements is an executory contract that must be assumed and assigned. The Court has not ruled on whether the Medi-Cal Provider Agreements is an executory contract. The California Department of

Health Care Services and the United States reserve their right to
object to any sale of Medicare or Medi-Cal Provider Agreements.[2]

The Debtors have also added the following language to the Bidding Procedures at the end of Section III. C (e): "and shall indicate the bidder's proposed treatment of any governmental licenses for operation of Beverly Hospital and any Medicare or Medi-Cal provider agreements related thereto."

**PLEASE TAKE FURTHER NOTICE** that on June 8, 2023, the Debtors will serve this notice (with the attached Bidding Procedures) and the Court's Order approving the Bidding Procedures Motion on the following parties via email or mail where email addresses are not available, or as otherwise indicated: (1) The United States Trustee (via mail); (2) all of the Debtors' secured creditors and lienholders, (3) counsel to the Stalking Horse Purchaser; (4) counsel to the Official Committee of Unsecured Creditors; (5) the Debtors' Top 30 Unsecured Creditors; and (6) all other parties who have requested notices from the Clerk of the Court. Additionally, the Debtors will provide this notice and the attached Bidding Procedures to all parties who have signed the appropriate non-disclosure agreement and have access to the Debtors' data room to assist potential bidders with conducting due diligence.

Dated: June 7, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
        */s/ Jennifer L. Nassiri*
        Jennifer L. Nassiri

JUSTIN R. BERNBROCK
JENNIFER L. NASSIRI
CATHERINE JUN
ROBERT B. McLELLARN
ALEXANDRIA G. LATTNER

Proposed Counsel to Debtors and
Debtors in Possession

---

[2]  *See* Bidding Procedures Order ¶ 2(d).

**Exhibit 1**

**BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures") for the sale of all assets of (i) the assets (the "Purchased Assets") enumerated in the Stalking Horse APA (as defined below), including but not limited to, Beverly Community Hospital Associations dba Beverly Hospital ("Beverly Hospital"), and Montebello Community Health Services, Inc. ("Montebello Health" and together with Beverly Hospital, the "APA Facilities"); and (ii) assets not otherwise enumerated in the APA, but associated with the ownership or operation of the APA Facilities and available for purchase (the "Other Assets"), in connection with the chapter 11 cases pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), jointly administered as case number 2:23-bk-12359-RK, in the form to be approved by the Bankruptcy Court, by Order dated June 2, 2023 [Dkt. No. 378] (the "Bidding Procedures Order").

Debtors Beverly Hospital and Montebello Health (collectively, the "Sellers") entered into that certain Asset Purchase Agreement, dated May 23, 2023 between the Debtors, on the one hand, and White Memorial Medical Center d/b/a Adventist Health White Memorial, a California nonprofit religious corporation ("AHWM," "Stalking Horse Purchaser," or "Purchaser"), on the other hand, pursuant to which the Stalking Horse Purchaser shall acquire the Assets on the terms and conditions specified therein (together with the schedules and related documents thereto, the "Stalking Horse APA"). The sale transaction pursuant to the Stalking Horse APA is subject to competitive bidding as set forth herein. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the *Debtors' Notice of Motion and Motion for the Entry of an Order (I) Approving Asset Purchase Agreement for Stalking Horse Purchaser and for Prospective Overbidders, (I) Approving Bid Protections, (III) Approving Bidding Procedures, (IV) Scheduling Certain Dates Thereto, and (V) Approving Form of Notice; and (VI) Scheduling Court Hearing to Approve Sale Free and Clear to the Successful Bidder* [Docket No. 308] (the "Bidding Procedures Motion").

## II.    ASSETS TO BE SOLD

The Debtors seek to complete a sale of substantially all assets of the APA Facilities, including both the Purchased Assets and the Other Assets (the "Sale"). The Stalking Horse APA

will serve as the "stalking-horse" bid for the Purchased Assets.  The Stalking Horse APA is attached to the Bidding Procedures Motion as Exhibit B and can be obtained by requesting from counsel to the Debtors, or online free of charge at https://www.kccllc.net/Beverly.  There is a dispute as to whether Debtor Beverly Community Health Association's (Debtor's) Medi-Cal Provider Agreement is an executory contract.  The California Department of Health Care Services takes the position that Debtor's Medi-Cal Provider Agreements is an executory contract that must be assumed and assigned.  The Court has not ruled on whether the Medi-Cal Provider Agreements is an executory contract.  The California Department of Health Care Services and the United States reserve their right to object to any sale of Medicare or Medi-Cal Provider Agreements

## III.    THE BID PROCEDURES

In order to ensure that the Debtors receive the maximum value for the Purchased Assets and/or the Other Assets, they intend to hold a sale process for the Purchased Assets and/or the Other Assets pursuant to the procedures and on the timeline proposed herein.

### A.    Provisions Governing Qualifications of Bidders

In order to participate in the bidding process, each bidder, prior to 4:00 p.m. (prevailing Pacific Time) on June 23, 2023 (the "Bid Deadline") other than the Stalking Horse Purchaser and the DIP Lender (as defined below), who wishes to participate in the bidding process must deliver the following to the Notice Parties (defined below under Section D. Bid Deadline):

(a)     a written disclosure of the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid; and

(b)     an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtors) in form and substance satisfactory to the Debtors and which shall inure to the benefit of any purchaser of the Purchased Assets and/or Other Assets; without limiting the foregoing, each confidentiality agreement executed by a potential bidder shall contain standard non-solicitation provisions.

A party that delivers the documents and information described above and that the Debtors and their advisors determine, after consultation with counsel to the Official Committee of Unsecured Creditors (the "Committee"), and its advisors, counsel to the DIP Lender, counsel to Master Trustee,

and counsel to UNAC/UHCP; provided, however, that the DIP Lender and Master Trustee will not be consulted as consultation parties when their respective bids are being considered (collectively, the "Consultation Parties"), in their reasonable business judgment, is likely (based on availability of financing, experience, and other considerations) to be able to consummate the sale, will be deemed a potential Bidder ("Potential Bidder").

As promptly as practicable after a party delivers all of the materials required above, the Debtors will determine, in consultation with the Consultation Parties, and will notify the party, whether the Debtor considers such party to be a Potential Bidder.  Potential Bidders will have the opportunity to submit a bid by the Bid Deadline.

**B.      Due Diligence**

Potential Bidders will be given access to the Debtors' data room after signing a non-disclosure agreement.  The due diligence period shall extend through and include the Auction date; provided, however, that any Qualified Bid (defined herein) submitted shall be irrevocable until the selection of the Successful Bidder(s) (defined herein) and any Back-Up Bidder(s) (defined herein).

**C.      Provisions Governing Qualified Bids**

A bid submitted by a Potential Bidder will be considered a Qualified Bid (each, a "Qualified Bid," and each such Potential Bidder thereafter a "Qualified Bidder") only if the bid submitted complies with all of the following requirements:

(a)      must clearly state which of the Purchased Assets it seeks to acquire, in cash, and which liabilities of the applicable Debtors it agrees to assume;

(b)      includes a signed writing that the bidder's offer is irrevocable until the selection of the Successful Bidder and the Back-Up Bidder, provided that if such bidder is selected as the Successful Bidder or the Back-Up Bidder then the offer shall remain irrevocable until the earlier of (i) the closing of the transaction with the Successful Bidder and (ii) the date that is one hundred days after entry of the Sale Order with respect to the Successful Bidder and one hundred and one (101) days after entry of the Sale Order with respect to the Back-Up Bidder; provided, however, that if the Stalking Horse Purchaser becomes the Back-Up Bidder, it will only be bound as

1    Back-Up Bidder on the terms contained in the Stalking Horse APA, including the

2    termination provisions;

3    (c)    includes confirmation that there are no conditions precedent to the Potential Bidder's

4    ability to enter into a definitive agreement and that all necessary internal governance

5    and shareholder approvals have been obtained prior to the bid;

6    (d)    sets forth each regulatory and third-party approval required for the Potential Bidder

7    to consummate the transaction and the time period within which the Potential Bidder

8    expects to receive such approvals and establishes a substantial likelihood that the

9    Potential Bidder will obtain such approvals by the stated time period; [3]

10    (e)    includes a duly authorized and executed copy of a purchase or acquisition agreement

11    in the form of the Stalking Horse APA (a "Purchase Agreement"), including the

12    purchase price for some or all of the Purchased Assets, or alternatively, assets which

13    are not currently included in the Stalking Horse Bid, or both, expressed in U.S.

14    Dollars, together with all exhibits and schedules thereto, together with a redline of

15    the Stalking Horse APA and proposed order to approve the sale by the Court to show

16    any amendments and modifications; or in the case of a Qualified Bid for only certain

17    real estate assets of the Debtors, such bid shall include a duly authorized and executed

18    purchase agreement in such form as provided by the Debtors to such bidders,

19    expressed in U.S. Dollars, together with all exhibits and schedules thereto, together

20    with a markup of the proposed order to approve the sale by the Court to show any

21    amendments or modifications and shall indicate the bidder's proposed treatment of

22

23

24

25

26    [3]    The California Department of Public Health asserts that there must be an effective hospital license to operate the
hospital that is sold by the Debtors, which is currently known as Beverly Hospital, at all times, before and after the

27    "Effective Time" and that there must not be a time gap during which no effective general acute care hospital license
exists to operate the hospital that is sold by the Debtors, which is currently known as Beverly Hospital.

28

1  any governmental licenses for operation of Beverly Hospital and any Medicare or

2  Medi-Cal provider agreements related thereto; [4]

3  (f)  includes written evidence of a firm, irrevocable commitment for financing or other

4  evidence of ability to consummate the proposed transaction, that will allow the

5  Debtors to make a reasonable determination as to the Potential Bidder's financial and

6  other capabilities to consummate the transaction contemplated by the Purchase

7  Agreement;

8  (g)  the bid is for some or all of the Purchased Assets, it must have a value to the Debtors,

9  in the Debtors' exercise of its reasonable business judgment after consultation with

10  the Consultation Parties, that is greater than or equal to the sum of the Purchase Price

11  in the Stalking Horse APA, plus the amount of the Break-Up Fee, the Expense

12  Reimbursement, and $500,000 (the bid increment);

13  (h)  identifies with particularity which executory contracts and unexpired leases the

14  Potential Bidder wishes to assume;

15  (i)  contains sufficient information concerning the Potential Bidder's ability to provide

16  adequate assurance of performance with respect to assumed executory contracts and

17  unexpired leases;

18  (j)  includes an acknowledgement and representation that the Potential Bidder: (A) has

19  had an opportunity to conduct any and all required due diligence regarding the

20  Purchased Assets prior to making its offer; (B) has relied solely upon its own

21  independent review, investigation and/or inspection of any documents and/or the

22  Purchased Assets in making its bid; (C) did not rely upon any written or oral

23  statements, representations, promises, warranties or guaranties whatsoever, whether

24  express or implied (by operation of law or otherwise), regarding the Purchased

---

[4] In connection with the Stalking Horse APA, the Stalking Horse intends to seek approval to expand its license under Health and Safety Code section 1250.8 to operate the hospital as an additional site under the Stalking Horse Purchaser's existing license.

Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Purchase Agreement; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

(k)    includes evidence, in form and substance reasonably satisfactory to the Debtors, of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Purchase Agreement;

(l)    is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtors), certified check or such other form acceptable to the Debtors, payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to 6.5% of the Potential Bid purchase price, which deposit shall be forfeited if such bidder is the Successful Bidder and breaches its obligation to close, and if the overbidder is a secured creditor of the Debtors who intends to make a credit bid, evidence of the amount, priority and basis for such creditor's secured claim against the Debtors;

(m)    contains a detailed description of how the Potential Bidder intends to treat current employees of the Debtors, if applicable;

(n)    contains such other information reasonably requested by the Debtors; and

(o)    is received prior to the Bid Deadline.

Only bids fulfilling the preceding requirements contained in this section may, or otherwise in the Debtors' reasonable discretion, in consultation with the Consultation Parties, be deemed to be "Qualified Bids." Notwithstanding the foregoing, the Stalking Horse Purchaser is deemed a Qualified Bidder and the Stalking Horse APA is deemed a Qualified Bid, for all purposes in connection with the Bidding Procedures, the Auction and the sale. Further, notwithstanding the foregoing, HRE Montebello, LLC (the "DIP Lender"), is deemed a Qualified Bidder and any credit bid by the DIP Lender for only the DIP Collateral (as defined in the DIP Financing Order) shall be deemed a Qualified Bid (without the need to satisfy the requirements in subsections above),

1  provided, however, that to the extent the DIP Lender's bid is in excess of the DIP Obligations, such

2  excess amount above the DIP Obligations shall be in cash, for all purposes in connection with the

3  Bidding Procedures, the Auction and the sale.  The DIP Lender's credit bid rights are more fully

4  described in Section E. Credit Bidding below.  The Master Trustee is deemed a Qualified Bidder

5  and may credit bid up to the full amount of its claim on its collateral, but not the DIP Collateral or

6  rents therefrom without the need to satisfy the requirements in subsections above, so long as it does

7  not argue that its collateral extends to the DIP Collateral or rents flowing therefrom; provided,

8  however, in the event that any bid (cash, or a credit bid by an entity other than the Master Trustee)

9  for the DIP Collateral would equal or exceed the amount necessary to repay the DIP Lender in full,

10  then the Master Trustee reserves its right to credit bid its springing lien on the DIP Collateral as long

11  as such credit bid includes cash sufficient to repay the DIP Lender in full, and in such situation and

12  notwithstanding anything to the contrary in these Bidding Procedures, the Master Trustee shall be

13  deemed a Qualified Bidder with respect to the DIP Collateral..

14      The Debtors shall notify the Stalking Horse Purchaser, the DIP Lender, the Master Trustee,

15  and all Qualified Bidders in writing as to whether or not any bids constitute Qualified Bids (and

16  with respect to each Qualified Bidder that submitted a bid as to whether such Qualified Bidder's bid

17  constitutes a Qualified Bid) and provide copies of the Purchase Agreements relating to any such

18  Qualified Bid to the Stalking Horse Purchaser, the DIP Lender, and such Qualified Bidders no later

19  than one (1) day following the Debtors' determination that such bid is a Qualified Bid.

20      **D.  Bid Deadline**

21      In order to be eligible to participate in the Auction, a Qualified Bidder that desires to make

22  a bid will deliver written copies of its bid by mail and Email to the following parties (collectively,

23  the "Notice Parties"): (i) proposed counsel to the Debtors: Sheppard, Mullin, Richter & Hampton

24  LLP, 321 N. Clark Street, 32nd Floor, Chicago, IL 60654 (Attn: Justin R. Bernbrock; Robert B.

25  McLellarn, and Catherine Jun), Emails: jbernbrock@sheppardmullin.com,

26  rmclellarn@sheppardmullin.com, and cjun@sheppardmullin.com; and/or Sheppard, Mullin,

27  Richter & Hampton LLP, Avenue of the Stars, Suite 1600 Los Angeles, CA 90067-6055 (Attn:

28  Jennifer L. Nassiri and Alexandria G. Lattner), Emails: jnassiri@sheppardmullin.com,

alattner@sheppardmullin.com; (ii) the Debtors' Investment Banker: Portage Point Partners, 1330 Avenue of the Americas, 22nd Floor, New York, NY 10019 (Attn: Jason Cohen), Email: jcohen@pppllc.com and bev_ppp@pppllc.com; (iii) counsel to the Stalking Horse Purchaser: Jones Day, 555 South Flower Street, 50th Floor, Los Angeles, CA 90071, Email: jmester@jonesday.com; (iv) counsel to the DIP Lender, HRE Montebello, LLC: Bryan Cave Leighton Paisner, LLP, 161 North Clark Street, Suite 4300, Chicago, Illinois 60201 (Attn: Eric S. Prezant), Email: eric.prezant@bclplaw.com; 120 Broadway, Suite 300, Los Angeles, California 90401(Attn: Sharon Z. Weiss and Olivia J. Scott); sharon.weiss@bclplaw.com and olivia.scott3@bclplaw.com; (v) U.S. Trustee: 915 Wilshire Blvd., Suite 1850, Los Angeles, California 90017 (Attn: Kelly L. Morrison), Email: kelly.l.morrison@usdoj.gov; (vi) proposed counsel to the Official Committee: Dentons, LLP, 601 S. Figueroa Street Suite 2500, Los Angeles, California  90017-5704, (Attn: Samuel R. Maizel and Tania M. Moyron), Emails: samuel.maizel@dentons.com and tania.moyron@dentons.com, and Sills Cummis & Gross P.C., (Attn: Andrew H. Sherman), Email: asherman@sillscummis.com; and (vii) counsel to U.S. Bank Trust Company National Association, as Master Trustee (the "Master Trustee"), Greenberg Traurig, LLP, One International Place, Suite 200, Boston MA, 02110 (Attn: Colleen A. Murphy, Kevin J. Walsh, and Chris Marks), Emails: colleen.murphy@gtlaw.com, kevin.walsh@gtlaw.com, and chris.marks@gtlaw.com, so as to be mailed or received via Email by the Notice Parties not later than the Bid Deadline established in the Bidding Procedures Order.

**E.    Credit Bidding**

It is acknowledged and agreed that the DIP Lender has a valid, properly perfected lien and security interest in the DIP Collateral in relation to the DIP Loan, as such terms are defined in the *Interim Order: (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Granting Adequate Protection to Prepetition Secured Creditors, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 182] and any Final Order that is approved by the Court (collectively, the "DIP Financing Order").  As more fully and specifically described in the DIP Financing Order, the DIP Collateral generally consists of all real estate, structures, fixtures and other real estate-related assets of the Debtors, but does not include the real estate, structures, fixtures and

other real estate or personal property-related assets of and underlying the hospital.  In addition to the Purchased Assets being offered for sale to Qualified Bidders under the terms of the Stalking Horse APA, the Purchased Assets shall also be offered for sale to Qualified Buyers in at least two separate lots: (i) the first lot consisting of the portion of the Purchased Assets that do not constitute the DIP Collateral, and (ii) the second lot consisting of the portion of the Purchased Assets that do constitute the DIP Collateral, which lot may be offered for sale either in bulk or as individual properties.  The DIP Lender shall have the right to credit bid any amount of the DIP Obligations for any portion or all of the DIP Collateral either prior to, during, or after the close of bidding by any other Qualified Bidders.

Notwithstanding any other provisions herein or in the Stalking Horse APA, in the event that Debtors either (i) name a Successful Bidder for the entirety of the Purchased Assets under the Stalking Horse APA at auction or by cancellation of the auction as set forth in Part IV(C)(7) of the Bidding Procedures Motion, or (ii) name one or more Successful Bidders for the lot that consists of the DIP Collateral (either in bulk or individually by property), and in either (i) or (ii) above the Successful Bidder (and the Back-Up Bidder, if any) fails to close on or before the applicable Maturity Date (including any validly exercised extensions) under the DIP Loan, then the DIP Lender shall have the right, at its sole and absolute discretion, to elect to purchase all such assets constituting DIP Collateral as a credit bid in the amount(s) bid by the DIP Lender at or after the auction.  If no auction occurred and the Stalking Horse Purchaser fails to Close before the applicable Maturity Date under the DIP Loan, the DIP Lender shall have the right to credit bid in the outstanding amount of the DIP Obligations for all assets constituting the DIP Collateral.  If the DIP Lender elects to make any such credit bid, it shall be deemed a Back-Up Bidder and the Debtors are authorized and directed to take all reasonable actions necessary and appropriate to sell and transfer such DIP Collateral to the DIP Lender or its designee pursuant to the Sale Order, without further court order.

The Master Trustee is deemed a Qualified Bidder to the full extent, validity, and priority of its prepetition liens.

1    Any other party with a valid, properly perfected security interest in any of the Purchased

2    Assets may credit bid for the Purchased Assets in connection with the Sale pursuant to § 363(k) of

3    the Bankruptcy Code.

4    Any credit bid made by secured creditors shall not impair or otherwise affect the Stalking

5    Horse Purchaser's entitlement to the protections granted under the Bidding Procedures Order,

6    provided however, that if any portion of the Successful Bidder's purchase price includes a credit

7    bid, the Break-Up Fee and Expense Reimbursement shall be paid from the cash portion, if any, of

8    such sale proceeds.  In the event that such cash proceeds of such purchase price are insufficient to

9    satisfy the full amount of the Break-Up Fee and Expense Reimbursement, the Debtors and their

10   estates shall be responsible for such amount.  Except as expressly set forth in this paragraph with

11   respect to the cash portion of the sale proceeds, the DIP Lender and/or the Master Trustee shall not

12   be obligated to pay or fund directly or indirectly any amount of such Break-Up Fee and Expense

13   Reimbursement.

14   **F.    Evaluation of Competing Bids**

15   A Qualified Bid will be valued based upon several factors including, without limitation: (i)

16   the amount of such bid; (ii) the risks and timing associated with consummating the transactions

17   contemplated by such bid; (iii) any proposed revisions to the form of Stalking Horse APA; and (iv)

18   any other factors deemed relevant by the Debtors in its reasonable discretion, after consultation with

19   the Consultation Parties, including the Qualified Bidder's intention to continue providing medical

20   services at the Hospital.

21   **G.    No Qualified Bids**

22   If no Qualified Bids other than the Stalking Horse Bid are received by the Bid Deadline,

23   then the Debtors, in consultation with the Consultation Parties, may cancel the Auction, and

24   designate the Stalking Horse Bid as the Successful Bid and pursue entry of an order approving a

25   Sale to the Stalking Horse Purchaser pursuant to the Stalking Horse APA. The Debtors shall

26   promptly file notice of any cancellation of the Auction and designation of the Stalking Horse Bid as

27   the Successful Bid with the Bankruptcy Court.

28

**H.    Auction Process**

If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse APA, the Debtors will conduct the Auction of the Purchased Assets, as well as all other assets included in a Qualified Bid, which shall be transcribed, on **June 27, 2023, at 10:00 a.m. (prevailing Pacific Time)** (the "Auction Date"), at the offices of Sheppard, Mullin, Richter & Hampton LLP, at 333 S. Hope St, 43rd Floor, Los Angeles, California 90071, or such other location as shall be timely communicated to all parties entitled to attend the Auction. The Auction shall run in accordance with the following procedures, subject to Section E. Credit Bidding:

(a)    only the Debtors, the Stalking Horse Purchaser, the Master Trustee, Qualified Bidders who have timely submitted a Qualified Bid, the DIP Lender, the U.S. Trustee, and the Consultation Parties, and each of their respective attorneys and advisors may attend the Auction;

(b)    only the Stalking Horse Purchaser, the DIP Lender, the Master Trustee, and the Qualified Bidders who have timely submitted a Qualified Bid will be entitled to make any subsequent bids at the Auction;

(c)    each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

(d)    at least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and the Back-Up Bidder (defined below) at the conclusion of the Auction.  At least one (1) day prior to the Auction, the Debtors will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtors believe in their reasonable discretion is the highest or otherwise best offer (the "Baseline Bid") to all Qualified Bidders;

(e)     all Qualified Bidders who have timely submitted Qualified Bids and the DIP Lender will be entitled to be present for all subsequent bids at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

(f)     the Debtors, after consultation with their advisors and the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are: (i) not inconsistent with the Bidding Procedures, the Stalking Horse APA, the Bankruptcy Code, or any order of the Court entered in connection herewith, and (ii) disclosed to the Stalking Horse Purchaser, the DIP Lender, the Master Trustee, and each other Qualified Bidder at the Auction;

(g)     bidding will begin with the Baseline Bid and continue in bidding increments of at least $500,000 (each an "Overbid"), which shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Qualified Bids;

(h)     The initial Overbid, if any, shall provide for total consideration to Debtors with a value that exceeds the value of the consideration under the Baseline Bid by an incremental amount that is not less than the sum of the Bid Protections.  Additional consideration in excess of the amount set forth in the respective Baseline Bid must include: (1) cash or (2) in the case of a Qualified Bidder that has a valid and perfected lien on any assets of Debtors' estates, a credit bid of up to the full amount of such Qualified Bidder's allowed perfected lien, subject to § 363(k) of the Bankruptcy Code, Section E. Credit Bidding, and any other restrictions set forth herein.

(i)     To the extent the Debtors receive bids for the Debtors' real estate only, after consulting with their advisors and the Consultation Parties, the Debtors may employ and announce at the Auction additional procedural rules, including applicable

1    bidding increments, that are reasonable under the circumstances for conducting the

2    Auction, provided that such rules are: (i) not inconsistent with the Bidding

3    Procedures, the Stalking Horse APA, the Bankruptcy Code, or any order of the Court

4    entered in connection herewith, and (ii) disclosed to the Stalking Horse Purchaser,

5    the DIP Lender, and each other Qualified Bidder at the Auction.

6    (j)    Throughout the bidding rounds, the Debtors, at the times they see fit, shall announce

7    the bid that they believe, in consultation with the Consultation Parties, to be the

8    highest or otherwise better offer (the "Prevailing Highest Bid"). Debtors shall

9    describe to all Qualified Bidders the material terms of any Overbid designated as the

10    Prevailing Highest Bid as well as the value attributable by Debtors to such Prevailing

11    Highest Bid. A round of bidding will conclude after each participating Qualified

12    Bidder has had the opportunity to submit a Overbid with full knowledge of the

13    Prevailing Highest Bid. Except as specifically set forth herein, for the purpose of

14    evaluating the value of the consideration provided by Overbids, the Debtors will give

15    effect to the Break-Up Fee payable to the Stalking Horse Purchaser as well as any

16    additional liabilities or Cure Amounts (defined herein) to be assumed by the Stalking

17    Horse Purchaser or a Qualified Bidder, as applicable, and any additional costs which

18    may be imposed on the Debtors.

19    **I.    Selection of Successful Bid**

20    Unless otherwise agreed to by the Debtors, the Consultation Parties, and the Successful

21    Bidder, within two (2) business days after the conclusion of the Auction, the Successful Bidder shall

22    complete and execute all agreements, contracts, instruments, and other documents evidencing and

23    containing the terms and conditions upon which the Successful Bid was made. Within twenty-four

24    (24) hours following the conclusion of the Auction, the Debtors shall file a notice identifying the

25    Successful Bidder(s) with the Court and shall serve such notice by fax, email, or if neither is

26    available, by overnight mail to all counterparties whose contracts are to be assumed and assigned.

27    Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation

28    Parties, will review and evaluate each Qualified Bid in accordance with the procedures set forth

herein and determine which offer or offers are the highest or otherwise best from among the Qualified Bidders submitted at the Auction (although Debtors' will ultimately make such final determination) (one or more such bids, collectively the "Successful Bid" and the bidder(s) making such bid, collectively, the "Successful Bidder"), and communicate to the Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid. The Successful Bid may consist of a single Qualified Bid or multiple bids. The determination of the Successful Bid by the Debtors, after consultation with the Consultation Parties, at the conclusion of the Auction shall be subject to approval by the Court.

The Debtors will sell the Purchased Assets to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Court at the Sale Hearing and satisfaction of any other closing conditions set forth in the Successful Bidder's Purchase Agreement.

**J.      Return of Deposits**

All deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder no later than five (5) business days following the conclusion of the Auction.

**K.      Back-Up Bidder**

If an Auction is conducted, the Qualified Bidder or Qualified Bidders (including the Stalking Horse Purchaser) with the next highest or otherwise best Qualified Bid, as determined by the Debtors in the exercise of their business judgment, at the Auction shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable for one hundred and one (101) days after entry of the Sale Order (the "Hundred and One Day Period"); provided, however, that if the Stalking Horse Purchaser is named the Back-Up Bidder, its bid will be kept open pursuant to the terms of the Stalking Horse APA, including the termination provisions. If during the Hundred and One Day Period or the period applicable to the Stalking Horse under the Stalking Horse APA, the Successful Bidder fails to consummate the approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

**L.      Bid Protections; Stalking Horse Purchaser**

In recognition of the expenditure of time, energy, and resources by the Stalking Horse Purchaser in negotiating and preparing the Stalking Horse APA and providing the Debtors with a baseline for their sale process to attract better and higher offers, the Debtors have agreed to provide the Stalking Horse Purchaser with the Bid Protections, which are payable at closing of the sale, and the DIP Lender will not be responsible for such Bid Protections except to the extent set forth in Part IV(c)(5) of the Bidding Procedures Motion.  In the event that the Stalking Horse APA is terminated for any reason other than breach by the Stalking Horse Purchaser, the Debtors shall pay the Stalking Horse Purchaser an amount necessary to reimburse the Stalking Horse Purchaser for its out-of-pocket expenses, including legal fees, in connection with the transaction, up to $346,000.00 (the "Expense Reimbursement") within five (5) business days of such termination of the Stalking Horse APA.

In addition, to further compensate the Stalking Horse Purchaser for the substantial time and resources expended, the Debtors propose to pay the Stalking Horse Purchaser the break-up fee representing an amount in cash equal to 2.0% of the Purchase Price equal to $692,000.00 (the "Break-Up Fee") plus repayment of the Expense Reimbursement in the event that the Stalking Horse Purchaser is not the Successful Bidder and an alternative transaction closes. The Break-Up Fee and Expense Reimbursement shall be payable directly to the Stalking Horse Purchaser at closing from the sale proceeds.

The Bid Protections shall constitute an administrative expense claim in favor of the Stalking Horse Purchaser with priority under Section 507(a) of the Bankruptcy Code.  If the Debtors fail to timely pay such amounts due to the Stalking Horse Purchaser, the Debtors shall also pay the costs and expenses (including reasonable legal fees and expenses) incurred by the Stalking Horse Purchaser in connection with any action or proceeding taken to collect payment of such amounts; provided, however, to the extent any portion of the Expense Reimbursement is being contested in good faith, the Debtors shall (a) promptly pay the undisputed portion of the expense claimed by the Stalking Horse Purchaser, and (b) set aside the disputed portion of such expense in a separate interest bearing account for the sole benefit of Stalking Horse Purchaser pending the resolution of such

dispute.  If no alternative transaction closes, the Break-Up Fee will not be due or paid, but the Expense Reimbursement shall be paid and the Stalking Horse Purchaser's Deposit shall be returned to it within five (5) days after the conclusion of the Auction in which the Stalking Horse Purchaser is not selected as the Successful Bidder.

The Debtors acknowledge that the provisions of the Break-Up Fee and Expense Reimbursement are an integral part of the Stalking Horse APA and are a material and necessary inducement for the Stalking Horse Purchaser to enter into the Stalking Horse APA and to consummate the transactions contemplated therein.  In the event that the payment of the Break-Up Fee and the Expense Reimbursement (including any costs of collection) becomes due and payable to the Stalking Horse Purchaser, and such amounts are actually paid to the Stalking Horse Purchaser, such amounts will constitute liquidated damages (and not a penalty).  In light of the difficulty of accurately determining actual damages with respect to the foregoing, the right to any such payment of the Break-Up Fee and the Expense Reimbursement (and any related collection costs) and the return of the Deposit to the Stalking Horse Purchaser constitute a reasonable estimate of the damages that will compensate the Stalking Horse Purchaser in the circumstances in which such fees and reimbursements are payable for the efforts and resources expended and the opportunities foregone while negotiating the Stalking Horse APA and in reliance on the Stalking Horse APA and on the expectation of the consummation of the transactions contemplated therein.  The Debtors believe that the entry into this Stalking Horse APA provides value to the Debtors' chapter 11 estates and bankruptcy cases by, among other things, inducing other Qualified Bidders to submit higher or better offers for the Purchased Assets.

**IV.    Sale Hearing**

The Debtors will seek entry of the Sale Order from the Court at the Sale Hearing to begin at **10:00 a.m. Pacific Time on July 12, 2023** (or at another date and time convenient to the Court) to approve and authorize the sale transaction to the Successful Bidder(s) on terms and conditions determined in accordance with the Bidding Procedures.

At the Sale Hearing, the Debtors will seek Court approval of the Sale to the Successful Bidder, (or, in the event the Successful Bidder fails to close, the Back-Up Bidder), free and clear of

all liens, claims, interests, and encumbrances pursuant to section 363 of the Bankruptcy Code, with all liens, claims, interests, and encumbrances to attach to the sale proceeds with the same validity and in the same order of priority as they attached to the Purchased Assets (and to the extent included in the Successful Bid, the Other Assets prior to the Sale), including the assumption by the Debtors and assignment to the Successful Bidder of the Assumed Executory Contracts and Leases pursuant to Section 365 of the Bankruptcy Code.  The Debtors will submit and present additional evidence, as necessary, at the Sale Hearing demonstrating that the Sale is fair, reasonable, and in the best interest of the Debtors' estates and all interested parties, and satisfies the standards necessary to approve a sale of the Purchased Assets and/or the Other Assets.  The Debtors intend to request at the Sale Hearing a finding that the Successful Bidder is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

**V.    Reservation**

The Debtors reserve the right, as they may determine in their discretion and in accordance with their business judgment to be in the best interest of their estates, in consultation with their professionals and the Consultation Parties to: (i) modify the Bidding Procedures to discontinue incremental bidding and then require that any and all bidders or potential purchasers must submit their sealed, highest and best offer for the Purchased Assets and/or Other Assets; (ii) determine which Qualified Bid is the highest or otherwise best bid and which is the next highest or otherwise best bid; (iii) waive terms and conditions set forth herein with respect to all Potential Bidders; (iv) impose additional terms and conditions with respect to all Potential Bidders; (v) extend the deadlines set forth herein; (vi) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (vii) implement additional procedural rules that the Debtors determine, in their reasonable business judgment and in consultation with the Consultation Parties will better promote the goals of the bidding process; provided that such modifications are disclosed to each Qualified Bidder participating in the Auction; provided, however, and notwithstanding the foregoing, these Bid Procedures shall not be modified so as to alter, extinguish or modify any rights or interests of the Stalking Horse Purchaser expressly set forth herein or in the Stalking Horse APA.

**Exhibit 2**

**SIGNIFICANT DATES**

| | |
|---|---|
| Service of Sale Hearing Notice | June 2, 2023 |
| Service of Cure Notice | June 9, 2023 |
| Bid Deadline | June 23, 2023 at 4:00 p.m. (Pacific Time) |
| **Cure Objection Deadline** | **June 24, 2023 at 4:00 p.m. (Pacific Time)** |
| Auction | June 27, 2023 at 10:00 a.m. (Pacific Time) |
| Notice of Results of Auction & Memorandum and/or Sale Motion | June 28, 2023 at 10:00 a.m. (Pacific Time) |
| Service of Notice of Contracts/Leases to be Assumed and Assigned | June 29, 2023 |
| **Reply Deadline to any Cure Objection** | **June 29, 2023 at 12:00 p.m. (Pacific Time)** |
| Sale Objection Deadline | July 3, 2023 at 12:00 p.m. (Pacific Time) |
| **Assumption and Assumption and Assignment Objection Deadline** | **July 3, 2023 at 12:00 p.m. (Pacific Time)** |
| **Reply Deadline to any objection to the Sale Motion and/or objection to Assumption and Assignment** | **July 6, 2023 at 12:00 p.m. (Pacific Time)** |
| Sale Hearing | July 12, 2023 at 10:00 a.m. (Pacific Time) |
| Sale Closing | TBA |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
222 N Pacific Coast Highway, 3rd Floor, El Segundo, CA 90245.


A true and correct copy of the foregoing document entitled (*specify*): Notice of Filing Final Bidding Procedures
_____
_____
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 06/07/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __06/08/2023____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __06/08/2023____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/07/2023 | Jonathan J. Thomson | /s/ Jonathan J. Thomson |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**SERVICE LIST (via NEF)**

| CreditorName | Email |
|---|---|
| Megan M Adeyemo | madeyemo@grsm.com; asoto@grsm.com |
| David E Ahdoot | dahdoot@bushgottlieb.com; kprestegard@bushgottlieb.com |
| Joseph M Ammar | ammar@millercanfield.com |
| Scott E Blakeley | seb@blakeleyllp.com; ecf@blakeleyllp.com |
| Joseph P Buchman | jbuchman@bwslaw.com; gmitchell@bwslaw.com |
| Adrian Butler | abutler@bushgottlieb.com |
| Augustus Curtis | augustus.t.curtis@usdoj.gov |
| David K Eldan | David.Eldan@doj.ca.gov, cynthia.gomez@doj.ca.gov |
| John-Patrick M Fritz | jpf@lnbyg.com; JPF.LNBYB@ecf.inforuptcy.com |
| Evelina Gentry | evelina.gentry@akerman.com; rob.diwa@akerman.com |
| Evan Gershbein | ECFpleadings@kccllc.com |
| Steven T Grubner | sgubner@bg.law, ecf@bg.law |
| Melissa Hamill | melissa.hamill@doj.ca.gov |
| Brian T Harvey | bharvey@buchalter.com |
| Robert M Hirsh | rhirsh@lowenstein.com |
| Darryl Jay Horowitt | dhorowitt@ch-law.com; bkasst@ch-law.com |
| David I Horowitz | david.horowitz@kirkland.com; keith.catuara@kirkland.com; terry.ellis@kirkland.com; elsa.banuelos@kirkland.com; ivon.granados@kirkland.com |
| Sonja Hourany | sonja.hourany@quinngroup.net; kadele@wgllp.com; lbracken@wgllp.com; shourany@ecf.courtdrive.com |
| Michael Jones | michael.jones4@usdoj.gov |
| Quinn Scott Kaye | kaye@millercanfield.com |
| Gary E Klausner | gek@lnbyg.com |
| Alexandria Lattner | alattner@sheppardmullin.com; ehwalters@sheppardmullin.com |
| Marc A Levinson | MALevinson@orrick.com; borozco@orrick.com |
| Ron Maroko | ron.maroko@usdoj.gov |
| Kelly L Morrison | kelly.l.morrison@usdoj.gov |
| Tania M Moyron | tania.moyron@dentons.com; malka.zeefe@dentons.com; kathryn.howard@dentons.com; derry.kalve@dentons.com; glenda.spratt@dentons.com; DOCKET.GENERAL.LIT.LOS@dentons.com |
| Jennifer L Nassiri | JNassiri@sheppardmullin.com |
| Neli Nima Palma | neli.palma@doj.ca.gov |

**SERVICE LIST (via NEF)**

| CreditorName | Email |
|---|---|
| Thomas Phinney | tphinney@ffwplaw.com;<br>akieser@ffwplaw.com;<br>docket@ffwplaw.com |
| Russell W Reynolds | rreynolds@ch-law.com;<br>bkasst@ch-law.com |
| Mary H Rose | mrose@buchalter.com |
| Nathan A Schultz | nschultzesq@gmail.com |
| Olivia Scott | olivia.scott3@bclplaw.com;<br>theresa.macaulay@bclplaw.com |
| Howard Steinberg | steinbergh@gtlaw.com;<br>pearsallt@gtlaw.com;<br>howard-steinberg-6096@ecf.pacerpro.com |
| Tamar Terzian | tamar@terzlaw.com;<br>sandra@terzlaw.com |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |
| Mark J Valencia | mvalencia@vclitigation.com |
| Emilio Eugene Varanini, IV | emilio.varanini@doj.ca.gov |
| Kevin Walsh | kevin.walsh@gtlaw.com |
| Kenneth K Wang | kenneth.wang@doj.ca.gov;<br>Jennifer.Kim@doj.ca.gov;<br>Stacy.McKellar@doj.ca.gov;<br>yesenia.caro@doj.ca.gov;<br>Christine.Murphy@doj.ca.gov |
| Sharon Z. Weiss | sharon.weiss@bclplaw.com;<br>raul.morales@bclplaw.com;<br>REC_KM_ECF_SMO@bclplaw.com |
| Roye Zur | rzur@elkinskalt.com;<br>cavila@elkinskalt.com;<br>lwageman@elkinskalt.com;<br>1648609420@filings.docketbird.com |

SERVICE LIST (via First Class Mail)

| Description | CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| Office of the Attorney General of the United States | Attorney General of the United States | U.S. Department of Justice | 950 Pennsylvania Avenue, NW | | | Washington | DC | 20530-0001 |
| Banks | Bank of America | GABRIELA SANCHEZ | C/O Bank of America | 330 N BRAND BLVD | | GLENDALE | CA | 91203 |
| Banks | Bank of the West | | | 75 SANSOME STREET, 19TH FLOOR | | SAN FRANCISCO | CA | 94111 |
| California Department of Health Care Services | California Department of Health Care Services | Jennifer Kent, Director | 1501 Capitol Avenue, Suite 4510 | | | Sacramento | CA | 95814 |
| California Secretary of State | California Secretary of State | | 1500 11th Street | | | Sacramento | CA | 95814 |
| California State Board of Pharmacy | California State Board of Pharmacy | | 1625 North Market Boulevard | | | Sacramento | CA | 95834 |
| California Statewide Communities Development Authority | California Statewide Communities Development Authority | Chair | 1100 K Street, Suite 101 | | | Sacramento | CA | 95814 |
| Center for Medicare and Medicaid Services | Center for Medicare and Medicaid Services | Steven Chickering, the Associate Regional Administrator | 90 – 7th Street, Suite 5-300 | | | San Francisco | CA | 94103-6706 |
| Department of Health Care Services | Department of Health Care Services | Tanya Homman, Chief of Provider Enrollment Division | MS 4704, P.O. Box 997412 | | | Sacramento | CA | 95899-7412 |
| Employment Development Dept. | Employment Development Dept. | | 722 Capitol Mall, MIC 92E | | | Sacramento | CA | 95814 |
| Equipment Leases | GE | | 3000 N Grandview Blvd. | | | Waukesha | WI | 53188 |
| Hanmi Bank | Hanmi Bank | Specialty Lending | 2010 Main St. Suite 590 | | | Irvine | CA | 92614 |
| Hanmi Bank | Hanmi Bank | Specialty Lending | 1920 Main St. Suite 1140 | Attn Ben Sottile | | Irvine | CA | 92614 |
| Hanmi Bank | Hanmi Bank | | 10180 Reseda Blvd | | | Northridge | CA | 91324 |
| IRS | Internal Revenue Service | Attn Susanne Larson | 31 Hopkins Plz Rm 1150 | | | Baltimore | MD | 21201 |
| IRS | Internal Revenue Service | Centralized Insolvency Operation | P.O. Box 7346 | | | Philadelphia | PA | 19101-7346 |
| IRS | Internal Revenue Service | Centralized Insolvency Operation | 2970 Market St | | | Philadelphia | PA | 19104 |
| IRS | Internal Revenue Service | | 300 North Los Angeles Street | | | Los Angeles | CA | 90012 |
| IRS | Internal Revenue Service | | 600 Arch Street | | | Philadelphia | PA | 19101 |
| Office of the CA Attorney General | Office of the California Attorney General | Department of Justice | Jennifer Kim | 300 South Spring Street, Floor 9 | | Los Angeles | CA | 90013 |
| Counsel to Hanmi Bank | Orrick, Herrington & Sutcliffe LLP | Brendan LaFountain | 400 Capitol Hall | | | Sacramento | CA | 95814-4497 |
| Counsel to Hanmi Bank | Shulman Hodges & Bastian LLP | Michael J. Petersen | 100 Spectrum Center Drive, Suite 600 | | | Irvine | CA | 92614 |
| State of California Employment Development Department | State of California Employment Development Department | Bankruptcy Group MIC 92E | P. O. Box 826880 | | | Sacramento | CA | 94280-0001 |
| U.S. Department of Health & Human Services | U.S. Department of Health & Human Services | Alex M. Azar II, Secretary | 200 Independence Avenue, S.W. | | | Washington | DC | 20201 |
| U.S. Department of Health and Human Services | U.S. Department of Health and Human Services | Angela M. Belgrove, Assistant Regional Counsel | Office of the General Counsel, Region IX | 90 7th Street, Suite 4-500 | | San Francisco | CA | 94103-6705 |
| United States Attorney's Office | United States Attorneys Office | Central District of California | 312 North Spring Street | Suite 1200 | | Los Angeles | CA | 90012 |
| United Stated Attorney's Office | United States Attorneys Office | Northern District of California | 150 Almaden Boulevard | Suite 900 | | San Jose | CA | 95113 |
| United States Attorney General | United States Department of Justice | Ben Franklin Station | P. O. Box 683 | | | Washington | DC | 20044 |
| Office of the United States Trustee | United States Trustee | Peter C. Anderson | Office of the UST/DOJ | 915 Wilshire Blvd., Suite 1850 | | Los Angeles | CA | 90017 |
| Indenture Trustee | US Bank NA | | Po Box 70870 | | | St Paul | MN | 55170-9690 |
| Chambers | USBC Central District of California | Hon. Sandra R. Klein | Edward R. Roybal Federal Building and U.S. Courthouse | 255 East Temple Street, Suite 1582 | | Los Angeles | CA | 90012 |

SERVICE LIST (via Electronic Mail)

| Description | CreditorName | CreditorNoticeName | Email |
|---|---|---|---|
| TOP 30 | Abbott Laboratories Inc | Nathan Scott | nathan.scott@abbott.com |
| TOP 30 | Advantis Medical Staffing | Elayne Goldmane | goldman@advantismed.com |
| Counsel for Advantis Medical Staffing | Akerman LLP | Evelina Gentry and Anthony D. Sbardellati | evelina.gentry@akerman.com |
| TOP 30 | Alhambra Hospital Medical Center | Terry Chu | terrychu@alhambrahospital.com |
| TOP 30 | Allied Universal Security Services | Moises Rodriguez | moises.rodriguez@aus.com |
| Attorneys for the City of Montebello | Alvarez-Glasman & Colvin | Stephen T. Owens and Christy M. Garcia | sowens@agclawfirm.com; cgarcia@agclawfirm.com |
| Lienholders | Amerisourcebergen Drug Corporation | | mbranzburg@klehr.com |
| TOP 30 | Arthrex, Inc | Carla Pitcher | Carla.Pitcher@arthrex.com |
| TOP 30 | Axis Spine Llc | DD Mate | dmate@axisspineco.com |
| Lienholders | BANK OF THE WEST | | edgar.morales@bankofthewest.com; Jorge.Padilla@bankofthewest.com |
| Banks | Bank of the West | Attn: Edgar Morales | edgar.morales@bankofthewest.com; Jorge.Padilla@bankofthewest.com |
| Equipment Leases | Baxter | Yolieth Bazan Matamoros | yolieth_bazan@baxter.com |
| TOP 30 | Baxter Healthcare Corp | Yolieth Bazan Matamoros | yolieth_bazan@baxter.com |
| Counsel to Baxter Healthcare Corporation | Blakeley LC | Scott E. Blakeley | SEB@BlakeleyLC.com |
| TOP 30 | Boston Scientific Corp | Kathleen Homsab | Kathleen.homsab@bsci.com |
| Counsel for Sodexo | Brown McGarry Nimeroff LLC | Jami B. Nimeroff | jnimeroff@bmnlawyers.com |
| Counsel to Proposed DIP Lender | Bryan Cave Leighton Paisner LLP | Eric S. Prezant | eric.prezant@bclplaw.com |
| Counsel to Proposed DIP Lender | Bryan Cave Leighton Paisner LLP | Vanessa Sunshine and Sharon Weiss | vanessa.sunshine@bclplaw.com; sharon.weiss@bclplaw.com |
| Counsel for United Nurses Associations of California/Union of Health Care Professionals | Bush Gottlieb, A Law Corporation | David E. Ahdoot, Kirk M. Prestegard and Adrian R. Butler | dahdoot@bushgottlieb.com; kprestegard@bushgottlieb.com; abutler@bushgottlieb.com |
| TOP 30 | California Department Of Health Care | Tomas J. Aragon | D'Andria.Lewis@dhcs.ca.gov; Christine.Oguro@dhcs.ca.gov |
| California Department of Public Health | California Department of Public Health | Stephanie Spich | stephanie.spich@cdph.ca.gov |
| California Statewide Communities Development Authority | California Statewide Communities Development Authority | James Hamill | jhamill@cscda.org |
| TOP 30 | Cepheid Inc. | Susan Jose | susan.jose@cepheid.com |
| TOP 30 | Cloudwave | Loraine Sarno | lsarno@insightinvestments.com |
| TOP 30 | Constellation New Energy-Gas | Zachary Kecyzkecy | ZacharyKecyzkecy@spectrum-nrg.com |
| Proposed Counsel to the Official Committee of Unsecured Creditors | Dentons US LLP | Tania M. Moyron, Samuel P. Maizel and Rebecca M. Wicks | tania.moyron@dentons.com; samuel.maizel@dentons.com; rebecca.wicks@dentons.com |
| Counsel for Medico Professional Linen Service and American Textile Maintenance | Elkins Kalt Weintraub Reuben Gartside LLP | Roye Zur | rzur@elkinskalt.com |
| Equipment Leases | First Financial Healthcare | Ricardo Oseguera | roseguera@ffequipmentleasing.com |
| TOP 30 | First Financial Holdings Llc | Ricardo Oseguera | roseguera@ffequipmentleasing.com |
| Counsel to Indenture Trustee | Greenberg Traurig, LLP | Colleen Murphy, Kevin Walsh | Colleen.Murphy@gtlaw.com; Kevin.Walsh@gtlaw.com |
| Banks | Hanmi Bank | Attn: Vanessa Padilla | vanessa.padilla@hanmi.com |
| Proposed DIP Lender | Hilco Real Estate | Attn Gary C. Epstein, Ryan Lawlor, Neil Aaronson and Robert Lubin | gepstein@hilcoglobal.com; rlawlor@hilcoglobal.com; NAaronson@hilcoglobal.com; RLubin@hilcoglobal.com |
| TOP 30 | Huntington Technology Finance | Brent McQueen | brent.a.mcqueen@huntington.com |
| Equipment Leases | Huntington Technology Finance | Brent McQueen | brent.a.mcqueen@huntington.com |
| Lienholders | HUNTINGTON TECHNOLOGY FINANCE, INC. | | brent.a.mcqueen@huntington.com |
| Equipment Leases | Insight Financial | Steven Neang | Steven.Neang@insight.com |
| Counsel to Stalking Horse Purchaser | Jones Day | Joshua M. Mester and Catherine A. Ehrgott | jmester@jonesday.com; cehrgott@JonesDay.com |
| TOP 30 | Keenan and Associates | Eric Rodriguez | erodriguez@keenan.com |
| Counsel for Portage Point Partners, LLC, Triple P Securities, LLC, and Triple P RTS, LLC | Kirkland & Ellis LLP | David I. Horowitz | David.Horowitz@kirkland.com |
| Counsel for Portage Point Partners, LLC, Triple P Securities, LLC, and Triple P RTS, LLC | Kirkland & Ellis LLP | Ryan Blaine Bennett, P.C. | ryan.bennett@kirkland.com |
| Counsel for Hanmi Bank | Law Office of Nathan A. Schultz, P.C. | Nathan A. Schultz, Esq. | nschultzesq@gmail.com |
| Counsel to Medline Industries, LP | Lowenstein Sandler LLP | Robert M. Hirsh and Phillip Khezri | rhirsh@lowenstein.com; pkhezri@lowenstein.com |
| TOP 30 | Medical Information Technology, Inc | Goretti Medeiros | gmedeiros@meditech.com |
| TOP 30 | Medical Solutions LLC | Ruben Ramirez | Nick.Rudman@medicalsolutions.com; brian.koenig@koleyjessen.com |
| TOP 30 | Medline Industries Inc | Brent Fogel | bfogel@medline.com |
| TOP 30 | Medstar Anesthesia Services Inc | Robert Resnick | robert.amedinc@gmail.com |
| National Association of Attorneys General | National Association of Attorneys General | | support@naag.org |
| TOP 30 | Nixon Peabody Llp | Jennifer O'Neal | joneal@nixonpeabody.com |
| TOP 30 | Noridian Healthcare Solutions, LLC | Theresa Pachel | JE-ERS@noridian.com |

SERVICE LIST (via Electronic Mail)

| Description | CreditorName | CreditorNoticeName | Email |
|---|---|---|---|
| TOP 30 | Office of Inspector General (OIG) | Nicole Caucci | Nicole.Caucci@oig.hhs.gov |
| Attorney General of California | Office of the Attorney General | Emilio Varanini, Supervising Deputy Attorney General | Emilio.Varanini@doj.ca.gov |
| Attorney General of California | Office of the Attorney General | Neli Palma and Melissa Hamill | Neli.Palma@doj.ca.gov; Melissa.Hamill@doj.ca.gov |
| Attorney General of California | Office of the Attorney General | Roma Patel, Deputy Attorney General | Roma.Patel@doj.ca.gov |
| Office of the Attorney General of California | Office of the Attorney General of California | Consumer Law Section | Scott.Chan@doj.ca.gov |
| Deputy General Counsel to California Department of Health Care Services | Office of the California  Attorney General | Department of Justice | Kenneth.Wang@doj.ca.gov |
| TOP 30 | Outset Medical Inc | Andy Rabon | arabon@outmedical.com |
| TOP 30 | Philips Healthcare | Jose Rivera | jose.rivera@philips.com |
| Equipment Leases | Philips Medical Systems | Jose Rivera | jose.rivera@philips.com |
| TOP 30 | Private Attorney General Act (PAGA) | Jarrod Salinas | jarrod@phoenixclassaction.com |
| Counsel for California Statewide Communities Development Corporation dba CSDA | Richards, Watson & Gershon | Stephen D. Lee | slee@rwglaw.com |
| TOP 30 | Shiftwise | Jennifer Folds | jennifer.folds@medefis.com |
| Proposed Counsel to the Official Committee of Unsecured Creditors | Sills Cummis & Gross P.C. | Andrew Sherman and Boris Mankovetskiy | asherman@sillscummis.com; bmankovetskiy@sillscummis.com |
| TOP 30 | Sodexho Inc & Affiliates | Luis Lunalluna | LuisLunalluna@beverly.org |
| Equipment Leases | Stryker | Trent Zaks | Trent.Zaks@stryker.com |
| TOP 30 | Stryker Endoscopy | Joe Gallinatti | joe.gallinati@stryker.com |
| TOP 30 | Stryker Instruments | Donovan Reiley | donovan.reiley@stryker.com |
| TOP 30 | Stryker Orthopedics | Trent Zaks | TrentZaks@stryker.com |
| Lienholders | TCF NATIONAL BANK | | brent.a.mcqueen@huntington.com |
| Lienholders | U.S. BANK NATIONAL ASSOCIATION, AS MASTER TRUSTEE | | christopher.gehman@usbank.com |
| U.S. Department of Health and Human Services, among other agencies and departments of the United States | United States Department of Justice | Civil Division | augustus.t.curtis@usdoj.gov |
| Office of the United States Trustee | United States Trustee | Peter C. Anderson | hatty.yip@usdoj.gov; Michael.Jones4@usdoj.gov |
| Indenture Trustee | US Bank NA | Christopher H. Gehman Vice President, Global Corporate Trust Services | christopher.gehman@usbank.com |
| Banks | Western Alliance | SARAH CLEMENS | FCastagnola@westernalliancebank.com |
| Lienholders | WINTHROP RESOURCES CORPORATION | | brent.a.mcqueen@huntington.com |