GREENBERG TRAURIG, LLP
KEVIN J. WALSH (admitted *pro hac vice*)
COLLEEN A. MURPHY (admitted *pro hac vice*)
CHRISTOPHER MARKS (admitted *pro hac vice*)
One International Place, Suite 2000
Boston, Massachusetts 02110
Telephone: (617) 310-6000
Email:      Kevin.Walsh@gtlaw.com
            Colleen.Murphy@gtlaw.com
            Chris.Marks@gtlaw.com

Counsel to U.S. Bank Trust
Company, National Association, as Master Trustee

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Lead Case No.: 2:23-bk-12359-SK |
| BEVERLY COMMUNITY HOSPITAL ASSOCIATION, dba BEVERLY HOSPITAL (A NONPROFIT PUBLIC BENEFIT CORPORATION), *et al*,[1] | Jointly administered with: Case No.: 2:23-bk-12360-SK Case No.: 2:23-bk-12361-SK |
| Debtors, | Hon. Sandra R. Klein |
| | Chapter 11 Case |
| ☒  Affects all Debtors | **RESPONSE TO THE DEBTORS' STATEMENT REGARDING STATUS OF SALE PROCESS AND OTHER PENDING MATTERS** |
| ☐  Affects Beverly Community Hospital Association | |
| ☐  Montebello Community Health Services, Inc. | Date:     August 2, 2023 Time:     9:00 a.m. Pacific Time Judge:    Sandra R. Klein Place:    Zoom.Gov |
| ☐  Beverly Hospital Foundation | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Beverly Community Hospital Association d/b/a Beverly Hospital (6005), Montebello Community Health Services, Inc. (3550), and Beverly Hospital Foundation (9685).  The mailing address for the Debtors is 309 W. Beverly Blvd., Montebello, California 90640.

*ACTIVE 689168772v8*

RESPONSE TO THE DEBTORS' STATEMENT
REGARDING STATUS OF SALE PROCESS AND
OTHER PENDING MATTERS

**RESPONSE**

Secured creditor U.S. Bank Trust Company, National Association, as master trustee (the "Master Trustee") hereby files this response to the *Debtors' Statement Regarding Status of Sale Process and Other Pending Matters* [Docket No. 598] (the "Status Report") filed in connection with the *Debtors' Notice of Motion and Motion for Entry of an Order (I) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief; Declaration of Jason A. Cohen; Declaration of Ryan Plummer* [Docket No. 537][2] filed on July 5, 2023 (the "Sale Motion").

The Status Report contains only one substantive paragraph, which reports the post-Auction failure of the Debtors' sale process. In discussions leading up to the filing of the Status Report, the Master Trustee's counsel requested that the Debtors provide the Court a full report of developments relating to American Healthcare Systems Foundation, Inc.'s ("AHS") bid to acquire Beverly Hospital (the "Hospital"). Because the Debtors declined to do so, the Master Trustee files this response to supplement the record.

The Debtors appear to blame the Master Trustee for the current situation when they state that they "have been advised by counsel to the Master Trustee that the consent necessary to effectuate the transactions in the Transaction Documents will not be forthcoming with respect to the Successful Bidder." Status Report, p. 3:20-22. But the Debtors completely fail to inform the Court and other parties-in-interest about the circumstances leading up to the Master Trustee's inability to consent to a sale to AHS at this time and they likewise fail to inform the Court that it is not just the Master Trustee that harbors significant concerns about AHS's willingness and ability to honor the terms of its bid, and, more importantly, to financially support the Hospital until a closing could

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Sale Motion.

occur and thereafter. Indeed, those concerns manifested themselves over the last week during which AHS balked at the notion of making any deposit whatsoever, or making any payments on the Master Trust Indenture Obligations (the "MTI Obligations") *for more than a year*. It has become clear that the proposed sale to AHS would not solve any of the Hospital's problems in the long term and would have simply served to kick the proverbial can down the road, at which time the Master Trustee and the community of Montebello would surely be much worse off.

To date, AHS has failed to comply with many of the Court's bidding requirements and its duties as the successful bidder at the Auction. Of particular concern, AHS did not make the cash deposit that it was required to make prior to the Auction to be deemed a Qualified Bidder at the Auction under this Court's Bidding Procedures Order.[3] AHS also refused to make a cash deposit once it was named the winning bidder, although it had assured the Consultation Parties that it would do so. Rather, AHS offered up only a limited "parent guaranty" in place of a cash deposit.

As the Court is aware, prior to and at the Auction, AHS assured the Consultation Parties that it was a 501(c)(3) entity that was eligible to assume the tax-exempt debt which comprises a significant portion of the consideration offered by AHS for the purchase of the Hospital (the balance of the consideration being the assumption of taxable debt under the Master Trust Indenture). Although counsel to the Master Trustee requested in writing both prior to and at the Auction confirmation that AHS was a 501(c)(3) entity eligible to assume the tax-exempt debt, AHS did not offer any proof that it was, other than its principals' repeated oral assurances. At the Auction, the Master Trustee's counsel inquired whether PPP had performed any diligence on AHS and was assured that it had done so. Despite those assurances, the Master Trustee's counsel grew concerned about AHS's continued failure to respond to its inquiries, so, after the Auction, the Master Trustee's

---

[3] Unfortunately, the Debtors' investment banker, Portage Point Partners ("PPP"), failed to obtain deposits from *any* bidder with respect to the Hospital assets. Most shockingly, the stalking horse bidder did not post a deposit despite that being a condition of its stalking horse status. AHS used that convenient fact to refuse to post a deposit at the Auction.

counsel conducted its own review and learned that AHS was not, in fact, a 501(c)(3) entity. When confronted with this fact, AHS's general counsel, Faisal Gill, initially denied that AHS was not a 501(c)(3) entity and offered up several conflicting explanations as to why AHS did not appear to be a 501(c)(3) entity. Ultimately, Mr. Gill was forced to admit that AHS was not, in fact, a 501(c)(3) entity, but informed the Master Trustee's counsel that AHS had filed an application with the Internal Revenue Service to obtain 501(c)(3) status. The Master Trustee's counsel requested a copy of AHS's application, but AHS did not provide it. The Master Trustee's counsel learned that AHS had given the Debtors a copy of a portion of the 501(c)(3) application, and proceeded to request, and received, a copy of it from the Debtors. Once the Master Trustee's counsel received that copy, the Master Trustee learned that AHS had made the application for 501(c)(3) status on June 27, 2023, i.e., the date of the Auction. Thus, at least someone at AHS knew, as early as the date of the Auction, that AHS was not a 501(c)(3) entity.

Concerned about the apparent misrepresentations by AHS, the Master Trustee requested additional information about the circumstances surrounding the representations made by AHS and the filing of the 501(c)(3) application. On July 10, 2023, the principal of AHS, Michael Sarian emailed counsel for the Master Trustee in response to those requests. In that email, a copy of which is attached hereto as <u>Exhibit A</u>, Mr. Sarian threatened to "pull out" of the deal if the Master Trustee continued to ask questions about AHS's 501(c)(3) status.[4]

Although that was the first time that AHS threatened to walk away from the deal, it was not the last. The Master Trustee was concerned that the acquisition documents, particularly the Asset Purchase Agreement and the Interim Management Agreement, did not appear to have been competently negotiated by AHS and requested that the Debtors convene an in-person meeting of the

---

[4] On information and belief, despite pursuing expedited determination from the Internal Revenue Service, AHS still does not have the required 501(c)(3) status that is necessary in order for it to consummate the acquisition of the Hospital through the assumption of the tax-exempt debt under the Master Trust Indenture.

RESPONSE TO THE DEBTORS' STATEMENT
REGARDING STATUS OF SALE PROCESS AND
OTHER PENDING MATTERS

parties in Los Angeles so that the parties could negotiate the documents. The Master Trustee's counsel informed the Debtors' counsel that a condition to the Master Trustee's counsel's attendance at that meeting was that AHS retain competent external counsel to negotiate the documents. Unfortunately, when the Master Trustee's counsel showed up to the meeting in Los Angeles on July 24, 2023, they learned that AHS had not brought outside counsel with them, and had not even retained outside counsel, almost one month after the Auction, and only days before final documents were due to be filed with the Court. The failure of AHS to retain appropriate counsel was particularly concerning given that AHS's in house counsel do not appear to have the expertise to deal with some of the very complex aspects of this deal, including the 501(c)(3) application and assumption of the tax-exempt debt.

Given AHS's lack of professional assistance the document negotiating session, that all of the parties had converged for in Los Angeles, could not go forward. This turn of events understandably led to grave concerns about AHS's ability and willingness to close the transaction, especially in light of the lack of any financial commitment by AHS to date. Accordingly, at that meeting, the Debtor, after consulting with the Consultation Parties, requested that: (i) AHS place a good faith deposit with the Debtors pending the closing of the sale for the amount of the missed interest payments on the MTI Obligations, estimated to be approximately $1.7 million; (ii) provide a corporate guarantee from its affiliate entities to the Master Trustee in a to-be negotiated amount; and (iii) retain competent outside counsel to handle the acquisition.

On July 25, 2023, the Debtors invited AHS to meet with the Hospital's CEO, three board members, the Master Trustee and several bondholders and their respective counsel, to discuss AHS's response to the above requests. Instead of directly responding to the requests, Mr. Sarian informed the parties that AHS would not honor the terms it had agreed to in its Asset Purchase Agreement but would instead be seeking substantial concessions. At that meeting AHS, for the second time,

RESPONSE TO THE DEBTORS' STATEMENT
REGARDING STATUS OF SALE PROCESS AND
OTHER PENDING MATTERS

threatened to walk away from its bid unless the Master Trustee agreed to those as-yet unspecified concessions, and assured the parties that AHS had many other hospitals it could acquire, and that the Hospital had no alternatives to AHS. In a follow up email to the Debtors, Mr. Gill revised the terms of AHS's bid to provide that AHS would not pay any cure costs associated with the MTI Obligations, demanding instead that the Master Trustee agree to forgive all payments owing currently, including cure costs, and those becoming due through June 2024 (thus reducing the MTI Obligations, and AHS's bid, by millions of dollars) and allowing AHS to avoid making *any* payments on the MTI Obligations until *at least* September 2024. AHS further demanded that the maturity on one tranche of the MTI Obligations be extended for three years.[5] AHS made clear that, absent those concessions by the Master Trustee, it would walk away from the transaction, leaving the Hospital to fend for itself after wasting precious time and incurring millions of dollars in professional fees and operating losses based on the expectation that AHS would purchase the Hospital and assume and cure the amounts owed on the MTI Obligations as it had agreed to do.[6]

Mr. Gill also revealed in his email that, despite the fact that AHS was demanding that the Master Trustee forgo payment of millions of dollars due under the Master Trust Indenture, AHS apparently planned to pay itself a $5 million annual management fee after the first year that it took over the Hospital. All of these demands were purportedly made because AHS deemed its turnaround plan too risky to jeopardize the operations or capital of its related entities.[7] AHS also stated, for the

---

[5] Following AHS's renunciation of the terms of its bid, it attempted to revive its initial offer, and also offered to make a $1 million deposit and to give a $5 million corporate guarantee of the MTI Obligations. But AHS has still not produced any evidence whatsoever that it has the means to honor its obligations under any sale transaction, let alone support the financial requirements of the Hospital going forward.

[6] The Debtors have informed the Master Trustee that they intend to sue AHS to recover the damages that these estates have suffered as a result of AHS's repudiation of its bid to purchase the Hospital and have provided the Master Trustee with a draft complaint.

[7] American Healthcare Systems Foundation, Inc. has no operations and no assets. It is a shell company formed by American Healthcare Systems, LLC or other persons or entities related thereto. Thus, AHS does not have the ability to satisfy the MTI Obligations, independent of the Hospital's revenues, which AHS itself projects will run at an operational loss for at least the next 12-18 months.

RESPONSE TO THE DEBTORS' STATEMENT
REGARDING STATUS OF SALE PROCESS AND
OTHER PENDING MATTERS

first time, during and after the parties' meeting at the Hospital on July 25, 2023, its intent to make significant changes to Hospital operations and staffing which would appear to conflict with the agreement it made with the California Attorney General.

Moreover, AHS has not provided the Debtors or the Master Trustee with any evidence that it has the financial wherewithal to support the Hospital's operations.[8] Indeed, it is now apparent that AHS intended to borrow money, or rely on government aid, to fund the Hospital's operating losses as the final prong of its no money down acquisition strategy. It is beyond imagination how AHS, an entity with no assets or capital, could borrow sufficient funds to meet the substantial financial obligations (both for operations and funded debt) that it was purporting to incur under its contemplated purchase of the Hospital. AHS even suggested that it might need to prime the Master Trustee's lien on its collateral to do so.

Because the Debtors did not do so, the Master Trustee believed it was important to bring these developments to the Court's attention. The Master Trustee has serious concerns about this case and had intended, in this response, to request an emergency hearing on this matter to discuss the path forward for an alternative sale transaction that may allow the Hospital to continue to operate under new ownership and management and/or establish a schedule for discovery and motion practice in connection with the failed sale process. The Master Trustee thanks the Court for scheduling the August 2nd hearing on this matter.

---

[8] It does not appear that either PPP or the Debtors did any diligence to confirm AHS's ability to honor its bid and support the Hospital on an ongoing basis. Since learning mere days before the Auction that AHS intended to submit a bid for the Hospital involving an assumption of the MTI Obligations, the Master Trustee has conducted its own review of AHS. The results of that review do not persuade the Master Trustee that AHS has the wherewithal to keep the Hospital operating. In fact, the Master Trustee has uncovered numerous lawsuits and news articles alleging that AHS has failed, in connection with the other hospitals it has acquired across the country, to pay equipment lessors, vendors and even employee health insurance premiums resulting in the cancelation of the employee health insurance plan for the staff of a hospital in Granite City, IL. *See e.g.*, https://www.thetelegraph.com/news/article/memos-show-issue-health-insurance-granite-city-18159091.php (last accessed on July 31, 2023); *NSF Leasing, Inc. v. American Healthcare Systems, LLC et al.*, Case No. 23-cv-00203 (Eastern District of Missouri); *Xanitos, Inc. v. American Healthcare Systems, Illinois, LLC*, Case No. 23-cv-02339 (Southern District of Illinois). Indeed, one of AHS's other hospitals in St. Louis, Missouri was placed into a receivership earlier this year and AHS has informed the Master Trustee's counsel that it is walking away from its interim management agreement with that hospital.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted

GREENBERG TRAURIG, LLP


By /s/  *Kevin J. Walsh*
Kevin J. Walsh (admitted *pro hac vice*)
Colleen A. Murphy (admitted *pro hac vice*)
Christopher Marks (admitted *pro hac vice*)

Counsel to U.S. Bank Trust Company, National Association

RESPONSE TO THE DEBTORS' STATEMENT
REGARDING STATUS OF SALE PROCESS AND
OTHER PENDING MATTERS

# EXHIBIT A

| | |
|---|---|
| **From:** | Mike Sarian |
| **To:** | Murphy, Colleen A. (Shld-BOS-BD) |
| **Cc:** | Faisal Gill |
| **Subject:** | AHS |
| **Date:** | Monday, July 10, 2023 3:44:31 PM |

## *EXTERNAL TO GT*

Colleen,

I understand you want to talk to me, Faisal, and others at my company about the 501(c)(3) issue. I have lawyers and they will be deal with legal issues not me. If you want me to get on a call, then please have a senior person from US Bank on the call and I will get on. Otherwise, deal with Faisal and others.

As far as 501(c)(3) issue is concerned, we are where we are, I have directed Faisal to look forward and resolve the issues and not be involved with the past or what occurred. There was never any intent to deceive anyone, and we all thought we had the 501(c)(3) status. I do not believe that its productive to moving forward and getting this deal done to harp on that issue.  So, let's move forward. is all he will be answering about what took place.

Also, I need to take over the hospital right away to fix it. We bid more than 3 times what Adventist bid with the understanding that I can take over pretty quickly and do what is needed to fix the hospital, to open up the service lines that have been closed, bring back the doctors. That is the only way to turn this hospital around. If you keep threatening to object and delaying me from taking over then this deal is no longer attractive to me, and I have to look at other options. There are at least 3 hospitals that I can purchase right now, 2 in California. If I pull out, your next best bid is Adventist which only bid $20 million, and that's if they are still interested. I know all the CEOs of the major hospital systems and have spoken to a few and nobody is interested in Beverly. I am the person who will assume all the bond debt, no other hospital system will do that.  In fact, my investment banker is telling me that I am crazy for assuming the full debt, especially when your bonds are trading at $.65 on the dollar.  The longer this deal goes on without closing, the further your bond value will decrease and more I will have to think about what I am doing.

So, I suggest that we all focus on working together to get this deal over the finish line and save this hospital and make your clients whole. Please reach out to Faisal if you have any questions.

This is a confidential patient safety work product document. It is protected from disclosure pursuant to the Patient Safety and Quality Improvement Act (42 CFR Part 3) and other state and federal laws. Unauthorized disclosure or duplication is prohibited. Disclaimer: This electronic message may contain information that is confidential or legally private. It is intended only for the use of the individual(s) and entity named in the message. If you are not an intended recipient of this message, please notify the sender immediately and delete the material from your computer. Do not deliver, distribute or copy this message and do not disclose its contents or take any action in reliance on the information it contains.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

One International Place, Boston, MA 02110

A true and correct copy of the foregoing document entitled (*specify*): Response to the Debtors' Statement Regarding
Status of Sale Process and Other Pending Matters.

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 07/31/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ___07/31/2023_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/31/2023 | Kevin J. Walsh | /s/ Kevin J. Walsh |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## Mailing Information for Case 2:23-bk-12359-SK

### Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Megan M Adeyemo** madeyemo@grsm.com, asoto@grsm.com
- **David E Ahdoot** dahdoot@bushgottlieb.com, kprestegard@bushgottlieb.com
- **Joseph M Ammar** ammar@millercanfield.com
- **Scott E Blakeley** seb@blakeleyllp.com, ecf@blakeleyllp.com
- **Joseph P Buchman** jbuchman@bwslaw.com, gmitchell@bwslaw.com
- **Adrian Butler** abutler@bushgottlieb.com
- **Augustus Curtis** augustus.t.curtis@usdoj.gov
- **David K Eldan** David.Eldan@doj.ca.gov, cynthia.gomez@doj.ca.gov
- **Amanda N Ferns** aferns@fernslaw.com, mmakalintal@fernslaw.com
- **John-Patrick M Fritz** jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com
- **Evelina Gentry** evelina.gentry@akerman.com, rob.diwa@akerman.com
- **Evan Gershbein** ECFpleadings@kccllc.com
- **Steven T Gubner** sgubner@bg.law, ecf@bg.law
- **Melissa Hamill** melissa.hamill@doj.ca.gov
- **Brian T Harvey** bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com
- **Stella A Havkin** stella@havkinandshrago.com, shavkinesq@gmail.com
- **Robert M Hirsh** rhirsh@lowenstein.com
- **Darryl Jay Horowitz** dhorowitt@ch-law.com, bkasst@ch-law.com
- **David I Horowitz** david.horowitz@kirkland.com, keith.catuara@kirkland.com;terry.ellis@kirkland.com;elsa.banuelos@kirkland.com;ivon.granados@kirkland.com
- **Sonja Hourany** sonja.hourany@quinngroup.net, kadele@wgllp.com;lbracken@wgllp.com;shourany@ecf.courtdrive.com
- **Eric P Israel** eisrael@danninggill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Quinn Scott Kaye** kaye@millercanfield.com
- **Nicholas A Koffroth** nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- **Alexandria Lattner** alattner@sheppardmullin.com, ehwalters@sheppardmullin.com
- **Marc A Levinson** MALevinson@orrick.com, borozco@orrick.com,casestream@ecf.courtdrive.com
- **Ron Maroko** ron.maroko@usdoj.gov
- **Kenneth Misken** Kenneth.M.Misken@usdoj.gov
- **Kelly L Morrison** kelly.l.morrison@usdoj.gov
- **Tania M Moyron** tania.moyron@dentons.com, rebecca.wicks@dentons.com;kathryn.howard@dentons.com;derry.kalve@dentons.com;glenda.spratt@dentons.com;DOCKET.GENERAL.LIT.LOS@dentons.com
- **Alan I Nahmias** anahmias@mbn.law, jdale@mbn.law
- **Jennifer L Nassiri** JNassiri@sheppardmullin.com
- **Neli Nima Palma** neli.palma@doj.ca.gov
- **Valerie Bantner Peo** vbantnerpeo@buchalter.com
- **Thomas Phinney** tphinney@ffwplaw.com, akieser@ffwplaw.com;docket@ffwplaw.com
- **Christopher E Prince** cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com;jnavarro@lesnickprince.com
- **Dean G Rallis** drallis@hahnlawyers.com, jevans@hahnlawyers.com;drallis@ecf.courtdrive.com;jevans@ecf.courtdrive.com
- **William M Rathbone** wrathbone@grsm.com, sdurazo@grsm.com
- **Michael B Reynolds** mreynolds@swlaw.com, kcollins@swlaw.com
- **Russell W Reynolds** rreynolds@ch-law.com, bkasst@ch-law.com
- **Jason E Rios** jrios@ffwplaw.com, docket@ffwplaw.com
- **Mary H Rose** mrose@buchalter.com
- **Kenneth N Russak** krussak@knrlaw.com, krussak@russaklaw.com
- **Nathan A Schultz** nschultzesq@gmail.com
- **Olivia Scott** olivia.scott3@bclplaw.com
- **Zev Shechtman** zs@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **Howard Steinberg** steinbergh@gtlaw.com, pearsalli@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **Andrew Still** astill@swlaw.com, kcollins@swlaw.com
- **Tamar Terzian** tamar@terzlaw.com, sandra@terzlaw.com
- **Jacob Unger** junger@jacobunger.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **Mark J Valencia** mvalencia@vclitigation.com
- **Emilio Eugene Varanini** emilio.varanini@doj.ca.gov
- **Kevin Walsh** kevin.walsh@gtlaw.com
- **Kenneth K Wang** kenneth.wang@doj.ca.gov, Richard.Waldow@doj.ca.gov
- **Sharon Z. Weiss** sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Roye Zur** rzur@elkinskalt.com, cavila@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com

### Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**California Department of Tax and Fee Administration**
,

**Colliers International Greater Los Angeles, Inc.**
,

**DLA PIPER LLP US**
,

**Orrick, Herrington & Sutcliffe LLP**

,

**Province LLC**

,

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
321 North Clark St., 32nd Flr.
Chicago, IL 60654

**Sills Cummis & Gross P.C.**

,

## Creditor List

Click the link above to produce a complete list of **creditors** only.

## List of Creditors

Click on the link above to produce a list of **all** creditors and **all** parties in the case. User may sort in columns or raw data format.