SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
JUSTIN R. BERNBROCK (admitted *pro hac vice*)
CATHERINE JUN (admitted *pro hac vice*)
ROBERT B. McLELLARN (admitted *pro hac vice*)
321 North Clark Street, 32nd Floor
Chicago, Illinois 60654
Telephone: 312.499.6300
Facsimile:  312.499.6301
Email:      jbernbrock@sheppardmullin.com
            cjun@sheppardmullin.com
            rmclellarn@sheppardmullin.com
JENNIFER L. NASSIRI, SBN 209796
ALEXANDRIA G. LATTNER, SBN 314855
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6055
Telephone: 310.228.3700
Facsimile:  310.228.3701
Email:      jnassiri@sheppardmullin.com
            alattner@sheppardmullin.com

Counsel to Debtors and Debtors in Possession

FILED & ENTERED

AUG 18 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY francis     DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

In re:

BEVERLY COMMUNITY HOSPITAL
ASSOCIATION, dba BEVERLY HOSPITAL
(A NONPROFIT PUBLIC BENEFIT
CORPORATION), *et al*,[1]

        Debtors,

☒  Affects all Debtors

☐  Affects Beverly Community
     Hospital Association

☐  Affects Montebello Community Health
     Services, Inc.

☐  Affects Beverly Hospital Foundation

Case No.: 2:23-bk-12359-SK

Jointly administered with:

Case No: 2:23-bk-12360-SK

Case No: 2:23-bk-12361-SK

Hon. Sandra R. Klein

Chapter 11 Case

**ORDER (A) AUTHORIZING THE SALE
OF DEBTORS' ASSETS TO PURCHASER
FREE AND CLEAR OF LIENS, CLAIMS,
INTERESTS, AND OTHER INTERESTS;
(B) APPROVING THE ASSUMPTION
AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Beverly Community Hospital Association d/b/a Beverly Hospital (6005), Montebello Community Health Services, Inc. (3550), and Beverly Hospital Foundation (9685).  The mailing address for the Debtors is 309 W. Beverly Blvd., Montebello, California 90640.



**RELATED THERETO; AND (C)
GRANTING RELATED RELIEF**

Date:     August 17, 2023
Time:     9:00 a.m.
Judge:    Sandra R. Klein
Place:    Zoom.Gov – or - Courtroom 1575
            255 E. Temple St.
            Los Angeles, CA 90012

This matter came before the Court on the *Debtors' Notice Of Motion And Motion For Entry Of An Order (I) Authorizing The Sale Of Substantially All Of The Debtors' Assets Free And Clear Of All Liens, Claims, And Encumbrances; To White Memorial Medical Center D/B/A Adventist Health White Memorial Free And Clear; (II) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (III) Granting Related Relief; Declaration Of Jason A. Cohen In Support Thereof* (the "Sale Motion")[2] on August 17, 2023 at 9:00 a.m. of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an Order, as applicable, pursuant to sections 105(a), 363, and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 6004-1 and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR") for the entry of an order (a) approving the sale of Debtors' assets to the White Memorial Medical Center d/b/a Adventist Health White Memorial or its designee ("AHWM" or the "Purchaser") free and clear of lines, claims, Interests, and other interests; (b) approving the assumption and assignment of executory contracts; and (c) granting related relief; the Court having found that (i) the Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (iv) notice of the Sale Motion was sufficient under the circumstances and properly given, and it appearing that no other or further notice need be provided; and a hearing on the Debtors' proposed

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or the Bidding Procedures Motion (as defined herein), as applicable.

1  bid and sale procedures as detailed in the *Debtors' Motion Notice of Motion and Motion for the*

2  *Entry of an Order (I) Approving Asset Purchase Agreement for Stalking Horse Purchaser and for*

3  *Prospective Overbidders, (II) Approving Bid Protections, (III) Approving Bidding Procedures, (IV)*

4  *Scheduling Certain Dates Thereto, (V) Approving Form of Notice and (VI) Scheduling Court*

5  *Hearing to Approve Sale Free and Clear to the Purchaser* (the "Bidding Procedures Motion")

6  [Docket No. 308] having been held and granted pursuant to the *Order Approving Debtors' Motion*

7  *for the Entry of an Order (I) Approving Asset Purchase Agreement for Stalking Horse Purchaser*

8  *and for Prospective Overbidders, (II) Approving Bid Protections, (III) Approving Bidding*

9  *Procedures, (IV) Scheduling Certain Dates Thereto, (V) Approving Form of Notice, and (VI)*

10 *Scheduling Court Hearing to Approve Sale Free and Clear to the Purchaser* [Docket No. 378] (the

11 "Bidding Procedures Order"); the Court having reviewed and considered (i) the Sale Motion, (ii)

12 the APA, (iii) the Bidding Procedures, (iv) the Bidding Procedures Order, (v) the record of the

13 Auction, (vi) the *Declaration of Kerry Heinrich in Support of the Sale Motion* [Docket No. 639],

14 (vii) *Cal-Med Health Center Bid for Beverly Community Hospital Association DBA Beverly*

15 *Hospital* [Docket No. 647], (viii) *Notice of Submitting Overbid Layton 26 LLC Filed by Other*

16 *Professional Joshua Hanasab* [Docket No. 656], (ix) *Debtors' Statement Regarding Determination*

17 *of Highest and Best Bid for the Assets* [Docket No. 659], (x) the responses and objections to the Sale

18 Motion, and the replies thereto, including: (A) *Sodexo, Inc. & Affiliates' Limited Objection to*

19 *Debtors' Motion for Entry of an Order (I) Authorizing the Sale of Substantially All of the Debtors'*

20 *Assets Free and Clear of All Liens, Claims, and Encumbrances; to White Memorial Medical Center*

21 *d/b/a Adventist Health White Memorial Free and Clear; (II) Authorizing the Assumption and*

22 *Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related*

23 *Relief; and Declaration of Jami Nimeroff in Support Thereof* [Docket No. 664] (the "Sodexo

24 Objection"); (B) *United States' Limited Response to the Debtors' Motion for Entry of Order*

25 *Authorizing Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims and*

26 *Encumbrances* [Docket No. 665]; (C) *DIP Lender HRE Montebello, LLC's Limited Objection to the*

27 *Debtors' and Debtors-in-Possession's Sale Motion Filed at ECF No. 638* [Docket No. 666]; (D)

28 *Limited Objection to the Debtors' Motion for Entry of an Order (I) Authorizing the Sale of*

*Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances: to White Memorial Medical Center d/b/a Adventist Health White Memorial Free and Clear; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief; and Reservation of Rights* [Docket No. 667]; (E) *Response to Debtors' Statement Regarding Determination of Highest and Best Bid for the Assets; and Reservation of Rights* [Docket No. 668]; (F) *Statement of the Official Committee of Unsecured Creditors Regarding the Debtors' Motion for the Entry of Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances to White Memorial Medical Center d/b/a Adventist Health White Memorial Free and Clear; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 669]; (G) *Creditor California Department of Health Care Services' and California Department of Public Health's Objection and Response to Debtors' Motion for Entry of an Order Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances* [Docket No. 670] (H) the *Reply of the Official Committee of Unsecured Creditors in Support of Debtors' Motion for Entry of an Order (I) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances to White Memorial Medical Center d/b/a Adventist Health White Memorial Free and Clear; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 678]; (I) *the Debtors' Response in Support of (a) Debtors' Statement Regarding Determination of Highest and Best Bid for the Assets and (b) Debtors' Notice of Motion and Motion for Entry of An Order (I) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances; to White Memorial Medical Center d/b/a Adventist Health White Memorial Free and Clear; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 679],  (J) the *Reply of the Official Committee of Unsecured Creditors in Support of Debtors' Motion for Entry of an Order (I) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances to White Memorial Medical Center d/b/a Adventist Health White Memorial Free and Clear; (II)*

*Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 680]; (K) the *Debtors' Omnibus Reply in Support of Debtors' Notice of Motion and Motion for Entry of an Order (I) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances to White Memorial Medical Center d/b/a Adventist Health White Memorial Free and Clear; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 681]; and (xi) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation the Court having determined that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, and their creditors; and good and sufficient cause having been shown;

**THE COURT HEREBY FINDS AND CONCLUDES THAT**:[3]

A.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtors' bankruptcy estates and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A), (M), (N) and (O). Venue of these cases is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.    <u>Statutory Predicates</u>.  The statutory and legal predicates for the relief requested in the Sale Motion and provided for herein are Sections 105(a), 363, and 365 of Title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, and 9014, and Local Bankruptcy Rules ("<u>Local Rules</u>") 6004-1, and 9013-1.

D.    <u>Notice</u>.  The Debtors have provided good and sufficient notice with respect to the following: (i) the Sale Motion and the relief sought therein, including the entry of this Order and the transfer and purchase of the Purchased Assets; (ii) the Auction and the Sale Hearing (*see Debtors'*

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

*Notice of Sale Hearing*, [Docket No. 376]); (iii) the selection of the Purchaser; (iv) the assumption and assignment of executory contracts and unexpired leases and proposed cure amounts owing under such executory contracts and unexpired leases ("Cure Amounts").  No further notice of the Sale Motion, the relief requested  therein or the Sale Hearing is required.  The Notice of Filing Final Bidding Procedures filed on June 7, 2023 [Docket No. 402] (the "Bidding Procedures"), the *Debtors' Notice of Sale Hearing*, the Bidding Procedures, and Cure  Notice, the Auction, and the hearing to approve the sale of the Purchased Assets were in accordance with the Bid Procedures Order, and were appropriate and reasonable and calculated to provide all interested parties with timely and proper notice and no other or further notice is required.  Such notice was proper under the Bankruptcy Code, Bankruptcy Rules and Local Rules.  A reasonable opportunity to object and to be heard regarding the relief provided herein has been afforded to all parties-in-interest.

E.      Sound Business Purpose.  The Debtors have demonstrated good, sufficient and sound business purposes and justifications for approval of the Sale Motion and the approval of and entry into the Sale Transaction, the APA and any ancillary agreements thereto (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value and are beneficial to the Debtors' estates, and are in the best interests of the Debtors, their estates and their stakeholders; and (iii) are reasonable and appropriate under the circumstances.  Business justifications for entry into the Sale Transaction and the Asset Purchase Agreement include, without limitation, the following:  (i) the Asset Purchase Agreement constitutes the highest or best offer received for the Purchased Assets; (ii) the Asset Purchase Agreement presents the best opportunity to maximize the value of the Purchased Assets on a going-concern basis and to avoid decline and devaluation as a result of delay or liquidation; (iii) failure to consummate the Sale Transaction expeditiously, as provided under the Asset Purchase Agreement, could materially diminish creditor recoveries; and (iv) the immediate consummation of the Sale Transaction is necessary to maximize the value of the Debtors' estates.

F.      Highest and Best Bid.  The APA and the bid of the Purchaser constitutes the highest or otherwise best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative considering all of the facts and

circumstances.   Importantly, the bid of the Purchaser enables Beverly Hospital to continue to provide critical care services to Montebello and the surrounding communities.   The Debtors' determination that the Purchaser made the highest or otherwise best offer for the Purchased Assets constitutes a reasonable, valid and sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors and their estates.   The consideration to be paid by the Purchaser for the Purchased Assets is fair and reasonable, is the highest or otherwise best offer therefor, and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and the laws of the United States.   The Back-Up Bidder made the second highest and best offer for the Purchased Assets.[4]

G.      Arm's Length Transaction. The sale of the Purchased Assets to the Purchaser (the "Transaction") and the consummation thereof were negotiated and entered into by the Debtors and the Purchaser without collusion, in good faith and through an arms' length bargaining process.  None of the Debtors, the Purchaser, or their respective representatives engaged in any conduct that would cause or permit the Transaction to be avoided under section 363(n) of the Bankruptcy Code, or have acted in any improper or collusive manner.   The terms and conditions of the Transaction, including, without limitation, the consideration provided in respect thereof, are fair and reasonable, and are not avoidable and shall not be avoided, and no damages may be assessed against the Purchaser or any other party, as set forth in section 363(n) of the Bankruptcy Code.

H.      Good Faith Purchaser. The Purchaser has proceeded in good faith and without collusion in all respects in connection with the sale process, and is therefore entitled to all of the benefits and protections provided to a good-faith purchaser under section 363(m) of the Bankruptcy Code.   Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction or the Purchaser's status as a "good faith" purchaser.

---

[4]    This Order may be amended by subsequent order if the Back-Up Bidder becomes the ultimate Purchaser pursuant to the Bid Procedures regarding Back-Up Bidders.

I.      Insider Status.  The Purchaser is not an "insider" of any Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders (or the equivalent thereof) exists between the Purchaser and any of the Debtors.

J.      No Successor Liability. The Purchaser is not a successor to the Debtors or their bankruptcy estates nor shall be deemed to be a mere continuation of any of the Debtors' operations by any reason or theory of law or equity, and the Purchaser shall not be subject to successor liability for any assets sold or claims that arose or could have been asserted prior to the closing of the Transaction (the "Closing").

K.      Authority to Consummate the Sale of the Purchased Assets. The Debtors have full corporate power and authority to execute the APA (including all ancillary documents executed in connection therewith), and the sale of the Purchased Assets have been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the sale of the Purchased Assets to the Purchaser.  No consents or approvals, other than as may be expressly provided for in the APA, are required by the Debtors to consummate such sale of the Purchased Assets.

L.      Justification for Relief. Good and sufficient reasons for approval of the Transaction have been articulated to the Bankruptcy Court in the Sale Motion and at the Sale Hearing, and the relief requested in the Sale Motion and set forth in this Order is in the best interests of the Debtors and their estates.  The Debtors have demonstrated through the Sale Motion and other evidence submitted by the Debtors both (i) good, sufficient and sound business purpose and justification and (ii) compelling circumstances for the transfer and sale of the Purchased Assets outside the ordinary course of business, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

M.      Free and Clear.  In accordance with §§ 363(b) and 363(f), the consummation of the Transaction pursuant to the Transaction Documents will be a legal, valid, and effective transfer and sale of the Purchased Assets and will vest in Purchaser, through the consummation of the Transaction, all of the Debtors' right, title, and interest in and to the Purchased Assets, free and clear of all Interests. Those holders of Interests who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to § 363(f)(2).  All holders of the

1   Interests in the Purchased Assets are adequately protected by having their respective Interests attach

2   to the Debtors' interests in the proceeds of the sale of the Purchased Assets under the APA, and any

3   related documents or instruments delivered in connection therewith, whenever and wherever

4   received (the "Sale Proceeds") to the extent and manner herein provided.

5          N.     Purchaser's Reliance on Free and Clear.  The Purchaser would not have entered into

6   the APA and would not consummate the Transaction or the other transactions contemplated thereby

7   if the sale of the Purchased Assets were not free and clear of all Interests, or if the Purchaser would,

8   or in the future could, be liable for any such Interests.  A sale of the Purchased Assets other than

9   one free and clear of all Interests would adversely impact the Debtors, their estates and their

10  creditors, and would yield substantially less value for the Purchased Assets and the Debtors' estates,

11  with less certainty than provided by the Transaction.  The total consideration to be provided under

12  the APA reflects the Purchaser's reliance on this Order to provide it, pursuant to sections 105(a) and

13  363(f) of the Bankruptcy Code, with title to, and possession of, the Purchased Assets free and clear

14  of all Interests, including, without limitation, any potential derivative, vicarious, transferee or

15  successor liability Interests.

16         O.     "Interests".  As used in this Order, the term "Interest" includes, in each case to the

17  extent against or with respect to any of the Debtors or in, on, or against or with respect to any of the

18  Acquired Assets:  Liens, claims (as defined in section 101(5) of the Bankruptcy Code), debts (as

19  defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, Liabilities,

20  demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights,

21  restrictions, limitations, contractual commitments, rights, or interests of any kind or nature

22  whatsoever, whether known or unknown, inchoate or not, filed or unfiled, scheduled or unscheduled,

23  noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed,

24  contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-

25  material, disputed or undisputed, whether arising prior to or subsequent to the commencement of

26  these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or

27  otherwise, including, but not limited to, (i) mortgages, deeds of trust, pledges, charges, security

28  interests, hypothecations, Interests, easements, servitudes, leases, subleases, rights-of-way,

encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, condition sale arrangements, or any similar rights, (ii) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Purchaser's interest in the Purchased Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment

-10-

compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or businesses of the Debtors prior to the Closing; (x) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assumed Contract; (xi) any other Excluded Liabilities under the APA; and (xii) Interests arising under or in connection with any acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, Affiliates, or Subsidiaries, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

P.    Prompt Consummation. The Debtors have demonstrated good and sufficient cause to waive the stay requirement under Bankruptcy Rules 6004(h) and 6006(d). Time is of the essence in consummating the Transaction, and it is in the best interests of the Debtors and their estates to consummate the Transaction within the timeline set forth in the Sale Motion and the Bid Procedures Order. The Closing Date shall occur within sixty days of the signing of the APA, or at a later date as agreed to by the Debtors and the Purchaser.

Q.    Assumption of Executory Contracts and Unexpired Leases. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign, subject to the provisions hereof, to the Purchaser those executory contracts and unexpired leases designated by the Purchaser either prior to the Closing (the "Assumed Executory Contracts and Leases") in connection with the consummation of the Transaction, and the Debtors' assumption and assignment to the Purchaser of the Assumed Executory Contracts and Leases is in the best interests of the Debtors and their estates.

R.    Cure/Adequate Assurance. The payments to be made by the Purchaser and/or the Debtors at the Closing, will have cured, or will have provided adequate assurance of cure, of any

default existing under any of the Assumed Executory Contracts and Leases, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the amounts and in the manner set forth below. The Purchaser has provided or will provide adequate assurance of future performance of and under the Assumed Executory Contracts and Leases within the meaning of 11 U.S.C. § 365(b)(1)(C). Pursuant to 11 U.S.C. § 365(f), the Assumed Executory Contracts and Leases to be assumed by the Debtors and assigned to the Purchaser under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in any such Assigned Contract prohibiting their assignment or transfer. The Debtors have demonstrated that no other parties to any of the Assumed Executory Contracts and Leases have incurred any actual pecuniary loss resulting from a default prior to the Closing under any of the Assumed Executory Contracts and Leases within the meaning of 11 U.S.C. § 365(b)(1)(B).  Pursuant to 11 U.S.C. § 365(f), the Assumed Executory Contracts and Leases to be assumed by the Debtors and assigned to the Purchaser shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in such contracts or other restrictions prohibiting their assignment or transfer.

S.      No *De Facto* or *Sub Rosa* Plan of Reorganization. The sale of the Purchased Assets does not constitute a *de facto* or *sub rosa* plan of reorganization or liquidation because it does not propose to (i) impair or restructure existing debt of, or equity or membership interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors, (iii) circumvent chapter 11 safeguards, including those set forth in §§ 1125 and 1129, or (iv) classify claims or equity or membership interests.

T.      Legal and Factual Basis. The legal and factual bases set forth in the Bidding Procedures Motion, the Sale Motion, and at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.      The Sale Motion is **GRANTED** as set forth herein.

2.      Notice of the Sale Motion, the Auction, the Sale Hearing and the Sale was fair and equitable under the circumstances and complied in all respects with the Bidding Procedures, §§ 102(1), and 363, and Rules 2002, 6004, 6006, 9006, and 9007.

3.      The sale of the Purchased Assets to the Purchaser is approved upon the terms and conditions described on the Court's record at the Sale Hearing and as set forth in the APA.

4.      The Debtors are authorized to enter into the APA and to consummate the sale of the Purchased Assets to the Purchaser in accordance with this Order and to perform the obligations under the APA and enter into any agreements contemplated by the APA, including without limitation the Staffing Agreement (as defined in the APA), without further order of the Court.

5.      All objections and responses to the Sale Motion that have not previously been overruled, withdrawn, waived, settled or resolved, and all reservations of rights included therein, are hereby overruled and denied.

6.      The Purchaser's offer for the Purchased Assets is the highest and best offer for the Purchased Assets and is hereby approved.

7.      Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Transaction, including the transfer and sale of the Purchased Assets to the Purchaser is approved in all respects, and the Debtors are authorized and directed to consummate the Transaction and enter into the APA, including, without limitation, by executing any Transaction Documents and taking all actions necessary and appropriate to effectuate and consummate the Transaction (including the transfer and sale of the Purchased Assets) in consideration of the Purchase Price, including, without limitation, assuming and assigning to the Purchaser the Assumed Executory Contracts and Leases.

8.      Any person or entity that is currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets is hereby directed to surrender possession of such Purchased Assets either to (a) the Debtors before the Closing or (b) to Purchaser or its designee upon the Closing.

9.      Pursuant to sections 105, 363(b), 363(f) and 363(m) of the Bankruptcy Code, the Purchased Assets shall be sold and transferred free and clear of all Interests, except as otherwise provided in the APA, with any and all such Interests to attach to proceeds of the sale with the same

validity (or invalidity), priority, force and effect such Interests had on the Purchased Assets immediately prior to the Closing and subject to the rights, claims, defenses, and objections, if any, of the Debtors and all interested parties with respect to any such asserted Interests.

10.     As of the Closing, (i) the Transaction shall effect a legal, valid, enforceable and effective transfer and sale of the Purchased Assets to the Purchaser free and clear of all Interests except as set forth in the APA or this Order; and (ii) the APA, the Transaction and the other Transaction Documents shall be enforceable against and binding upon, and not subject to rejection or avoidance by, any successor thereto including a trustee or estate representative appointed in these cases, and all other persons and entities.

11.     This Order shall, as of the Closing, be considered and constitute for all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets and/or a bill of sale transferring all of the Debtors' rights, title and interest in and to the Purchased Assets to the Purchaser.  Consistent with, but not in limitation of the foregoing, each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and approved in this Order.

12.     The Purchaser shall not be deemed, as a result of any action taken in connection with, or as a result of the Transaction (including the transfer and sale of the Purchased Assets), to: (i) be a successor, continuation or alter ego (or other such similarly situated party) to the Debtors or their estates by reason of any theory of law or equity, including, without limitation, any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability; or (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation, alter ego, or substantial continuation of the Debtors, and other than as expressly set forth in the APA, the Purchaser shall have no liability whatsoever for any conduct, action or inaction of the Debtors or with respect to the Purchased Assets that arose prior to the Closing.

13.     This Order (i) shall be effective as a determination that, except as expressly set forth in this Order or the APA, effective as of the Closing, all Interests existing against the Purchased Assets before the Closing have been unconditionally released, discharged and terminated, and that

the transfers and conveyances described herein have been effected, and (ii) shall be binding upon and shall govern the acts of all persons and entities.  If any person or entity that has filed financing statements or other documents or agreements evidencing any Interests against the Purchased Assets shall not have delivered to the Debtors before the closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Purchased Assets, then the Purchaser is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets.

14.    The sale of the Purchased Assets is not subject to avoidance by any person or for any reason whatsoever, including, without limitation, pursuant to section 363(n) of the Bankruptcy Code and the Purchaser shall not be subject to damages, including any costs, fees, or expenses under section 363(n) of the Bankruptcy Code.

15.    In accordance with the APA, concurrently with the Closing, the Purchaser shall pay that portion of the Purchase Price due at Closing, by wire transfer of immediately available funds, to an account to be designated by Debtors' counsel.  Any direct expenses of the Sale shall be disclosed by Debtors to the DIP Lender, the Master Trustee, and the Committee in advance of the Closing.

16.    Upon the Closing, the Debtors are authorized and directed to assume, assign and/or transfer each of the Assumed Executory Contracts and Leases to the Purchaser, including the currently designated contracts and any subsequently identified designated contracts (all counterparties to the currently identified designated contracts and any subsequently identified designated contracts collectively, the ("Contract Counter-Parties"). All Contract Counter-Parties to Assumed Executory Contracts and Leases shall cooperate with, and expeditiously execute and deliver upon, any reasonable request of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents or other documents that may be required or requested by any governmental unit or other public or quasi-public authority or other party to effectuate the applicable transfers in connection with the Debtors' assumption and assignment of the Assumed Executory Contracts and Leases to the Purchaser.  The provisions of this Paragraph 16 shall not apply to the

Modified CBA (as defined in the CBA Stipulation defined below).

17.     The Transaction contemplated by the APA and other Transaction Documents undertaken without collusion and in "good faith," as that term is defined in § 363(m) of the Bankruptcy Code.  Purchaser is a good faith purchaser within the meaning of § 363(m) and, as such, is entitled to the full protections of § 363(m).  Accordingly, the reversal or modification on appeal of the authorization provided herein by this Sale Order to consummate the Transaction shall not affect the validity of the sale of the Purchased Assets to the Purchaser.  The APA and the Transactions contemplated thereby cannot be avoided under § 363(n).

18.     The failure to specifically include any particular provision of the APA or the other Transaction Documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Bankruptcy Court that the Transaction, the APA and the other Transaction Documents be authorized and approved in their entirety. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

19.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Rules 6004(h), 6006(d), 7062, or 9014, if applicable, or any other LBR or otherwise, this Sale Order shall not be stayed for 14-days after the entry hereof, but shall be effective and enforceable immediately upon entry pursuant to Rule 6004(h) and 6006(d). Time is of the essence in approving the Transaction (including the transfer and the sale of the Purchased Assets).

20.     The automatic stay in effect pursuant to § 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of this Court, to (i) allow Purchaser to deliver any notice provided for in the APA and Transaction Documents and (ii) allow Purchaser to take any and all actions permitted under the APA and Transaction Documents in accordance with the terms and conditions thereof.

21.     Unless otherwise provided in this Sale Order, to the extent any inconsistency exists between the provisions of the APA and this Sale Order, the provisions contained in this Sale Order shall govern.

22.      This Court shall retain exclusive jurisdiction to interpret, construe, and enforce the provisions of the APA and this Sale Order in all respects, and further, including, without limitation, to (i) hear and determine all disputes between the Debtors and/or Purchaser, as the case may be, and any other non-Debtor party to, among other things, the Assumed Executory Contracts and Leases concerning, among other things, assignment thereof by the Debtors to Purchaser and any dispute between Purchaser and the Debtors as to their respective obligations with respect to any asset, liability, or claim arising hereunder; (ii) compel delivery of the Purchased Assets to Purchaser free and clear of Interests; (iii) compel the delivery of the Purchase Price or performance of other obligations owed to the Debtors; (iv) interpret, implement, and enforce the provisions of this Sale Order; and (v) protect Purchaser against (A) claims made related to any of the Excluded Liabilities (as defined in the APA), (B) any claims of successor or vicarious liability (or similar claims or theories) related to the Purchased Assets or the Assumed Executory Contracts and Leases, or (C) any Interests asserted on or against Purchaser or the Purchased Assets.

23.      Following the date of entry of this Sale Order, the Debtors and Purchaser are authorized to make non-material changes to the APA without the need for any further order of the Court provided that all such changes have been approved in writing by the Debtors and the Purchaser. Any other changes to the APA or this Sale Order require a further order of the Court, after reasonable notice under the circumstances and a hearing.

24.      The terms and provisions of this Sale Order, as well as the rights granted under the Transaction Documents, shall continue in full force and effect and are binding upon any successor, reorganized Debtors, or chapter 7 or chapter 11 trustee applicable to the Debtors, notwithstanding any such conversion, dismissal or order entry.  Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or in any order confirming such a plan, nor any order dismissing the cases or converting the cases to a case under chapter 7, shall conflict with or derogate from the provisions of the APA, any documents or instruments executed in connection therewith, or the terms of this Sale Order, provided however, that in the event of a conflict between this Sale Order and an express or implied provision of the APA, this Sale Order shall govern. The provisions of this Sale Order and any actions taken pursuant hereto shall survive any conversion or dismissal of the cases and the

1  entry of any other order that may be entered in the cases, including any order (i) confirming any

2  plan of reorganization; (ii) converting the cases from chapter 11 to chapter 7; (iii) appointing a

3  trustee or examiner in the cases; or (iv) dismissing the cases.

4      25.    <u>Collective Bargaining Agreement</u>:  The *Stipulation Regarding The Assumption And*

5  *Assignment of Collective Bargaining Agreement With The United Nurses Associations Of*

6  *California/Union Of Health Care Professionals filed on August 10, 2023* [Docket No. 673] (the

7  "<u>CBA Stipulation</u>") is hereby approved.  The Purchaser shall be assigned, and shall assume, the

8  Modified CBA (as defined in the CBA Stipulation) as of the Closing Date.  The amount necessary

9  to cure all defaults, within the meaning of 11 U.S.C. § 365(b), under the Modified CBA is set at

10  $257,743.32, which shall be funded by Purchaser as part of its assumed cure obligation, but

11  processed by the Debtors promptly following the Closing Date.

12      26.    <u>CDPH and DHCS</u>:  The Purchaser will not enter into an interim management

13  agreement with Debtor Beverly Community Hospital Association for the Association's General

14  Acute Care Hospital license issued by the California Department of Public Health ("<u>CDPH</u>") to

15  operate and maintain Beverly Hospital.  This Order shall not transfer or assume and assign the

16  Debtors' Medi-Cal Provider Agreement to the Purchaser.  All of the Debtors', CDPH's, and the

17  California Department of Health Care Services' rights and defenses, including any rights of setoff,

18  recoupment or counterclaims under applicable non-bankruptcy law are expressly preserved.

19      27.    <u>United States</u>:  This Order shall not assume and assign the Debtors' Medicare

20  Provider Agreement to the Purchaser.  The Purchaser will submit a change of information to its

21  Medicare administrative contractor under its existing Medicare provider agreement and, promptly

22  upon closing of the transaction, submit a complete attestation of its compliance with the necessary

23  integration requirements for provider-based status for a facility or organization.  Nothing in this

24  Order shall affect or impair any party's rights with respect to jurisdiction over any disputes

25  concerning the Debtors' Medicare Provider Agreement pursuant to Section 1395ii of the Medicare

26  Act, and Section 405(h) of the Social Security Act (42 U.S.C. §405(h)).  All of the Debtors' and the

27  United States' rights and defense, including any rights of setoff, recoupment or counterclaims under

28  applicable non-bankruptcy law are expressly preserved.

28.     Excluded Assets:  The definition of Excluded Assets in the APA is hereby amended to include as additional Excluded Assets: (a) the Debtors' membership interest in the Beverly Hospital Foundation ("Foundation") and the Foundation's assets and (b) Sodexo's Proprietary Materials and Trade Secrets, as defined in the Sodexo Contracts (as defined in the Sodexo Objection).

29.     DIP Lender:  At the Closing of the Transaction, an amount of cash proceeds from the Transaction sufficient to repay in full all indebtedness and other obligations under the DIP Facility shall be wired to the DIP Lender in full and complete satisfaction of the DIP Facility (the "DIP Payoff Amount").  This Sale Order additionally acknowledges and incorporates the terms and conditions set forth in the Stipulation Between Debtors and HRE Montebello, LLC RE DIP Facility (the "DIP Lender Stipulation") [Docket No. 698], as modified pursuant to the updated terms by agreement of the Debtors, DIP Lender, and Master Trustee at the sale hearing.

30.     Master Trustee:  At the Closing of the Transaction, cash proceeds from the Transaction in the amount of $10,000,000 shall be wired to the Master Trustee (the "Master Trustee Payout").

31.     Other Sale Proceeds:  At the Closing of the Transaction, all cash proceeds from the sale other than the DIP Payoff Amount and the Master Trustee Payout (the "Remaining Sale Proceeds") shall be held in escrow pending further order of this Court.  The Debtors are permitted to use Cash Collateral to pay $269,122.33 of Cure Amounts at Closing, and any Cash Collateral budget shall reflect such allowed use.

32.     Sodexo:  Sodexo shall be entitled to pick up and recover all of Sodexo's Proprietary Materials and Trade Secrets on Sodexo's last day of service to the Debtors under the Sodexo Contracts (the "Account Exit Date") and the Debtors and Purchaser shall reasonably cooperate with Sodexo in ensuring compliance with this provision.  To the extent necessary or appropriate, Sodexo is hereby granted relief from the automatic stay to remove Sodexo's Proprietary Materials and Trade Secrets from the Debtors' premises on the Account Exit Date and/or destroy or disable the Debtors' and/or Purchaser's access to Sodexo's Proprietary Materials and Trade Secrets as of the Account

Exit Date.  All of Sodexo's rights and remedies with respect to unauthorized use or conveyance of the Sodexo Proprietary Materials and Trade Secrets after the Account Exit Date are hereby reserved.

33.    Records Relating to Excluded Assets and Liabilities:

(a)    If any records of Sellers (excluding any Patient Records) related to any Excluded Asset come into the control or possession of Purchaser at the Effective Time or Purchaser obtains possession thereof after the Effective Time in the ordinary course of business, then Purchaser will use commercially reasonable efforts to maintain such records for a period of two (2) years from the Effective Time and make such records reasonably available to the Permitted Parties consistent with the terms and conditions otherwise applicable to the Permitted Parties in Section 9.2 of the APA.  No later than 60 days prior to the two year anniversary of the Effective Time, the Permitted Parties shall identify with reasonable specificity any records related to any Excluded Assets that they desire to preserve and shall make arrangements with the Purchaser to either obtain copies of such records or the records themselves with the cost of obtaining such records or copies to be borne by the Permitted Party at its sole expense.  The Purchaser's obligation to maintain such records shall terminate on the two (2) year anniversary of the Effective Time.

(b)    Subsequent to the Closing Date and until the closing of the Chapter 11 Case, Purchaser will use commercially reasonable efforts to cooperate with each of the Permitted Parties relating to all matters in connection with the administration of the Sellers' estates, including without limitation, all claims and causes of action constituting Excluded Assets or relating to Excluded Liabilities that any Permitted Party elects to pursue, dispute, or defend. Without limiting the generality of the preceding sentence, Purchaser will use commercially reasonable efforts to make reasonably available to Permitted Parties, Sellers' employees of the Business who become employees of Purchaser to assist Permitted Parties in connection with the administration of Sellers' estates, including, without limitation, in connection with Excluded Assets and/or Excluded Liabilities, provided that access to such employees shall in no way interfere with Purchaser's normal business operations. Furthermore, provided that Purchaser shall not incur any out-of-pocket costs, Purchaser shall provide reasonable

cooperation to Permitted Parties and the Sellers' insurance carriers in respect of the defense of claims by third parties against Sellers or any affiliate of Sellers, in respect of events occurring prior to the Effective Time with respect to the operations of the Business. Such cooperation shall include, without limitation (and at Sellers' or the Permitted Party's sole expense for material time expended by employees of Purchaser), making the employees of Purchaser historically employed by Sellers, if any, reasonably available for interviews, depositions, hearings, and trials.

**IT IS SO ORDERED.**

# # #

Date: August 18, 2023

Sandra R. Klein
United States Bankruptcy Judge